# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE Commission | ) ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| EDWARD P. MAY and E-M MANAGEMENT CO. LLC, | ) ) ) |
| Defendants. | ) ) ) |

Case: 2:07-cv-14954
Judge: Feikens, John
Referral MJ: Morgan, Virginia M
Filed: 11-20-2007 At 09:04 AM
CMP US SECURITIES AND EXCHANGE VS M
AY ET AL (LH)

## COMPLAINT

Plaintiff, United States Securities and Exchange Commission ("Commission"), alleges and states as follows:

### NATURE OF THE COMPLAINT

1. From at least 1998 through July 2007, Edward P. May ("May"), through E-M Management Co. LLC ("E-M") raised at least $74 million to as much as $250 million, from at least 500 to as many as 1200 investors, by fraudulently selling securities in the form of interests in limited liability companies ("LLCs"). May and E-M told investors that these LLCs had been contracted to install and provide telecommunications equipment and services to major hotel chains and casinos, including establishments located in Las Vegas, Nevada. The investors in these deals were located in at least seven states: Michigan, California, Florida, Illinois, New York, Ohio and New Jersey. May and E-M represented to investors, many of whom were elderly, both orally and in writing, that investors would receive returns in the form of monthly payments for a

period of as much as 12 to 14 years. May and E-M went further and "guaranteed" that investors would receive these promised payments for 20 to 24 months beginning soon after they invested ("the guarantee period"). These and other representations made to investors were false. In reality, the E-M offerings were a fraud.

2. May and E-M falsely represented to investors that May and E-M had contractual relationships with various hotels, casinos, and similar establishments for the installation and service of telecommunications equipment. In fact, there were no such contracts.

3. Indeed, to further their scheme, May and E-M provided at least some investors with copies of fictitious contracts between E-M and/or certain LLCs and various hotels and casinos for the installation and service of telecommunications equipment. Some of these fictitious contracts included the names of people who either did not exist or who did not have contracting authority.

4. Additionally, to perpetrate their fraudulent scheme, May and E-M relied on a network of individuals to solicit investors. Among these solicitors are a registered representative with a registered broker dealer. Several of these solicitors organized "investment seminars" to entice investors, including elderly individuals, to invest in the LLCs.

5. May and E-M have violated and, unless enjoined, will continue to violate Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

2

6. Accordingly, the Commission seeks against May and E-M orders of preliminary and permanent injunction enjoining them from future violations of the foregoing provisions of the federal securities laws, disgorgement, plus prejudgment interest, of all ill-gotten gains, civil penalties and such other ancillary and equitable relief as is sought herein and may be appropriate.

7. The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

## DEFENDANTS

8. Edward P. May ("May"), age 71, is a resident of Oakland County, Michigan. At all times relevant to this case, May purported to be a member and to participate in the day-to-day management of E-M Management Co. LLC.

9. E-M Management Co. LLC ("E-M"), is a Michigan limited liability company, which is located in, and transacts business in, the Eastern District of Michigan.

## JURISDICTION

10. This Court has jurisdiction pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v], and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa] and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

11. The acts, practices and courses of business constituting the violations alleged herein occurred within the jurisdiction of the United States District Court for the Eastern District of Michigan and elsewhere.

3

12. Defendants are inhabitants of, and transact business in, the Eastern District of Michigan.

13. Defendants, directly or indirectly, have made and are making use of the mail or the means or instrumentalities of interstate commerce in connection with the transactions, acts, practices and courses of business alleged herein.

## FACTS

### MAY AND E-M SOLICITED INVESTORS INTO LLCS

14. Beginning at least as early as 1998, and as recently as July 2007, May and E-M sold interests, or percentages, of LLCs to investors. May and E-M raised at least $74 million, and perhaps as much as $250 million, from at least 500, and perhaps as many as 1200, investors through the sale of interests in the LLCs.

