UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ACKER, et al.

Plaintiffs,

vs.

DOEREN MAYHEW & COMPANY, et al.

Defendants.

_____/

Case No. 08-11261

Hon. Robert H. Cleland

## DEFENDANTS TODD FOX'S AND JAMES O'RILLEY'S
## MOTION TO DISMISS PURSUANT TO FEDERAL RULES 9(b) AND 12(b)(6)

Defendants James O'Rilley ("O'Rilley") and Todd Fox ("Fox"), by and through their attorneys, Foley & Lardner LLP, and pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), move this Court for an order dismissing all counts of Plaintiffs' First Amended Complaint (the "FAC") against them. In support of their Motion, Fox and O'Rilley rely on the pleadings and records on file with the Court and the reasons more fully set forth in the accompanying Brief in Support.

In compliance with Local Rule 7.1, counsel for Fox and O'Rilley called counsel for Plaintiffs on April 1, 2008 to explain the basis for and seek concurrence for the relief requested in the Motion. Concurrence has not been forthcoming.

WHEREFORE, for the reasons set forth above and in the accompanying Memorandum of Law, James O'Rilley and Todd Fox respectfully request that this Court dismiss Plaintiffs' First Amended Complaint against them with prejudice.

CHIC_2447789.2

Dated:  April 1, 2008

Respectfully submitted,

FOLEY & LARDNER LLP

s/ Scott Seabolt
Scott Seabolt (P55890)
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-3489
Phone:  (313) 234-7100
email:  sseabolt@foley.com

Lisa L. Tharpe (of counsel)
Foley & Lardner LLP
321 North Clark St., Suite 2800
Chicago, Illinois  60610
Phone:  (312) 832-4500
email:  ltharpe@foley.com

*Attorneys for Defendants James O'Rilley and Todd R. Fox*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ACKER, et al.,

                    Plaintiffs,

                                 Case No. 08-11261

vs.

                                 Hon. Robert H. Cleland

DOEREN MAYHEW & COMPANY, et al.,

                    Defendants.

_____/

**BRIEF IN SUPPORT OF
DEFENDANTS TODD FOX'S AND JAMES O'RILLEY'S
<u>MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(6)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I.     QUESTIONS PRESENTED ........................................................................ 1

II.    INTRODUCTION ........................................................................................ 2

III.   PROCEDURAL AND FACTUAL BACKGROUND ................................. 3

IV.   STANDARD OF REVIEW .......................................................................... 4

V.    ARGUMENT ................................................................................................ 4

      A.    THE MAJORITY OF THE CAUSES OF ACTION ALLEGED AGAINST FOX AND O'RILLEY IN PLAINTIFFS' FAC ARE SUBJECT TO THE HEIGHTENED PLEADING REQUIREMENTS OF FEDERAL RULE 9(B). ......................................................................... 4

      B.    PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT THEIR FRAUD CLAIM ....................................................... 7

      C.    PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT THEIR NEGLIGENT MISREPRESENTATION CLAIM BECAUSE PLAINTIFFS WERE NOT CLIENTS OF FOX AND O'RILLEY ..................................................................................... 12

      D.    PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT THEIR CLAIM OF AIDING AND ABETTING .............................. 12

      E.    PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT THEIR CONSPIRACY TO COMMIT FRAUD CLAIM ................. 16

      F.    PLAINTIFFS' FAC FAILS TO STATE A CLAIM AGAINST FOX AND O'RILLEY FOR RICO VIOLATIONS. ............................................. 17

      G.    PLAINTIFFS HAVE FAILED ADEQUATELY ALLEGE A CLAIM FOR PROFESSIONAL NEGLIGENCE ............................................. 20

      H.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR FRAUDULENT INDUCEMENT OF LOAN AGREEMENT ....................................... 20

VI.   CONCLUSION ........................................................................................... 21

# TABLE OF AUTHORITIES

CASES

*ABF Cap. Mgmt v. Askin Cap. Mgm.t, L.P.,*
  957 F. Supp. 1308, 1319 (S.D.N.Y. 1997) ............................................................17

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.,*
  194 Mich. App. 300, 313 (1992)...........................................................................15

*Advocacy Org. for Patients and Providers v. Auto. Club Ins. Ass'n,*
  176 F.3d 315, 319 (6th Cir 1999) .................................................................. 3-4, 18

*Arim v. Gen. Motors Corp.,*
  206 Mich. App. 178, 195 (1994)...........................................................................20

*B.E.L.T. v. Wachovia Corp.,*
  403 F.3d 474, 477 (7th Cir. 2005) .......................................................................13

*Bd. of Trustees of Policemen & Firemen Ret. Sys.,* 2003 WL 33529643, *4 (Mich. App.
  March 11, 2003)...................................................................................................13

*Botsford Gen. Hosp. v. United Am. Healthcare Corp.,*
  2003 WL 22850448 (Mich. App. Dec 2, 2003) ......................................................8

*Bovee v. Coopers & Lybrand CPA,*
  272 F.3d 356, 360 (6th Cir 2001) ..........................................................................3

*Broad, Vogt & Conant, Inc. v. Alsthom Automation, Inc.,*
  200 F. Supp.2d 756, 759 (E.D. Mich. 2002).........................................................18

*Brown v. Cassens Trans. Co.,*
  492 F.3d 640, 643 (6th Cir. 2007) ........................................................................17

*Carson Fischer, PLC v. Standard Fed. Bank,*
  No. 248125, 2005 WL 292343, *5 (Mich. App. February 8, 2005)................... 12-13

*Case v. Consumers Power Co.,*
  463 Mich. 1, 6 (Mich. 2000)........................................................................... 19-20

*Chase Bank of Texas, NA v. Grant Thornton LLP,*
  No. 236237, 2003 WL 21350362, *2 (Mich. App. June 10, 2003) ............ 11-12, 15

*D.E. & J L.P. v. Conaway,*
  284 F. Supp. 2d 719, 730 (E.D. Mich 2003)...........................................................5

*DirecTV, Inc. v. Cavanaugh,*
  321 F. Supp.2d 825, 835 (E.D. Mich. 2003)...........................................................4

CHIC_2447789.2

*Filler v. Hanvit Bank,*
  156 Fed. Appx. 413, 417 (2nd Cir. 2005) ....................................................4

*German Free State Of Bavaria v. Toyobo Co., Ltd.,*
  No. 1:06-CV-407, 2007 WL 2986475 (W.D. Mich. Oct. 10, 2007) .......................4

*Glidden Co. v. Jandernoa,*
  5 F. Supp. 2d 541, 558 (W.D. Mich. 1998) .............................................12