15. May and E-M solicited investors through various means.

16. May spoke with investors by telephone and in person.

17. Many of the offering materials typically included a private offering memorandum, which described the security being issued and the purpose of the venture; and a subscription agreement, which investors were required to sign before purchasing interests in the LLC.

18. Many of the LLC offering materials provided to investors, also contained purported contracts relating to the supposed installation and servicing of telecommunications equipment in locations such as hotel chains and casinos.

19. May represented to investors and to prospective investors, both orally and in writing, that each LLC was going to install and service telecommunication equipment in various locations such as hotels and casinos.

4

20. May and E-M promised investors, both orally and in writing, that they would receive returns in the form of monthly payments for as much as 12-14 years. May and E-M "guaranteed" that investors would received these promised payments for 20-24 months beginning soon after they invested. May and E-M represented, both orally and in writing, that the monthly payments would derive from fees to be paid by hotels and casinos for the use of telecommunication equipment.

21. As part of the offering, each investor was required to sign a "subscription agreement" in which he or she agreed to purchase an interest in the LLC. The subscription agreement set forth the monthly payment income for the guarantee period.

22. The purchase of interests in LLCs by over 500 investors, and perhaps as many as 1200 investors, was an investment.

23. According to the offering materials, investor funds were to be pooled on an offering-by-offering basis for the purpose of installing and servicing telecommunications equipment for hotels and casinos. In reality, investor funds from the various offerings were commingled together in a pool.

24. According to the offering materials, in any given offering, investors' financial interests were to be identical because their respective returns depended on the success of the installation and servicing telecommunications equipment at hotels and casinos by May and E-M.

**MAY AND E-M SOLD UNREGISTERED SECURITIES TO INVESTORS**

25. The interests in LLCs that May and E-M offered and sold to investors were securities.

5

26. No registration statements have ever been filed or in effect for any of the interests of LLCs that May and E-M offered and sold to investors.

## MAY AND E-M MADE MISREPRESENTATIONS TO INVESTORS ABOUT E-M AND LLCS

27. Through the offering materials, and through oral and written statement to investors, May and E-M falsely represented to investors that E-M had existing contracts with certain hotel and casino chains to provide telecommunication equipment and services.

28. The following are examples of May's and E-M's false representations to investors:

### Hilton Hotels

29. May and E-M falsely represented to investors that they had a contractual relationship with Hilton Hotel Corp. ("Hilton") in at least 39 securities offerings, which raised approximately $27.4 million from investors.

30. Offering materials disseminated by May and E-M contained an "Agreement for Providing Telecommunications Services," which purported to be an agreement between Eubberoth Telecom Ltd. ("Eubberoth") and E-M to provide communication services to Hilton hotels. This agreement stated that Eubberoth is a Norwegian corporation that is an agent for Hilton.

31. Offering materials disseminated by May and E-M also included a "Consolidated Communications Agreement," which purported to be an agreement between Hilton and E-M to provide telecommunication services. The agreement identified as a signatory, a former Senior Vice President of Hilton.

6

32. In fact, however, Hilton has no business relationship with May, E-M, or Eubberoth.

33. Additionally, the former Senior Vice President of Hilton has no knowledge or recollection of any contract with E-M.

### MGM Grand Hotel

34. May and E-M falsely represented to investors that they had a contractual relationship with MGM Grand Hotel, LLC ("MGM Grand") in at least two offerings, which raised $2.9 million from investors.

35. In a January 4, 2007 letter to investors, May represented to investors that an LLC managed by E-M, L.V. Grand Project II LLC, was the exclusive provider of telecommunication services and equipment to the MGM Grand.

36. Further, a "Consolidated Communications Agreement" that May and E-M provided to investors purported to be an agreement between MGM-Mirage Resorts Inc. and E-M, pursuant to which E-M would provide telecommunications services to the MGM Grand. This agreement identifies as a signatory, Randal A. Wolf, Vice President of Corporate for MGM-Mirage Resorts Inc.