*Hall v. Furest,*
  No. 02-70625, 2006 WL 2987032, *9 (E.D. Mich. Oct. 17, 2006) ........................4

*Hanning v. Homecomings Fin. Networks,*
  436 F. Supp. 2d 865, 870 (W.D. Mich. 2006) ...........................................5

*Hayduk v. Lanna,*
  775 F.2d 441, 443 (1st Cir. 1985) .....................................................4

*In re Cascade Int'l Sec. Litig.,*
  894 F. Supp. 437, 443 (S.D. Fla. 1995) ...............................................10

*In re Nat'l Century Fin. Enter., Inc.,*
  504 F. Supp. 2d 287, 321 (S.D. Ohio 2007) ............................................12

*Krear v. Malek,*
  961 F. Supp. 1065, 1069 (E.D. Mich. 1997)........................................5, 18

*Laury v. Colonial Title Co.,*
  No. 272727, 2007 WL 1376352, *3 (Mich. App. May 10, 2007) ........................15

*Lawyers Title Ins. Corp. v. United Am. Bank of Memphis,*
  21 F.Supp.2d 785, 797 (W.D. Tenn. 1998) ..............................................13

*Mazzaro de DeAbreu v. Bank of Am. Corp.,*
  525 F. Supp. 2d 381, 387 (S.D.N.Y. 2007) .............................................12

*McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.,*
  644 F. Supp. 580, 585 (E.D. Mich. 1986) ..............................................18

*Miller v. Keystone Financial,*
  2000 Mich. App. LEXIS 2076............................................................13

*Morgan v. Church's Fried Chicken,*
  829 F.2d 10, 12 (6th Cir. 1987) .......................................................3

*Novak v. Nationwide Mut. Ins. Co., et al.,*
  235 Mich. App. 675, 690 (1999) .......................................................7

iii

*Pedell v. Heartland Health Care Ctr.,*
   No. 271276, 2007 WL 840876, *9 (Mich. App. March 20, 2007) .........................................16

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.,*
   940 F. Supp. 1101, 1128 (W.D. Mich. 1996) ........................................................................5

*Pik-Coal Co. v. Big Rivers Elec. Corp.,*
   200 F.3d 884, 889 (6th Cir. 2000) ...................................................................................17

*Shapiro v. Cantor,*
   123 F.3d 717 (2nd Cir. 1997)................................................................................... 10-11

*Snowden v. Lexmark Int'l, Inc.,*
   237 F.3d 620 (6th Cir. 2001) ...........................................................................................16

*Stewart v. Mich.,*
   No. 05-CV-559, 2006 WL 374207, *1 n.1 (W.D. Mich. 2006) .................................................9

*Trollinger v. Tyson Foods, Inc.,*
   370 F.3d 602 (6th Cir. 2004) ...........................................................................................16

*Tubby's # 14, Ltd. v. Tubby's Sub Shops, Inc.,*
   No. 04-70918, 2005 WL 3556199, *4 (E.D. Mich. Dec. 29, 2005) ........................................17

*U.S. v. Beckner,*
   134 F.3d 714, 720 (5th Cir. 1998) ..................................................................................13

*VanDenBroeck v. CommonPoint Mortg. Co.,*
   210 F.3d 696, 701 (6th Cir. 2000) (Federal Rule 9(b) requirements applied to RICO
   claim where predicate acts were mail fraud and wire fraud)................................................4, 17

*Webb v. First of Mich. Corp.,*
   195 Mich. App. 470, 473 (1992)......................................................................................6, 8

*Yadlosky v. Grant Thornton, LLP,*
   120 F. Supp. 2d 622, 634 (E.D. Mich. 2000) ..................................................................11, 17

## STATUTES, RULES & REGULATIONS

18 U.S.C. §1962............................................................................................................2, 17

18 U.S.C. §1962(d) ...........................................................................................................18

18 U.S.C. § 1964(c) .............................................................................................................1

**Federal Rule 9(b)**.............................................................................................................17

**FEDERAL RULE 12(b)(6)**......................................................................................3

Federal Rules of Civil Procedure 9(b) and 12(b)(6) ........................................................1

Michigan's Accountant Liability Act, M.C.L. § 600.2962.........................................1, 5

Rule 7.1 ..............................................................................................................1

CHIC_2447789.2

## I.    QUESTIONS PRESENTED

1.    Whether the Court should dismiss all of Plaintiffs' fraud based claims, including the claims for fraud (Count I), negligent misrepresentation (Count II), aiding and abetting (Count III), conspiracy to commit fraud (Count IV) and RICO (Count V), where there are no particularized allegations that Fox and O'Rilley made any knowingly false statements, there are no allegations that Fox and O'Rilley had actual knowledge of the underlying Ponzi scheme, there are no allegations that Fox and O'Rilley performed any act with the intent to defraud, and there are no allegations that Fox and O'Rilley knowingly agreed to participate in the underlying Ponzi scheme.

      Fox and O'Rilley say "yes."

2.    Whether the Court should dismiss the negligent misrepresentation claim (Count II) for the additional reason that, except for eight named Plaintiffs, Fox and O'Rilley did not owe any duties to the named Plaintiffs because they were not clients of Fox and O'Rilley.

      Fox and O'Rilley say "yes."

3.    Whether the Court should dismiss the professional negligence claim (Count VI) brought by eight named Plaintiffs where Plaintiffs fail to allege what Fox and O'Rilley did or failed to do to breach the duty of care allegedly owed to these eight Plaintiffs.

      Fox and O'Rilley say "yes."

4.    Whether the Court should dismiss the fraud in the inducement claim (Count VII) brought by five named Plaintiffs where the fraud is based on an alleged statement regarding a future event.

      Fox and O'Rilley say "yes."

## II.    INTRODUCTION

This case arises from the collapse of an alleged Ponzi scheme controlled and operated by a man named Edward Paul May ("May"). As Plaintiffs acknowledge in their First Amended Complaint ("FAC"), May is a defendant in a lawsuit brought by the United States Securities and Exchange Commission ("SEC") for securities fraud in connection with various LLCs that May controlled and offered as investment opportunities. A copy of the SEC's complaint against Ed May and the partial judgment entered by the federal district court against May are attached as **Exhibits A** and **B**, respectively. May is not a party to this action.[1] None of the Defendants in this case are a party to the SEC proceeding or even mentioned in the SEC's allegations of fraud.