37. In fact, however, MGM Grand has no business relationship with E-M or May. Further, no one named Randal A. Wolf is, or ever has been, Vice President of Corporate for MGM-Mirage Resorts, Inc.

38. Additionally, MGM-Mirage Resorts, Inc. is not a legal entity associated with the MGM Grand.

7

### Motel 6

39. May and E-M falsely represented to investors that they had a contract with a Motel 6 located in Dale, Indiana, in at least one offering, which raised $437,040 from investors.

40. In fact, however, the Motel 6 in Dale, Indiana, has never had a contract with E-M or May.

### Tropicana Resort Casino

41. May and E-M falsely represented to investors that they had a contractual relationship with Tropicana Resort Casino ("Tropicana") in at least one offering, which raised approximately $495,800 from investors. A "Consolidated Communications Agreement," provided to investors by May and E-M, purported to be an agreement between Tropicana Resorts Inc. and E-M, pursuant to which E-M would provide communications services to Tropicana. The agreement identified as a signatory, Reed Stewart (also spelled Steward in the agreement), Vice President of Corporate for Tropicana Resorts Inc.

42. In fact, however, Tropicana has no business relationship with E-M or May.

43. Further, no person by the name of Reed Steward or Reed Stewart has ever served as vice president or senior officer of any kind for Tropicana Resorts, Inc.

### Sheraton Hotels

44. May and E-M represented to investors that they had a contractual relationship with Sheraton hotels in at least two offerings, which raised a total of approximately $1.3 million from investors.

8

45. In fact, however, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), owner of Sheraton hotels, has no records indicating that May or E-M conducted any business with Starwood.

## COLLAPSE OF THE FRAUDULENT SCHEME

46. By July 2007, May and E-M were unable to make monthly payments in a timely manner.

47. On or about July 31, 2007, May sent a letter to the LLC investors attempting to explain delays in distributing the guaranteed monthly payments. May blamed the delays on the difficulty of "maintaining mailing accuracy and volume" because the number of LLC projects had grown.

48. May and E-M stopped issuing monthly checks to the LLC investors in August 2007.

49. In a September 4, 2007 email from May to all the LLC investors, he stated that "I know I have hurt and angered a huge number of people who had faith in me as a friend and an advisor." He further stated that he was "trying to get some other people to the table who have significant liability in these matters and who have the capacity to at least come close to making everyone whole."

50. In the September 4, 2007 email, May also attempted to solicit investments in Creto International, Inc. ("Creto"), a concrete company incorporated in Michigan. May further suggested to the email recipients that they should consider investing in Creto because it would provide substantial profits "within a relatively short period of time."

9

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act
### [15 U.S.C. § 77e(a) and (c)]

51. Paragraphs 1 through 50, are realleged and incorporated by reference as though set forth herein.

52. From at least 1998 through and including July 2007, May and E-M, directly and indirectly, made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell and offer to sell securities in the form of interests in LLCs through the use and medium of offering materials and otherwise, securities to which no registration statement was in effect; and carried such securities and caused them to be carried through the mails and in interstate commerce by the means and instruments of transportation for the purpose of sale and delivery after sale.

53. No valid registration statement was filed or was in effect with the Commission, in connection with interests in the LLCs.

54. No valid exemption from registration under the Federal securities laws existed for these offerings of interests in the LLCs.

55. By reason of the activities described in paragraphs 1 through 50, Defendants May and E-M violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§77e(a) and (c)].