Although this case arises from the same series of transactions and occurrences at issue in the SEC's case against May, the Plaintiffs have chosen to file suit against the Defendants and not include May or any of his related business entities as a party to this lawsuit. Plaintiffs ignore the conclusions of the SEC and the federal district court, which entered a partial final judgment finding that May is at fault for the fraud that Plaintiffs allege in connection with the investments. Instead, the Plaintiffs allege that May's tax accounting firm, Defendant Doeren Mayhew & Co., P.C. ("Doeren Mayhew"), and two of Doeren Mayhew's directors, Defendants Todd Fox and James O'Rilley, made purported omissions in connection with the investment opportunities provided by May.

---

[1]     Shortly after the alleged Ponzi scheme collapsed, May purported to execute an assignment for the benefit of creditors pursuant to state law. The assignee, David Findling, subsequently sought bankruptcy protection for May's estate. See *In re the Estate of the Assignment for the Benefit of Creditors of Edward Paul May*, Eastern District of Michigan Bankruptcy Case No. 07-60543. There currently is a motion pending in the bankruptcy court challenging the propriety of the bankruptcy filing. Discovery proceedings in the bankruptcy case have been stayed pending the outcome of that motion.

Specifically, the FAC sets forth the following causes of action against Defendants Todd Fox ("Fox") and James O'Rilley ("O'Rilley"):  Fraud (Count I); Negligent Misrepresentation (Count II); Aiding and Abetting (Count III); Conspiracy to Commit Fraud (Count IV); Civil RICO (Count V); Professional Negligence (Count VI); and Fraudulent Inducement of Loan Agreement (against Fox only) (Count VII). *See generally* FAC.  As will be explained below, Plaintiffs have not alleged facts sufficient to sustain any of these causes of action against Fox and O'Rilley.  On the contrary, the few particularized facts alleged by Plaintiffs establish only that Fox and O'Rilley performed ordinary and legitimate accounting services.  For this reason and the reasons more fully explained below, Fox and O'Rilley respectfully request that the Court dismiss Plaintiffs' First Amended Complaint as against them with prejudice.

### III.    PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiffs filed their original Complaint in this action on February 5, 2008 in Michigan state court alleging Fraud (Count I), Negligent Misrepresentation (Count II), Aiding and Abetting (Count III), Conspiracy to Commit Fraud (Count IV), Fraudulent Inducement (Count V), and Unjust Enrichment (Count VI).  The original Complaint included 60-plus individual Plaintiffs.  On February 26, 2008, Defendant Doeren Mayhew & Co. ("Doeren Mayhew") filed a Motion to Dismiss the original Complaint.  On March 3, 2008, Defendants Todd Fox, James O'Rilley, Joann Fox, Nancy O'Rilley and SamJack Investments, Inc. filed a parallel Motion to Dismiss the original Complaint.

In response to the Motions to Dismiss, Plaintiffs filed the instant First Amended Complaint ("FAC") to which Plaintiffs added nearly 200 additional individual Plaintiffs, added a number of conclusory allegations, and also added a number of new causes of action, including a claim under 18 U.S.C. §1962 ("RICO").  Defendants removed this case to federal court on

3

March 24, 2008.  Defendants Fox and O'Rilley now are moving to dismiss the causes of action

asserted against them in the FAC.[2]

## IV.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when the plaintiffs have failed

to state a claim upon which relief can be granted.  In reviewing a motion to dismiss pursuant to

Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff,

accepting all factual allegations as true.  *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 360

(6th Cir 2001).  However, the Court need not accept as true "legal conclusions or unwarranted

factual inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  "To

survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or

inferential allegations respecting all the material elements to sustain a recovery under some

viable legal theory.'"  *Advocacy Org. for Patients and Providers v. Auto. Club Ins. Ass'n*, 176

F.3d 315, 319 (6th Cir 1999) (quoting *Scheid v Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434,

436 (6th Cir 1988)).

## V.   ARGUMENT

### A.   The Majority Of The Causes Of Action Alleged Against Fox and O'Rilley In Plaintiffs' FAC Are Subject To The Heightened Pleading Requirements Of Federal Rule 9(b).

As set forth above, the FAC sets forth the following causes of action against Fox and

O'Rilley:  Fraud (Count I); Negligent Misrepresentation (Count II); Aiding and Abetting (Count

III); Conspiracy to Commit Fraud (Count IV); RICO (Count V); Professional Negligence (Count

---

[2]        Contemporaneous with the filing of this Motion, co-Defendant Doeren Mayhew and co-Defendants Joann Fox, Nancy O'Rilley and SamJack Investments, Inc. also are filing motions to dismiss the FAC.  Defendants Fox and O'Rilley hereby join in those motions to dismiss.

4

VI); and Fraudulent Inducement of Loan Agreement (against Doeren Mayhew and Fox only) (Count VII). The fraud, negligent misrepresentation, aiding and abetting, conspiracy, RICO, and fraudulent inducement claims are all predicated on allegations of fraud. Accordingly, all of these causes of action are subject to the heightened pleading requirements of Federal Rule 9(b). *See, e.g., German Free State Of Bavaria v. Toyobo Co., Ltd.,* No. 1:06-CV-407, 2007 WL 2986475 (W.D. Mich. Oct. 10, 2007) (court dismissed plaintiffs' negligent misrepresentation claim for failure to plead particular facts establishing a duty or a misrepresentation); *Hall v. Furest,* No. 02-70625, 2006 WL 2987032, *9 (E.D. Mich. Oct. 17, 2006) (unpublished opinion) ("Plaintiffs' fraud and negligent misrepresentations claims fail under [*sic*] Rule 9(b)" for failing to plead "any act of fraud or misrepresentation with particularity"), attached hereto as **Exhibit C**; *Filler v. Hanvit Bank,* 156 Fed. Appx. 413, 417 (2nd Cir. 2005) ("[T]he particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims."); *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985) ("in actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met") [internal citations omitted]; *VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696, 701 (6th Cir. 2000) (Federal Rule 9(b) requirements applied to RICO claim where predicate acts were mail fraud and wire fraud).

Federal Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Failure to state a fraud claim with particularity constitutes failure to state a claim." *DirecTV, Inc. v. Cavanaugh,* 321 F. Supp.2d 825, 835 (E.D. Mich. 2003). Stating fraud with particularity requires "a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org. For Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d

315, 322 (6th Cir. 1999); *Hanning v. Homecomings Fin. Networks*, 436 F. Supp. 2d 865, 870 (W.D. Mich. 2006). In particular, Sixth Circuit requires that allegations of fraud "specif[y] 1) the parties and the participants to the alleged fraud; 2) the representations made; 3) the nature in which the statements are alleged to be misleading or false; 4) the time, place and content of the representations; 5) the fraudulent scheme; 6) the fraudulent intent of the defendants; 7) reliance on the fraud; and 8) the injury resulting from the fraud." *Krear v. Malek*, 961 F. Supp. 1065, 1069 (E.D. Mich. 1997). Finally, "allegations of fraudulent misrepresentations must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.*

Importantly, it is widely recognized that "[g]roup pleading is clearly inconsistent with Rule 9(b)'s express requirements of specificity." *D.E. & J L.P. v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich 2003), *citing In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 888 (W.D.N.C. 2001). In holding that group pleading is not permitted, the *Conaway* court reasoned that "[w]here individual defendants are the target of the fraud allegations, it would be nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that 'the defendant' made the statement or omission." *Id.* at 731. Rather, the court found that "the plaintiff must allege with specificity facts demonstrating a <u>specific defendant's personal involvement</u> in the preparation of the allegedly misleading statements or direct 'operational involvement' with the company; conclusory allegations that the defendant was 'involved in the day to day operations' are insufficient." *Id.* at 732 [underline added]. *See also*, *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1128 (W.D. Mich. 1996) ("Rule 9(b) does not permit plaintiffs to 'lump' defendants together, beyond the group pleading presumption, when charging

6

them with fraudulent actions"). Thus, Plaintiffs' allegations made against Defendants generally, without identifying the particulars of the allegations being made against each Defendant, should be disregarded.

## B.    Plaintiffs Have Failed To Plead Facts Sufficient To Support Their Fraud Claim

To state a cause of action for fraud, the Plaintiffs must plead facts sufficient to show that: (1) the Defendants made a material representation; (2) the representation was false; (3) the Defendants knew the representation was false when made; (4) the Defendants made the representation with the intention that the Plaintiffs would act on it; (5) the Plaintiffs acted in reliance on the representation; and (6) the Plaintiffs suffered injury as a result. *Webb v. First of Mich. Corp.*, 195 Mich. App. 470, 473 (1992).

The FAC's allegations are woefully deficient and internally contradictory on a number of key issues. Importantly, it is not even clear whether Plaintiffs are alleging fraud by a failure to disclose or by affirmative misrepresentation. For instance, in a footnote, Plaintiffs clearly state that their "fraud claims are based on the non-disclosure in the offering materials (that Doeren Mayhew, James O'Rilley, and Todd Fox participated in the preparation of) that was being offered was an interest in a shell Ponzi-scheme vehicle." FAC, p. 23. Yet, in other paragraphs the Plaintiffs refer to alleged "misrepresentations." *See, e.g.,* FAC, ¶¶251, 262. Regardless of whether Plaintiffs are attempting to plead a misrepresentation or a failure to disclose claim, their fraud claim fails as a matter of law.

For example, Plaintiffs do not ascribe *any* fraudulent statements to O'Rilley. As to Fox, Plaintiffs allege at most two statements, both of which are insufficient to support a claim of fraud. First, Plaintiffs allege that Fox made a statement to *one* Plaintiff (of the over 250 named Plaintiffs). Fox allegedly told Plaintiff Thomas Howe in June 2005 that he had developed a

7

depreciation table that allowed Doeren Mayhew to plot the plant equipment for an LLC business.[3] *See* FAC ¶ 230. While Plaintiffs allege that the plant equipment never existed, they do not allege that Fox's alleged statement was false, *i.e.* that he did not in fact develop a depreciation table. Moreover, Plaintiffs do not allege that Howe relied on this alleged statement or that Howe invested in an LLC as a result of this alleged statement. Furthermore, even if Howe alleged reliance, his reliance would not have been reasonable. No reasonable investor would rely on the fact that an accountant had prepared a depreciation table as a basis for investing money. *Novak v. Nationwide Mut. Ins. Co., et al.,* 235 Mich. App. 675, 690 (1999) ("a person who unreasonably relies on false statements should not be entitled to damages for misrepresentation"). Finally, even if this alleged statement was sufficient to support a fraud claim as to Howe (which it is not), it would not support a fraud claim as to the other 250-plus named Plaintiffs.

The only other statement attributed to Fox is that he allegedly told *five of the Plaintiffs* that, "everything was fine," in terms of the LLC's business operations, but that there was a "cash flow problem" because the enterprise had "grown too fast." FAC, ¶256. Mr. Fox supposedly stated that, if a loan of at least $1 million were made, the problem would be resolved. *Id.* He allegedly added that, if such a loan were made, he could use Joann Fox and Nancy O'Rilley to immediately write distribution checks that would bring investors current. *Id.*

---

[3]     Although Plaintiffs also make some vague statements to the effect that Fox told "investors" that he checked the LLC records regularly and that he maintained "invoices," these allegations have no relevance to this lawsuit. None of the "investors" is alleged to be among the named Plaintiffs. In addition, as in the original complaint, these allegations are completely lacking in the requisite specificity to plead a fraud claim. *See* F.R.C.P. 9(b). Specifically, even if Plaintiffs had alleged that they were among these "investors," Plaintiffs do not allege to whom Fox made these statements or when.

8

These alleged statements cannot form the basis of a fraud claim under Michigan law because they constitute predictions of future events:  that "the problem would be resolved" if a loan were made. *Botsford Gen. Hosp. v. United Am. Healthcare Corp.*, 2003 WL 22850448 (Mich. App. Dec 2, 2003) (unpublished opinion), attached hereto as **Exhibit D**.  Such representations regarding future events that fail to transpire as promised cannot form the basis of a fraud claim under Michigan law. *Id.* at *7 (affirming dismissal of fraud claim and finding that alleged statement, "all providers will continue to be paid for their services," constitutes a non-actionable future promise); *see also Webb v. Malmquist*, 195 Mich. App. 470, 471-74 (1992) (dismissing claims by plaintiff investors and finding that the defendant broker's promise of an eighteen percent return rate was "nothing more than a promise of future benefit that cannot, by law, constitute fraud.").

Similarly, the vague statements attributed to Mr. Fox and Mr. O'Rilley, touting the LLCs to unnamed "investors" as "guaranteed high-return" investments at "dog-and-pony" shows, amount to the same type of puffery at issue in *Webb* and cannot form the basis for a fraud claim.

In addition, Plaintiffs allege that Fox and O'Rilley played some role in the preparation of offering memoranda for May's LLCs. *See, e.g.*, FAC ¶220.  Plaintiffs further allege that the offering memoranda concealed the fact that the LLCs were not businesses, but Ponzi-scheme vehicles. *See, e.g.*, FAC, ¶¶222-223.  However, the only particularized[4] allegation that Plaintiffs have made is that O'Rilley allegedly reviewed a draft of offering materials and proposed

---

[4]     Although Plaintiffs make the conclusory assertion that this "practice of community drafting by Messrs. O'Rilley, Fox and May was observed with each offering memorandum," Plaintiffs offer no basis for this allegation.  Indeed, Plaintiffs cannot provide any basis for this allegation because it is blatantly false.

9

revisions for a section relating to the tax consequences of investing in LLCs.  *See* **Exhibit E**.[5]

Contrary to Plaintiffs characterization of this exchange, the actual email exchange makes it clear

that May prepared the offering memorandum and O'Rilley proposed language limited to tax

consequences.  Specifically, May wrote: "Todd: Here is *what I am going to use* as an offering

memorandum and I will include a signature page subscription agreement.  Please revue [sic] and

give me the language to insert *re taxes*." (emphasis added).  In response, O'Rilley wrote:

> Todd & Ed:  I've made changes to the outline in red to add the
> language re: taxes.  The document also went through a "spell
> check" and corrected a couple of spelling/grammar items that were
> not highlighted in red – for example thirty days was changed to
> thirty-days and one time was changed to one-time and $200.000
> was changed to $200,000 … Sorry, but it was an automatic check.
> Please review and let me know if anything requires a further
> change.

**Exhibit E**.  It is plain from this email that May had already drafted and decided on the form of

the offering memorandum, and the *only item* on which May requested assistance was a provision

regarding tax consequences – something that a tax accountant would reasonably be asked to do.

Fox and O'Rilley are alleged to have made no other changes or given any other comments.  *Id.*

Indeed, O'Rilley went so far as to apologize to May that the automatic spell-check made some

changes to the document.  *Id.*  There are no other particularized allegations in the FAC that Fox

and O'Rilley ever reviewed or proposed changes to any other offering memoranda.

Furthermore, there are no allegations in the FAC that May accepted O'Rilley's proposed changes

---

[5]       Because the FAC references and quotes from an email – which they should have
attached - it is now part of the Complaint and the Individual Defendants are entitled to quote
from it as well.  *See Stewart v. Mich.*, No. 05-CV-559, 2006 WL 374207, *1 n.1 (W.D. Mich.
2006) (finding that, despite the inclusion of a document on a motion to dismiss, defendant's
motion could properly be reviewed under a 12(b) standard, as it was plaintiff's duty to include
the referenced writing as part of the complaint).  A complete copy of this email is attached hereto
as **Exhibit E**.

regarding tax consequences, that O'Rilley's proposed tax language appeared in any offering memoranda provided to investors, that O'Rilley had actual knowledge of the alleged Ponzi scheme, that O'Rilley intended to defraud anyone in proposing the tax language, that O'Rilley's proposed tax language was false or misleading in any way, or that even a single investor relied on this tax language in making an investment decision. Without such particularized allegations, Plaintiffs cannot sustain a cause of action for fraud against Fox and O'Rilley.

Other courts have held in analogous situations that, even where accountants may have participated in preparing disclosure materials, accountants do not have a duty to disclose information about their clients to the public. For example, in *Shapiro v. Cantor*, 123 F.3d 717 (2nd Cir. 1997), the court upheld a lower court's finding that an accountant had no duty to inform investors in a partnership that one of the principals in the partnership was a convicted felon. There, the defendant firm was accused of making "representations in the placement memoranda intended to induce investments without disclosing David Greenberg's conviction or that his minor son was the only director and shareholder of one of the limited partnerships." *Id.* at 722. The court concluded that the allegations revealed that the firm's only role was providing financial projections that were included in the offering memoranda. *Id.* "Because this is consistent with the role of an accountant, and because the plaintiffs fail to otherwise allege a 'fiduciary or other similar relation of trust and confidence' between themselves and [the accounting firm], we hold that [the accounting firm] had no duty to disclose David Greenberg's criminal conviction or that his minor son was named the only officer of a limited partnership..."; *see also, In re Cascade Int'l Sec. Litig.*, 894 F. Supp. 437, 443 (S.D. Fla. 1995) (finding that if an accountant does not issue a public opinion about a company, although it may have conducted internal audits or review, "the accountant cannot subsequently be held responsible for the

11

company's public statements issued later merely because the accountant may know the statements are likely untrue.").

Likewise, in this case, the only role that Fox and O'Rilley are alleged to have played with respect to the offering memoranda was drafting one paragraph on the tax consequences of an investment. *See* **Exhibit E**. As in *Shapiro*, this role is consistent with the role of an accountant. Accordingly, Plaintiffs' fraud claim should be dismissed.

### C.   Plaintiffs Have Failed to Plead Facts Sufficient to Support Their Negligent Misrepresentation Claim Because Plaintiffs Were Not Clients of Fox and O'Rilley

Michigan's Accountant Liability Act, M.C.L. § 600.2962, bars claims of negligence brought by non-client plaintiffs against accountants. Plaintiffs' allegations demonstrate that, at most, Fox and O'Rilley had a client relationship with the eight LLCs listed in paragraph 254 (who brought their own, separate negligence count – Count VI). Plaintiffs make no attempt to allege that they, as individuals, were clients of Todd Fox or James O'Rilley. *See generally* FAC. As non-clients, the Plaintiffs are barred from bringing claims against Fox that sound in negligence. *See Chase Bank of Texas, NA v. Grant Thornton LLP*, No. 236237, 2003 WL 21350362, *2 (Mich. App. June 10, 2003) (unpublished opinion) ("[T]he substance of plaintiffs' allegation is negligence rather than fraud ... As a claim for professional negligence, the Michigan Accountant Liability Act ... specifically barred plaintiffs' suit"), attached hereto as **Exhibit F**. This bar includes claims for negligent misrepresentation. *See Yadlosky v. Grant Thornton, LLP*, 120 F. Supp. 2d 622, 634 (E.D. Mich. 2000) (negligent misrepresentation claim was barred because the requirements of the accounting malpractice statute were not met). For this reason, this claim must be dismissed with prejudice.

### D.   Plaintiffs Have Failed To Plead Facts Sufficient To Support Their Claim Of Aiding And Abetting

12

While the Michigan Supreme Court has not expressly recognized a claim for aiding and abetting fraud, it appears that Michigan would require the following elements to sustain such a cause of action: (1) the existence of an independent fraud; (2) actual knowledge of the fraud by the alleged aider and abetter; (3) substantial assistance given to effecting that fraud by the aider and abetter, and (4) the same degree of scienter by the aider and abetter as the person committing the fraud. *Carson Fischer, PLC v. Standard Fed. Bank*, No. 248125, 2005 WL 292343, *5 (Mich. App. Feb. 8, 2005) (unpublished opinion), attached hereto as **Exhibit G**; *rev'd in part on other grounds*, 475 Mich. 851, 713 N.W.2d 265 (2006) (finding that aiding and abetting liability requires that an independent wrong exist, that the aider and abetter know of the wrong's existence, that substantial assistance is given to effecting that wrong and that the aider and abetter have the same degree of scienter as the person committing the actual fraud); *Chase Bank v. Grant Thornton LLP*, No. 236237, 2003 WL 21350362, *4 (Mich. App. 2003) (affirming summary disposition of aiding and abetting fraud claim and requiring substantial assistance and the same degree of scienter as the person committing the actual fraud).

Courts in other jurisdictions consistently hold that a defendant must have actual knowledge of the primary actor's fraud. Constructive knowledge or inquiry notice of the fraud is not sufficient to state a claim for aiding and abetting:

> Knowledge of the fraud, and not merely the undisclosed material facts, is indispensable ... A plaintiff's case against an aider, abetter, or conspirator may not rest on the bare inference that the defendant 'must have had' knowledge of the facts. The plaintiff must support the inference with some reason to conclude that the defendant has thrown in his lot with the primary violators.

*Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 558 (W.D. Mich. 1998) (applying New York law); *Mazzaro de DeAbreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 387 (S.D.N.Y. 2007) (same); *In re Nat'l Century Fin. Enter., Inc.*, 504 F. Supp. 2d 287, 321 (S.D. Ohio 2007) (dismissing an

13

aiding and abetting claim because the "allegations do not support an inference that the Outside Directors had actual knowledge of the falsity of the audits"); *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F.Supp.2d 785, 797 (W.D. Tenn. 1998) ("actual knowledge of the third party's wrongful conduct is required to establish aider and abettor liability"); *U.S. v. Beckner*, 134 F.3d 714, 720 (5th Cir. 1998) ("for an attorney to be convicted of aiding and abetting a client's fraud, the attorney must have had actual knowledge of the fraud. . .").

Claims that an entity received payments for services performed for an alleged fraudster are insufficient to establish aiding and abetting liability. *See, e.g., B.E.L.T. v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005) ("Someone who sells a car at market price to Charles Ponzi is entitled to keep the money without becoming liable to Ponzi's victims for the loss created by his scheme."); *Miller v. Keystone Financial*, 2000 Mich. App. LEXIS 2076, at * 13 (Mich. App. March 3, 2000) ("the mere payment of dividends fails to demonstrate the intent required to prove aiding and abetting"); *Bd. of Trustees of Policemen & Firemen Ret. Sys.*, 2003 WL 33529643, *4 (Mich. App. March 11, 2003) (unpublished decision) (the fact that an entity receives fees for its work does not imply that it had an intent to participate in or cover up fraud), attached hereto as **Exhibit H**. In addition, allegations that a party "knew or should have known" of an alleged fraudulent scheme is not sufficient to state a claim for aiding and abetting liability. *See, e.g., Carson Fischer*, 2005 WL 292343 at *6 (holding that alleging that defendant bank "knew or should have known" of its' customer's scheme "is not the equivalent of 'substantially assisting'" the customer's embezzlement).

In this case, while the FAC is longer than the original Complaint (with nearly 200 paragraphs dedicated to identifying the named Plaintiffs), the substantive allegations in the FAC are the same as they were in the original Complaint – Plaintiffs seek to hold Fox and O'Rilley

liable because they acted as tax accountants for May's LLCs, preparing K-1s and tax advice to them. There are no allegations in the FAC that Fox and O'Rilley had actual knowledge that May was engaged in a fraudulent Ponzi scheme.

Instead, Plaintiffs' aiding and abetting allegations consist of the following generalized allegations:

> 275. Plaintiff investors were defrauded through the scheme detailed in paragraphs 1-100 [sic].
>
> 276. But for the conduct of the Defendants described above, the fact and/or extent of the injury inflicted by the fraudulent Ponzi scheme would not have been realized. Thus, Defendants' conduct, as set forth above, substantially assisted in the perpetration of the primary fraud.
>
> 277. Defendants rendered such substantial assistance with knowledge and/or reckless disregard of the facts establishing the primary tort.

To the extent Plaintiffs are relying on group pleadings against "Defendants" generally, those allegations should be ignored as they are clearly inconsistent with the requirements of Federal Rule 9(b). Plaintiffs are required, under Rule 9(b), to allege particularized facts demonstrating that each Defendant had actual knowledge of the underlying fraud, provided substantial assistance giving effect to the underlying fraud, and had the same level of scienter or intent as the primary fraudulent actor. However, a review of the FAC compels the conclusion that even Plaintiffs do not believe Fox and O'Rilley had actual knowledge of the alleged Ponzi scheme. For instance, Plaintiffs allege that, "To the extent that defendants *were not already fully aware* of the scheme, these records constituted 'red flags.'" *See* FAC, ¶ 250 (emphasis added); FAC ¶ 229 (Another *presumptive basis* for Doeren Mayhew's knowledge of each of the Ponzi-scheme LLC's operations was Doeren Mayhew's acknowledged access to all of the records of each LLC ...") (emphasis added); FAC ¶ 255 ("Had Doeren Mayhew acted with reasonable care,

*it would have discovered (to the extent it did not already know)* that the May LLCs were nothing more than a Ponzi-scheme enterprise) (emphasis added). Even assuming that these allegations are true and that the purported "red flags" should have put Fox and O'Rilley on notice of the "scheme," these allegations only highlight Plaintiffs' failure to allege they had *actual knowledge* of May's alleged Ponzi scheme.

Moreover, Plaintiffs' failure to adequately allege that Fox and O'Rilley had actual knowledge of the underlying alleged fraud compels the conclusion that these Defendants could not have had the same degree of scienter as May. Consequently, the Plaintiffs' failure to plead the same degree of scienter by the aider and abetter as the person committing the actual fraud further mandates dismissal of the Plaintiffs' claim for aiding and abetting liability. *See, e.g., Chase Bank*, 2003 WL 21350362 at *4 (affirming summary disposition of aiding and abetting fraud claim because plaintiffs failed to demonstrate that the defendants had or should have had any knowledge of fraudulent activity).

Accordingly, Plaintiffs' claim for aiding and abetting fraud against Fox and O'Rilley should be dismissed.

### E.      Plaintiffs Have Failed To Plead Facts Sufficient To Support Their Conspiracy To Commit Fraud Claim

Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313 (1992). An allegation of conspiracy standing alone will not suffice — the Plaintiffs must successfully allege the underlying act. *Id.*

For the reasons set forth above, Plaintiffs have not adequately stated a fraud claim in Count I. Consequently, this claim must be dismissed. *See, e.g., Laury v. Colonial Title Co.*, No.

16

272727, 2007 WL 1376352, *3 (Mich. App. May 10, 2007) (unpublished opinion) (dismissing civil conspiracy claim because the underlying claim of fraud failed), attached hereto as **Exhibit I**; *Pedell v. Heartland Health Care Ctr.*, No. 271276, 2007 WL 840876, *9 (Mich. App. March 20, 2007) (unpublished opinion) (holding that because plaintiff's tort claims were properly dismissed, plaintiff's civil conspiracy claim was also correctly dismissed), attached hereto as **Exhibit J**.

In addition, Plaintiffs have failed to sufficient allege a "concerted action" between May and any of the Defendants. Although Plaintiffs allege that "defendants" "agreed among themselves and with Ed May, to commit the fraud described in Count I," there are no factual allegations in support of this conclusory allegation. As previously explained, it is not even alleged that Fox and O'Rilley *knew* that the May LLCs were part of an alleged Ponzi scheme. Plaintiffs only allege that there were "red flags." *See* FAC, ¶ 250. For all of these reasons the conspiracy claim against Fox and O'Rilley should be dismissed with prejudice.

**F.**     **Plaintiffs' FAC Fails To State A Claim Against Fox and O'Rilley For RICO Violations.**

"In order to establish a RICO violation, a plaintiff must show 1) two or more predicate offenses; 2) the existence of an 'enterprise'; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an injury to business." *Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620 (6th Cir. 2001) at 621. "The Supreme Court has described the pattern requirement as 'the heart of any RICO complaint.'" *Id.* "RICO civil claims also require proximate cause." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004) at 612. "[M]ere allegation and/or evidence that an injury to the plaintiff would not have occurred 'but for' the defendant's alleged RICO violation (that is, that the plaintiff sustained a mere 'injury in fact') is insufficient to

17

establish RICO causation." *Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 889 (6th Cir. 2000).

In this case, the alleged predicate acts which form the basis of Plaintiffs' RICO claim are mail fraud.[6]   Where a RICO claim alleges fraud as the predicate act, the particularity requirements of Federal Rule 9(b) apply. *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 701 (6th Cir. 2000) (Fed.R.Civ.P. 9(b) requirements applied to RICO claim where predicate acts were mail fraud and wire fraud); *Tubby's # 14, Ltd. v. Tubby's Sub Shops, Inc.*, No. 04-70918, 2005 WL 3556199, *4 (E.D. Mich. Dec. 29, 2005) (unpublished opinion) ("Where a plaintiff relies upon mail or wire fraud to constitute a predicate act under RICO, Rule 9(b) requires that he must allege, at a minimum, the time, place and contents of the fraudulent communications"), attached hereto as **Exhibit K**. In addition, "the well-established precedent of [the Sixth] [C]ircuit requires that a civil RICO plaintiff alleging mail or wire fraud plead reliance, that is, that a defendant made fraudulent representations to the plaintiff on which the plaintiff relied." *Brown v. Cassens Trans. Co.*, 492 F.3d 640, 643 (6th Cir. 2007).

In *Advocacy Organization For Patients & Providers*, the court addressed whether the plaintiffs sufficiently pled the predicate acts of mail and wire fraud in their RICO claim. The

---

[6]        More accurately, it could be said that Plaintiffs assert a RICO claim arising from the alleged securities fraud scheme of Edward May as described in "the civil complaint filed by the SEC." (FAC ¶222.)   Yet, RICO provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). *See Yadlosky v. Grant Thornton, LLP*, 120 F. Supp. 2d 622 (E.D. Mich. 2000) (dismissing RICO claim against accountants that related to securities fraud). Plaintiffs cannot salvage a RICO claim by relying on mail or wire fraud where the underlying conduct would have been actionable as securities fraud. *ABF Cap. Mgmt v. Askin Cap. Mgm.t, L.P.*, 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997) ("a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud"). Here, because May's alleged conduct is actionable as securities fraud, Plaintiffs' RICO claim should be dismissed.

18

plaintiffs alleged that the defendant insurers misrepresented their intention to pay for their insured customers' automobile accident-related medical expenses. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 323 (6th Cir. 1999). In support of this allegation, the plaintiffs alleged that the defendants intended to accomplish their fraud by knowingly using irrelevant data so as to deny claims or artificially reduce amounts payable. *Id.* The court noted, however, that the plaintiffs alleged no facts to support their allegation that the factors considered by the insurer were irrelevant. *Id.* The court also ruled that no inference could be drawn from the plaintiffs' alleged use of irrelevant data to conclude that the insurer's statements to the insured customers were knowingly false when made. *Id.* at 323-24.

In addition to the particularity requirements of Federal Rule 9(b), to state a claim for conspiracy under 18 U.S.C. §1962(d), "a plaintiff must plead that the defendant agreed to join the conspiracy, agreed to commit predicate acts, and knew that those acts were part of a pattern of racketeering activity." *Broad, Vogt & Conant, Inc. v. Alsthom Automation, Inc.*, 200 F. Supp.2d 756, 759 (E.D. Mich. 2002); *Krear*, 961 F. Supp. at 1071. "[C]onclusory allegations of a RICO conspiracy are legally insufficient." *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 644 F. Supp. 580, 585 (E.D. Mich. 1986) ("complaint fails to allege an agreement, which is the essential element of any conspiracy charge").

In this case, Plaintiffs' four-paragraph RICO count is entirely conclusory and wholly insufficient as a matter of law. While Plaintiffs generally reference "mail fraud" as the alleged predicate act, Plaintiffs fail to allege any particularized facts demonstrating that Fox and O'Rilley used the mails to make knowingly false statements with the intent to defraud. Plaintiffs also fail to allege particularized facts that would support an inference that Fox and O'Rilley agreed to join a conspiracy or that they agreed to commit predicate acts knowing that those acts

19

were part of a pattern of racketeering activity.    At most, Plaintiffs have alleged facts demonstrating that Ed May, the admittedly culpable party, may have used the cover of innocent third-parties, such as the Defendants in this case, to perpetrate a fraudulent Ponzi scheme, but there are no particularized allegations to suggest that Fox and O'Rilley were knowing and willing participants in May's scheme or that Fox and O'Rilley performed any act with the intent to defraud.  Accordingly, Plaintiffs' RICO claim should be dismissed.

**G.    Plaintiffs Have Failed Adequately Allege A Claim For Professional Negligence**

In order to assert a prima facie case of professional negligence against an accountant, a plaintiff must adequately allege: (1) a duty owed by the defendant to the plaintiffs; (2) a breach of that duty; (3) causation; (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (Mich. 2000).  At the outset, it should be noted that only eight of the 250-plus named Plaintiffs are alleged to have "retained" retained Doeren Mayhew, Fox and O'Rilley to perform accounting services.  FAC, ¶289.  While these eight Plaintiffs allege that Fox and O'Rilley breached a duty of care, they do not explain what the nature of the engagement was or what Fox and O'Rilley did or failed to do that constituted a breach of the duty of care.  To the extent these eight Plaintiffs are relying on allegations of fraud to support their claim that Fox and O'Rilley breached a duty of care, then the claim suffers from the same deficiencies as Plaintiffs' fraud claims.  To the extent these eight Plaintiffs are relying on some other alleged conduct, the FAC does not fairly apprise Fox and O'Rilley of the nature of the allegations being made against them and, therefore, this claim should be dismissed.

**H.    Plaintiffs Have Not Stated a Claim For Fraudulent Inducement Of Loan Agreement**

Unlike each of the Plaintiffs' other claims, their claim for fraudulent inducement revolves around an alleged representation made to six (of the more than 200) named Plaintiffs by Todd

20

Fox (and Doeren Mayhew). According to the FAC, May approached these six Plaintiffs[7] seeking a *personal loan* to help with "cash flow problems." FAC, ¶ 256. These Plaintiffs allegedly turned to Mr. Fox for clarification. *Id.* Mr. Fox allegedly told these Plaintiffs that the LLCs were experiencing a cash flow problem but that it could be resolved through a $1 million loan. *Id.* Mr. Fox also allegedly told them that Joann Fox and Nancy O'Rilley could write distribution checks immediately upon receipt of the $1 million loan. *Id.* The Plaintiffs allege that they subsequently loaned Ed May $1 million. *Id.* at ¶ 257.

These facts do no support a claim of fraudulent inducement. The elements of fraudulent inducement are: (1) a false representation of material fact; (2) knowingly or recklessly made; (3) with the intention that another party will rely upon it; (4) actual reliance by the other party; and (5) damages to the relying party as a result. *Arim v. Gen. Motors Corp.*, 206 Mich. App. 178, 195 (1994). Assuming Mr. Fox made the alleged statement to these particular Plaintiffs (Mr. Fox denies as much), there are no facts alleged in the FAC to suggest that Mr. Fox knew the alleged statement was false when made or that he made the alleged statement recklessly.

Moreover, these statements cannot constitute a fraudulent representation under Michigan law because, as discussed in Section B(1)(a) of this Brief, *supra*, they constitute a prediction of a future event: that "the problem would be resolved" if a loan were made. *See supra* at 7-8. Such representations regarding future events that fail to transpire as promised cannot constitute a fraud claim under Michigan law. *Id.* For all of these reasons, this Count must be dismissed.

## VI.   CONCLUSION

---

[7]    One of these six named Plaintiffs, Marvin Friedman, since has withdrawn from this lawsuit for reasons that are yet to be disclosed.

21

WHEREFORE, for all of the foregoing reasons, Defendants Todd Fox and James O'Rilley respectfully request that this Court dismiss the Plaintiffs' First Amended Complaint as against them with prejudice.

Dated:  April 1, 2008

Respectfully submitted,

FOLEY & LARDNER LLP

s/ Scott Seabolt _____
Scott Seabolt (P55890)
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-3489
Phone:  (313) 234-7100
email:  sseabolt@foley.com

Lisa L. Tharpe (of counsel)
Foley & Lardner LLP
321 North Clark St., Suite 2800
Chicago, Illinois  60610
Phone:  (312) 832-4500
email:  ltharpe@foley.com

*Attorneys for Defendants James O'Rilley and Todd R. Fox*

22

CHIC_2447789.2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ACKER, et al.

      Plaintiffs,

                                Case No. 08-11261

v.

                                Hon. Robert H. Cleland

DOEREN MAYHEW & COMPANY, et al.,

      Defendants.

| | |
|---|---|
| R. Christopher Cataldo (P39353)<br>Jaffe, Raitt, Heuer & Weiss, P.C.<br>27777 Franklin Road, Suite 2500<br>Southfield, Michigan 48034<br>(248) 351-3000<br><br>John W. Schryber<br>David C. Silver<br>Patton Boggs, LLP<br>2550 M St., NW<br>Washington, DC 20037<br>(202) 457-6015<br><br>Scott L. Silver<br>Law Offices of Blum & Silver, LL<br>12540 West Atlantic Boulevard<br>Coral Springs, Florida 33071<br>(954) 255-8181<br><br>*Attorneys for Plaintiffs* | Dennis M. Haffey (P26378)<br>Benjamin W. Jeffers (P57161)<br>Matthew Mitchell (P69810)<br>Dykema Gossett PLLC<br>39577 Woodward Avenue, Suite 300<br>Bloomfield Hills, Michigan 48304<br>(248) 203-0813<br>*Attorneys for Defendant Doeren Mayhew*<br>*& Co., P.C.*<br><br>Scott T. Seabolt (P55890)<br>Foley & Lardner LLP<br>One Detroit Center<br>500 Woodward Avenue, Suite 2700<br>Detroit, Michigan 48226<br>(313) 234-7115<br><br>Lisa L. Tharpe (of counsel)<br>Foley & Lardner LLP<br>321 N. Clark, Suite 2800<br>Chicago, Illinois 60610<br>(312) 832-5175<br><br>*Attorneys for Defendants Todd Fox, James*<br>*O'Rilley, Joann Fox, Nancy O'Rilley and*<br>*SamJack Investments, Inc.* |

**PROOF OF SERVICE**

SCOTT T. SEABOLT states that on **April 1, 2008**, he caused to be served Defendants Todd Fox's and James O'Rilley's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6); Brief in Support with Exhibits and this Proof of Service via electronic mail addressed to:

R. Christopher Cataldo, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034

John W. Schryber, Esq.
David C. Silver, Esq.
Patton Boggs, LLP
2550 M. St., NW
Washington, DC 20037

Scott L. Silver, Esq.
Law Offices of Blum & Silver LL
12540 West Atlantic Boulevard
Coral Springs, Florida 33071

_____/s/_____
SCOTT T. SEABOLT

Dated: April 1, 2008

DETR_824426.1