10

## COUNT II

**Violations of Sections 17(a)(1) of the Securities Act
[15 U.S.C. § 77q(a)(1)]**

56. Paragraphs 1 through 55, are realleged and incorporated by reference as though set forth herein.

57. By engaging in the conduct described above, Defendants May and E-M, in the offer and sale of securities, by the use of means and instruments of transportation or communication in interstate commerce or by use of mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

58. May and E-M intentionally or recklessly engaged in the devices, schemes, and artifices as described above.

59. By reason of the foregoing, May and E-M violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

**Violations of Sections 17(a)(2) and (3) of the Securities Act
[15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]**

60. Paragraphs 1 through 59, are realleged and incorporated by reference as though set forth herein.

61. By engaging in the conduct described above, May and E-M, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have:

   a. obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make

11

the statements made, in light of the circumstances under which they were made, not misleading; and

b. engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

62. May and E-M made the untrue statements and omissions of material fact and engaged in the devices, schemes, and artifices described above.

63. By reason of the foregoing, May and E-M have violated Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

## COUNT IV

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

64. Paragraphs 1 through 63, are realleged and incorporated by reference as though set forth herein.

65. As more fully described in paragraphs 1 through 50 above, May and E-M, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

12

66. May and E-M intentionally or recklessly engaged in the devices, schemes, and artifices as described above.

67. By reason of the foregoing, May and E-M violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests that this Court:

I.

Find that Defendants May and E-M committed the violations charged and alleged in this Complaint.

II.

Enter Orders of Preliminary and Permanent Injunction, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining Defendants May and E-M, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

III.

Issue an Order requiring Defendants May and E-M to disgorge the ill-gotten gains that they received as a result of their wrongful conduct, including prejudgment interest.

## IV.

With regard to Defendants May's and E-M's violative acts, practices and courses of business set forth herein, issue an Order imposing upon May and E-M appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## V.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VI

Grant such other and further relief this Court may deem necessary and appropriate.

Respectfully submitted,

*Adolph J. Dean Jr.* (signature)

Adolph J. Dean, Jr.
deana@sec.gov
Charles J. Kerstetter
kerstetterj@sec.gov
Natalie G. Mitchell
mitchelln@sec.gov

Attorneys for Plaintiff
U.S. SECURITIES AND
 EXCHANGE Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398


Ellen Christensen
ellen.christensen@usdoj.gov
U.S. DEPARTMENT OF JUSTICE
211 W. Fort Street
Suite 2001
Detroit, MI 48226
Telephone: (313) 226-9100
Facsimile: (313) 226-2311

Dated: November 20, 2007

15

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

County in which this action arose: Oakland County

## I. (a) PLAINTIFFS
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
Edward P. May
E M Management Co. LLC

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Oakland County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Adolph J. Dean
U.S. Securities and Exchange Commission, 175 West Jackson Boulevard, Suite 900
Chicago, Illinois 60604-2908, Telephone: (312) 353-7390

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Select One Box Only)
☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Select One Box for Plaintiff Defendant)

Case: 2:07-cv-14954
Judge: Feikens, John
Referral MJ: Morgan, Virginia M
Filed: 11-20-2007 At 09:04 AM
CMP US SECURITIES AND EXCHANGE VS M
AY ET AL (LH)

## IV. NATURE OF SUIT (Select One Box Only)

[Checkboxes for various categories - CONTRACT: 130 Miller Act, 150 Recovery of Overpayment & Enforcement of Judgment, 151 Medicare Act, 152 Recovery of Defaulted Student Loans, 153 Recovery of Overpayment of Veteran's Benefits, 160 Stockholders' Suits, 190 Other Contract, 195 Contract Product Liability, 196 Franchise; OTHER STATUTES: 850 Securities/Commodities/Exchange checked]

## V. ORIGIN (Select One Box Only)
☒ 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §§77f(a), 77e(c) and 77q(a); 15 U.S.C. §78j; 17 C.F.R. §240.10b-5
Brief description of cause:
Violation of registration and antifraud provision of federal securities law

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: November 20, 2007
SIGNATURE OF ATTORNEY OF RECORD: Adolph J. Dean Jr.

**FOR OFFICE USE ONLY**
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

...SUANT TO LOCAL RULE 83.11

1.     Is this a case that has been previously dismissed?      ☐ Yes   ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.     Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)      ☐ Yes   ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :