**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN ACKER, KARI ACKER, HENRY ABRAMS,
MICHAEL ABRAMS, BRIAN ADELMAN,
JEFFREY AUGUSTYN, PATRICIA AUGUSTYN,            Case No. 2:08-cv-11261
KATHERINE BARKER, MICHAEL BARKER,
AMY BENGALA, MARIO BENGALA,                     Hon. Paul D. Borman
MARK BERGIN, LORETTA BERTUCCI,
KEITH BOROWY, KAREN BOROWY,
PATRICIA BURGESS, PATRICK BURGESS,
NATALIE CARROLL, MATTHEW CARTER,                **SECOND AMENDED**
PHILIP CARTER, ANDREW COLMAN,                   **COMPLAINT AND**
DEBORAH COLMAN, JOHN DOMBROWSKI,                <u>**JURY DEMAND**</u>
SUSAN DOMBROWSKI, GARY EMERICK,
KATHRYN EMERICK, FRED FERBER,
MORTON FREEDMAN, MICHAEL SCOTT FREELAND,
IRWIN GOREN, STEVEN GOREN, LINDSAY GROSS,
HAROLD HADDEN, JOANNE HADDEN,
JACQUELIN HOLUBKA, BEVERLY HOWE,
PAMELA HOWE, THOMAS HOWE, JEROME KAUFMAN,
DANIEL KENNEDY, LISA KENNEDY, VICTOR KUBANI,
GINO LEDONNE, RONALD LICHT, GILBERT MAYOR,
MICHAEL MCNAMARA, JILL MEHR, VIRGINIA MEHR,
PEPINO MELONI, DAVID MOSS, JOHN MURPHY,
RITA MURPHY, THOMAS A. OBERTS, GARY O'BRYAN,
KATHRYN O'BRYAN, KATHY O'BRYAN,
PATRICK O'BRYAN, DONALD ORLICH,
PATRICIA ORLICH, HERBERT RECHTER,
RONALD RECHTER, NANCY RECHTER, DEAN RHODES,
DANIEL RUSS, KATHLEEN RUSS,
ANNETTE SAMSON-EICHEN, WILLIAM SILVERSTONE,
MURRAY SNYDER, BRENDA STEUER, JULIE STEVENSON,
MARK STEVENSON, MARVIN TRIMAS, CHRISTINE WYZER,
WILLIAM WYZER, MICHAEL ZIMMERMAN,
ALRON CONNECTICUT LLC, ALRON HILTON FLORIDA LLC,
AMERICAN ALLOYS INC., GET YOUR RED ON LLC,
and TPH INVESTMENTS INC.,

AND

PRASHANT ARYA, SMRITI ARYA, GUS AVGOUSTIS,

BETH BALOGH, LAUREN BARKER, SAM BARON, TIM BERGER,
RONALD E. BITTKER, THOMAS BOHN, MARY BOHN,
JEAN BURNS, TONIA BUSCH, LINDA CANZANO,
DAVID CARROLL, RICCARDO J. CECCACCI,
EUGENE F. CHRISTIE, JUDITH W. CHRISTIE,
MICHELLE COLYER, ILENE CRESS, GARY CROCKER,
JAMES CZAPLA, PATRICIA DAVIS, ROBERT DAVIS,
JOSEPH DECKER, ROBERT LEE DERANEK,
JUSTIN DEWITTE, DELYNN DINDOFFER,
TIMOTHY DINDOFFER, WILLIAM DISALVATORE,
ABRAM DOBRUSIN, ANNA DOBRUSIN,
STEVEN FINK, GREGORY FOGLE, JUSTIN R. FOGLE,
ANNE A. GILES, DANIEL K. GILES, ELEANOR GOREN,
FRED GOREN, RICHARD HAMBLEY,
CATHERINE HAMBLEY, CAROL HARRIS,
ROBERT HARRIS, DAVID HATTIE, JAMES M. HEPPARD,
HARRY HILL, MADELINE HILL, BRENT HODGE,
TRACEY HODGE, MICHAEL HORGAN, LISA HORGAN,
WALLACE HOWE, HEATHER HUNTER, JOSEPH HUNTER,
RICHARD JEDLOWSKI, JR., SAMUEL KIRK,
DENISE M. KIZY, JOSEPH KUBANI,
KAY KUTINSKY, BRIAN LAMBRECHT,
KRISTINE LAMBRECHT, DIANA LANDSBERG,
MARK LARAIA, ROBIN LARAIA, DAVID LAWRENCE,
MICHAEL LAX, YVONNE LAX, NANCY LEVERENCE,
DEMETRIOS LIAROS, CLAIRE LIPTEN,
GREGORY LITTLE, PATRICIA L. LITTLE,
PENNY S. LUNDBERG, STEVEN L. LUNDBERG,
JUDITH MACADAM, WILLIAM MACADAM, JR.,
FRANK MANCHEL, SALVATORE MANNINO,
DAVID MCGAHEY, VALERIE MCGUIRE, VERN MCKEEVER,
MATTHEW MEYER, SIDNEY MILLER, TERESA MITCHELL,
BRIAN NICHOLSON, CATHERYNE NICHOLSON,
THOMAS O'BRYAN, LISA O'CONNER,
THOMAS O'CONNER, BRUCE OLSON, JUDY A. OLSON,
JOHN H. OSTRANDER, SALLY PAULS, DONALD PETERSON,
DAPHNE PETERSON, SUZANNE PEW, JAMES PHIPPS,
RHONDA PHIPPS, DOLORES PIELACK, STANLEY PIELACK,
GEORGE POLETES, LISETTE POLETES, DEBORAH POUSHO,
JEFF POUSHO, NANCY A. REID, MARY ANN
RICKENS, WALTER RICKENS,
JUDY ANN ROGERS, ROBERT E. ROSE, PHILIP J. RUEHL,
DAVID SAAR, GORDON SCARLETT, MARKUS SCHLIPPHAK,
DIANA SCHRODER, BEVERLY SHAVER, THOMAS SHAVER,

2

JOHN SHOLANDER, STEVEN SHUSTER, RALPH SILVEY,
SHIRLEY SILVEY, BRYAN SMITH, JENNIFER SMITH,
TERRANCE SMITH, JEANNE H. SNIDER,
KENNETH J. SNIDER, JOHN SOKOLIK, SUSAN SOKOLIK,
STUART SPRAGUE, LINDA ST. LOUIS,
WILLIAM ST. LOUIS, STEVEN T. SUNDBERG,
JOHN THOMAS, BEVERLEY TUORI, WILLIAM TUORI,
STEVE VELASCO, JAMES VELTHOVEN,
MICHAEL VELTHOVEN, TAMMY VELTHOVEN, PAUL VIVIANO,
DARRYL WEBB, JULIE WEBB, MARIANNA WEBB,
RYAN WEBB, JAMES WHITE, MARY WHITE,
RONALD WINTERS, CHRISTOPHER ZERBA,
JULIE ZERBA, YVONNE ZERBA,
JOSEPH ZIELKOWSKI, ROBERT ZIELKOWSKI,
ATLANTIS COMMUNICATIONS PROJECT LLC,
BEVERLY HOWE TRUST, BGLG LLC,
CALIFORNIA HILTON COMMUNICATIONS LLC,
DCMD COMMUNICATIONS LLC,
DYNAMICS FINANCIAL LLC, ENGINEERING BY THE
RUEHLS INC., FLORIDA HILTON COMMUNICATIONS LLC,
GORDON E. SNAVELY FAMILY TRUST, GOTHAM
CITY COMMUNICATIONS LLC, HALE TRUST,
HAMBLEY FAMILY TRUST, ITALIAN PROJECT
TELECOM LLC, JUST INVESTMENTS SOLUTIONS LLC,
MACAU ISLAND COMMUNICATIONS PROJECT LLC,
MARVIN AND MARSHA TRIMAS TRUST,
MT INVESTMENT GROUP LLC, NATALIE CARROLL TRUST,
PETERSON FAMILY TRUST, PIELACK FAMILY TRUST,
ROSEMARY C. SNAVELY FAMILY TRUST, SKI TEC INC.,
SPECS INC., TBNJ TELECOM LLC, and WALLACE E.
HOWE TRUST,

AND

GEORGE ACKERMAN, KATHLEEN ACKERMAN,
MARY AGUILAR, PETER AGUILAR, AGOP ALEXANIAN,
DIANA ALEXANIAN, GAIL M. ANDREWS,
RICHARD F. ANDREWS, JOE AUDINO,
DAVID BACKUS, LESLIE BACKUS, STEPHEN BARD,
NEAL BAUER, JOHN BAYAGICH, SUSAN D.
BERNARDI, ALAN BISHOP, JAMES BOKOVOY,
LINDA BOKOVOY, RICHARD (RICK) M. BOYLAN,
RICHARD W. BOYLAN, CAROL BOYLAN, CONNIE BROWN,
DONALD BROWN, NANCY BROWN, BRANDON BROWN,

KRISTEN BROWN, BRIAN J. BROWN, JEREMY BROWN,
MARSHA BROWN, ROBERT CANZANO, JOHN CHRISTOPHER,
DOROTHY CHRISTOPHER, MARK CHRISTOPHER, JR.,
KIM DARIN, DELORES DERTINGER, RONNIE DIBARTOLOMEO,
ROSSETT ELLISON, SUSAN ERICKSON, DAVID FERTEL,
JOHN FISHER, JR., JEFF FRASER, JESSICA FRASER,
KEVIN GOLDEN, KIMBERLY GOLDEN, DEBRA GREGORY,
RICHARD GREGORY, CHRISTINE GROSS, FERNE HARDESTY,
KELLY HAYES, MAUREEN HAYES, ELVIERA A. HEERSCHE,
DARLENE HYVARINAN, RUDOLPH HYVARINAN,
GEORGE INGBER, JAMES V. JACQUES, JOYCE G. JACQUES,
JASON JACQUES, ANN JORDAN, THOMAS JORDAN,
MARKKU KARELL, IRENE KEFALOS, JOHN KEFALOS,
KENNETH J. KEHOE, JAMES KERR, JUDY KERR,
VIRGINIA LAST, MICHAEL LEWIS, NICOLE LEWIS,
GEORGE K. LOGAN, AARON MAYOR, OSCAR MINICUCI,
GEORGE MITTS, NANCY MITTS, LOUISE R. MOORE, JR.,
PAUL J. MOORE, MATTHEW MOSIER, MICHELLE MOSIER,
DENISE NOWATZKE, TOM NOWATZKE, GERALD S. OGINSKI,
ROBERT ORNELAS, CECELIA ORNELAS, RICHARD PADDISON,
WENDY PADDISON, DEAN PALMER, DEBRA PAWLOSKE,
MICHAEL PAWLOSKE, GERALD J. PEDLAW, CYNTHIA PHILLIPS,
BEVERLY PIRTLE, ROGER PIRTLE, JAMES PRZYSTUP,
CYNTHIA PRZYSTUP, MARK RAYMOND, PATRICIA RAYMOND,
FRED RHEINLANDER, LONNIE L. ROSSO, ROBERT L. ROSSO,
RUSSELL A. SHERLUND, SUSAN E. SHERLUND,
STEFAN SMIETANA, SUSAN SMIETANA, ARTHUR SOLOMON,
MELANIE (BISHOP) SOLOMON, KEVIN SPILLANE,
KIMBERLY SPILLANE, ARTHUR STEUER, HELAINE STEUER,
GREGORY SUNDBERG, PAMELA TATRO, PAUL TATRO,
GERALD TATRO, CARLOS THOME, CHESTER TROCHA,
HEIDI TROCHA, PHILLIP VICK, GLORIA M. WESTERBACK,
NORMAN L. WESTERBACK, JAMES WILLIAMS,
BRIAN WINSHALL, BARRY WISS, DONALD WISS,
WILLIAM WISS, ARTHUR STEUER LIVING TRUST,
BANKEY COMM LLC, DELORES DERTINGER REVOCABLE
TRUST, DMP INVESTMENTS LLC, HELAINE STEUER LIVING
TRUST, JAMES WILLIAMS TRUST, JOHN OR RITA MURPHY
TRUST, MURPHY FAMILY TRUST, WENDY A. PADDISON
LIVING TRUST, and WINSHALL, WELLES & PACINI LLC,

AND

DORIS BACKUS, DAVID BOLLA, ROBERT BREITMAN,

4

JOYCE BREITMAN, MARGUERITE BROCKWAY,
DALE BUKOSKI, DEBORAH BUKOSKI, MICHAEL BULLER,
TAMERA CALMER, CHRISTOPHER CAMDEN,
TRACIE CAMDEN, MICHAEL CARUSO, AARON FOURNIER,
KATHLEEN FOURNIER, SHARON FRASER, VICTOR GORDON,
BEVERLY GORDON, SUDHIR GUPTA, VIJAYA GUPTA,
HARRY HARTUNIAN, JEFF HAZZARD, CARMA HUFF,
KENNETH HUFF, REBECCA KAIN, SONIA KOHLER,
CHRISTIANA KUZYK, PETER KUZYK,
MARIA LIWAG-DIXON, THOMAS LOWE, JAMES LUTZ,
SANDY LUTZ, MICHAEL LYNN, ANGEL LYNN,
JOHN MCLANE, JANIS MCLANE, JAMES MCMULLEN,
RITA MCMULLEN, DOUGLAS MIRES, NANCY MIRES,
ROGER NORMAN, CAROLYN NORMAN, MITCHELL RECHTER,
JAMES ROLAND, KATHLEEN ROLAND, CHARLES T. SMITH,
DEBRA SMITH, TERRY SMITH, DEREK STEIN, BRIAN STEUER,
STEVEN TATRO, CRISTINA VELLANOWETH,
ROBERTO VELLANOWETH, ROSE VELLANOWETH,
CAROL VLACHOS, STACEY VLACHOS, BLAKE VOORHEES,
CAROL WAYNE, MICHAEL WAYNE, JAMES WEREMY,
JUDY WEREMY, FURPH HOLDINGS LLC,
JEAN BURNS REVOCABLE TRUST, JPAMM LLC,
VELLANOWETH FAMILY PROPERTIES LLC, and
WAYNE ACQUISITIONS LLC,

       Plaintiffs,

v.

DOEREN MAYHEW & COMPANY,
PROFESSIONAL CORPORATION
d/b/a DOEREN MAYHEW, TODD R. FOX,
JAMES P. O'RILLEY, JOANN FOX,
NANCY O'RILLEY, and
SAMJACK INVESTMENTS, INC.,

       Defendants.

_____/

5

R. Christopher Cataldo  (P39353)
Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin Rd., Ste. 2500
Southfield, MI  48034
(248) 351-3000
ccataldo@jaffelaw.com
*Attorneys for Plaintiffs*

John W. Schryber
David C. Silver
Norah D. Molnar
Patton Boggs LLP
2550 M St., NW
Washington, DC 20037
(202) 457-6000
jschryber@pattonboggs.com
*Attorneys for Plaintiffs*

Scott L. Silver
Blum & Silver, LLP
12540 West Atlantic Blvd.
Coral Springs, FL 33071
(954) 255-8181
silver@stockattorneys.com
*Attorneys for Plaintiffs*

Dennis M. Haffey (P26378)
Benjamin W. Jeffers (P57161)
Matthew Mitchell (P69810)
Dykema Gossett PLLC
39577 Woodward Ave., Ste. 300
Bloomfield Hills, MI 48304
(248) 203-0813
bjeffers@dykema.com
*Attorneys for Defendant Doeren Mayhew &
Co., P.C.*

Scott T. Seabolt (P55890)
Foley & Lardner LLP
One Detroit Center
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
(313) 234-7115
sseabolt@foley.com
*Attorneys for Defendants Todd Fox, James
O'Rilley, JoAnn Fox, Nancy O'Rilley, and
SamJack Investments, Inc.*

---

6

<u>**SECOND AMENDED COMPLAINT AND JURY DEMAND**</u>

Plaintiffs, by their undersigned counsel, allege upon information and belief as follows:

<u>**INTRODUCTION**</u>

1.       This is a tragic case of a major regional firm of certified public accountants –
Doeren Mayhew & Company, P.C. ("Doeren Mayhew") – using its name to promote a $250
million Ponzi-scheme that it controlled through two of its directors (and their wives).

2.       While this Ponzi-scheme generated ill-gotten fees for Doeren Mayhew, the
plaintiffs are innocent investors and victims, losing in excess of $28 million in reliance upon the
*seriatim* false and misleading statements by Doeren Mayhew attesting to the legitimacy of the
investment vehicles used to perpetuate this fraudulent, if not criminal, enterprise.

3.       The Ponzi-scheme was controlled by Doeren Mayhew.  Like all Ponzi-schemes,
this one required deft cash flow management and accounting, inasmuch as no investment vehicle
generates actual operating income in a Ponzi-scheme; rather, the cash in-flow represents recycled
proceeds of prior cash investments and new investments spawned by the false impression that
these were valid investment vehicles.   Whereas most CPA firms provide the ostensibly
independent function of auditing or reviewing financial data prepared by the client in the first
instance, in this highly unusual case, two of the directors of Doeren Mayhew, Todd Fox and
James O'Rilley, directly or indirectly (through their wives), went far beyond the "review" role of
"tax preparer" for the more than 200 "Ed May LLCs" through which the Ponzi-scheme cash
flowed.  They co-authored the offering documents, developed the "cash flow plan" followed by
the Ponzi-scheme enterprise, wrote the checks that disbursed the Ponzi-scheme cash, solicited
sales of interests in the Ponzi-scheme LLCs, prepared or reviewed monthly summaries that they

mailed to investors reporting on each LLC's "expenses" and distributed "income," and maintained, in the first instance, the same books of account that they were called upon to review in preparing Form 1065/K-1 tax returns for each of these Ed May LLCs.

4.      By law, any engagement to provide Form 1065 tax returns to the subject corporate entity requires that the tax preparer create and deliver an individual K-1 tax return to each shareholder (or "Member") of that entity, calculating the Member's share of any operating income or loss.  Here, Doeren Mayhew prepared and mailed K-1 tax returns to all plaintiffs who had invested through 2006.  In each case, the tax returns contained information that Doeren Mayhew knew to be false.  Whereas none of the Ed May LLCs in which plaintiffs invested (the "subject LLCs") had any ongoing business operations, each tax return signed by Doeren Mayhew represented that the subject LLC incurred "ordinary business income" or "ordinary business loss."   Doeren Mayhew signed that return even though its doing so constitutes a representation that it is neither aware that any of the financial data therein is false nor aware of any "red flags" that the data may be false.  Plaintiffs relied on this representation by Messrs. Fox and O'Rilley and Doeren Mayhew in retaining their interests in the subject LLCs and forbearing rescission of the offerings which, if undertaken, would have entitled plaintiffs to recover at least part of their purchase proceeds from the account of a seller, E-M Management Co., LLC ("E-M").

5.      In a contrived attempt to avoid the imputation to Doeren Mayhew of the knowledge gained by James O'Rilley and Todd Fox in their role as "company bookkeeper" for each subject LLC, O'Rilley and Fox formed a corporation, "SamJack Investments, Inc." ("SamJack"), to conduct the internal bookkeeping of each subject LLC.  However, the officers of

SamJack were James O'Rilley and Todd Fox, and the "employees" of "SamJack" acting under their direction were none other than their own wives, Nancy O'Rilley and JoAnn Fox.  The e-mail account through which the Foxes and the O'Rilleys would correspond on bookkeeping matters was aptly titled "EMBookkeepers."  The internal books of the Ponzi-scheme entities showed that the amounts being paid to SamJack were for "professional" fees – the same "expense" account to which the fees paid to Doeren Mayhew was charged.  (Other SamJack fees were charged to the "management" expense account of the subject LLC.)  By undertaking the role of "EMBookkeepers," the Doeren Mayhew directors not only controlled the flow of financial information all the way through the tax return stage, but also gained financially.  The "EMBookkeepers" were paid approximately $20,000 per month for their "bookkeeping." Tellingly, neither the offering documents nor the monthly summaries prepared and mailed to plaintiffs revealed that SamJack even existed, much less that it had been hired to do the bookkeeping of "the company," much less that it had been hired at the rate of $20,000 per month, much less that it was managed by the same persons who managed Doeren Mayhew, much less that the compensation that it was receiving was for "professional" or "management" work.

6.     The monthly summaries mailed by the "EMBookkeepers," like the tax returns signed by Doeren Mayhew, provided information regarding "expenses" and "income."  The Foxes and the O'Rilleys knew that these reports were not even true portrayals of what was depicted on the books that the "EMBookkeepers" were keeping.  For example, what the monthly summaries referred to as a "$100" "prep fee" (without naming the payee) was referred to in the LLC's books as a "professional" or "management" fee paid to "SamJack."  In addition, whereas

internal books recorded the expense of "referral fees" paid to Frank Bluestein, a representative of a broker, GunnAllen, who solicited investor purchases, the monthly statements represented that this payment was merely a distribution of income, rather than an expense.  This not only covered-up the fact that the LLCs would pay referral fees – a fact not disclosed in any of the offering documents of the subject LLCs – but it also resulted in the understatement of expenses. These monthly summaries, like the tax returns, were intended by defendants to cause plaintiffs to retain their positions and forbear from requiring rescission.

7.      Just as the amount of fees paid to the Doeren Mayhew directors via "SamJack" depended on the number of different corporate entities that were created as investment vehicles (inasmuch as SamJack was paid based on the number of LLCs for whom it wrote checks), the amount of fees paid to Doeren Mayhew corresponded to the volume of Ed May LLCs participating in the Ponzi-scheme.  Doeren Mayhew was paid for its "tax preparation" work on a per-return basis. For this reason, Doeren Mayhew advised that rather than having each Ed May "project" managed by the single entity E-M, each project should be marketed as its own, new, LLC.  This advice was followed, and more than 200 LLCs were formed and "operating" after 2005 – even though each of the subject LLCs corresponded to "projects" which were non-existent.

8.      To assure the success of the offerings of these many LLCs from which the Fox and O'Rilley households and Doeren Mayhew stood to reap significant financial gain, the scope of work performed by Doeren Mayhew (as its Managing Director, Mark Crawford, has since admitted) included preparing, reviewing, and editing the offering memoranda pursuant to which units in each of the subject LLCs were offered to investors.  The offering documents co-authored

10

by Doeren Mayhew contained affirmative and material misrepresentations on the subject of the LLC's "business operations and plan" when, in fact, the subject LLCs had no such operations or plan (but were merely Ponzi-scheme shells).

9.     For example, each of the offering memoranda reported that a "deposit" had already been paid for the subject LLC's purchase of telecommunications "equipment" pursuant to an existing "agreement" with some supplier.  As Doeren Mayhew now acknowledges, these "facts" were false.  Indeed, the books of the LLCs maintained by "EMBookkeepers" Nancy O'Rilley and JoAnn Fox (under their husbands' supervision) did not report *any* such payment amount as a "deposit" or otherwise, by *any* LLC, towards the purchase of *anything*, as of the date of the subject offering.  Indeed, Doeren Mayhew knew, prior to 2005, that the LLCs were not even separate entities capable of generating allocable income or expenses.  Whereas the operating agreement for each offered LLC (the text of which was part of the offering materials co-authored by Doeren Mayhew) stated that each LLC would maintain its own banking account and that its funds would not be commingled with the funds of any other entity, because the formation of so many LLCs was entirely artificial and done purely to churn fees for Doeren Mayhew and "SamJack," nearly all cash that flowed into any LLC flowed from E-M, and nearly all cash that flowed out of any LLC flowed to E-M.  The books of the subject LLCs also did not report any expenses associated with an operating business.  All of these facts were apparent on the face of the books maintained by the EMBookkeepers, i.e., the Foxes and the O'Rilleys, whose knowledge also is the knowledge of Doeren Mayhew and "SamJack."  Of course, because Doeren Mayhew prepared tax returns for each individual LLC (and for each of the LLCs'

members), Doeren Mayhew could not properly do so without considering that the subject LLCs'
internal books showed no product-related expenses at all.

10.     As if it were not enough to be a co-author of the offering materials or to keep
the books or to prepare the tax returns or to provide monthly summary statements to investors, or
to manage the cash flow, Doeren Mayhew directors and their wives also solicited purchases for
the financial gain that would accrue to them as noted above, for each new investment that was
made.

11.     Not content with receiving fees of about $20,000 per month via "SamJack" or
receiving "tax preparation" fees for each tax return prepared for each phony LLC, Doeren
Mayhew provided advice on how E-M could transfer funds out of E-M (the entity that received
investor funds) to a shell company, "Browning," and on to Doeren Mayhew.  Although Doeren
Mayhew's Managing Director, Mark Crawford, has stated publicly that the fees paid to it by E-
M were based on the tax returns that it prepared, the truth is that Doeren Mayhew also submitted
invoices to Ed May LLCs that claimed an independent basis for fees – and was paid on that basis
as well.  For example, in September 2006, Doeren Mayhew billed two Ed May LLCs for
"monthly accounting assistance" and "handl[ing] various questions of management."  Browning,
although it had no operations or income at all, was billed that same month for Doeren Mayhew's
participation in "management/attorney meetings."   To get such bills paid, Doeren Mayhew
advised Jeff May, the son of Ed May, that he could transfer funds from E-M to Browning and on
to the other Ed May LLCs and then on to Doeren Mayhew – even though Doeren Mayhew knew
that E-M's bank account was the repository for investor funds in the subject LLCs.

12

12.     Thus, Doeren Mayhew, acting through SamJack, Messrs. Fox and O'Rilley and their wives, gained control over the LLCs and engaged in a pattern of activities that ensured the perpetuation of this Ponzi-scheme enterprise of which they were an integral and participative part.  The enterprise used the U.S. mail system extensively to deliver offering documents and checks to investors purportedly to be a return of the LLCs' "operating income" and further disseminate "summary sheets" purporting to show the "income" generated by the subject LLC (when there was none) and expenses (some of which were fictitious).

13.     Doeren Mayhew came to the table with some prior experience with Ponzi-schemes.  At the same time that Doeren Mayhew was controlling this scheme, it was advising MCA Financial Corporation, another company that had launched a Ponzi-scheme.  In settlement of charges against Doeren Mayhew for its alleged passive role in that scheme, Doeren Mayhew agreed, in 2004, to create an "Independence Oversight Director" to develop procedures which, if followed, would not permit a Ponzi-scheme to escape detection even in circumstances, unlike those here, where Doeren Mayhew's directors were not involved in management decisions.

14.     For some of the Plaintiff-investors, life savings were all but eradicated.  To the extent defendants acted with knowledge (or reckless disregard) of the fraud that was being perpetuated under their noses, exemplary damages of $30 million are sought in addition to restitution of plaintiffs' purchase money proceeds from the investments listed in Exhibit A (net of any dividends or distributions received).  Treble damages and attorneys fees also are sought for their use of a pattern of mail fraud to perpetuate their illegal enterprise.  At minimum, Doeren Mayhew's sundry misrepresentations to investors, including those made in each offering memorandum, constitute multiple negligent misrepresentations for which Doeren Mayhew, Todd

13

Fox, and James O'Rilley are liable.  Additional relief is sought herein, as more fully set forth below.

**JURISDICTION AND VENUE**

15.     Jurisdiction over this action is based on 28 U.S.C. § 1331.

16.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c).

**THE PARTIES**

**Plaintiffs**

17.     Plaintiffs John and Kari Acker are individuals residing in Farmington Hills, Michigan.

18.     Plaintiff Henry Abrams is an individual residing in West Bloomfield, Michigan.

19.     Plaintiff Michael Abrams is an individual residing in Bloomfield Village, Michigan.

20.     Plaintiff Brian Adelman is an individual residing in West Bloomfield, Michigan.

21.     Plaintiffs Jeffrey and Patricia Augustyn are individuals residing in Highland, Michigan.

22.     Plaintiffs Michael and Katherine Barker are individuals residing in Highland, Michigan.

23.     Plaintiffs Mario and Amy Bengala are individuals residing in Howell, Michigan.

24.     Plaintiff Mark Bergin is an individual residing in Troy, Michigan.

25.     Plaintiff Loretta Bertucci is an individual residing in Waterford, Michigan.

14

26.     Plaintiffs Keith and Karen Borowy are individuals residing in Beverly Hills, Michigan.

27.     Plaintiffs Patrick and Patricia Burgess are individuals residing in Farmington Hills, Michigan.

28.     Plaintiff Natalie Carroll is an individual residing in West Bloomfield, Michigan.

29.     Plaintiff Matthew Carter is an individual residing in Waterford, Michigan.

30.     Plaintiff Philip Carter is an individual residing in Waterford, Michigan.

31.     Plaintiffs Andrew and Deborah Colman are individuals residing in Bloomfield Hills, Michigan.

32.     Plaintiffs John and Susan Dombrowski are individuals residing in Milford, Michigan.

33.     Plaintiffs Gary and Kathryn Emerick are individuals residing in Canton, Michigan.

34.     Plaintiff Fred Ferber is an individual residing in Orchard Lake, Michigan.

35.     Plaintiff Morton Freedman is an individual residing in Orchard Lake, Michigan.

36.     Plaintiff Michael Scott Freeland is an individual residing in Sterling Heights, Michigan.

37.     Plaintiff Irwin Goren is an individual residing in Bloomfield Hills, Michigan.

38.     Plaintiff Steven Goren is an individual residing in Farmington Hills, Michigan.

39.     Plaintiff Lindsay Gross is an individual residing in West Bloomfield, Michigan.

40.     Plaintiffs Harold and Joanne Hadden are individuals residing in Ortonville, Michigan.

1567135.02

41.      Plaintiffs Gilbert Mayor and Jacquelin Holubka are individuals residing in Morristown, New Jersey.

42.      Plaintiff Beverly Howe is an individual residing in Flushing, Michigan.

43.      Plaintiffs Thomas and Pamela Howe are individuals residing in Fenton, Michigan.

44.      Plaintiff Jerome Kaufman is an individual residing in West Bloomfield, Michigan.

45.      Plaintiffs Daniel and Lisa Kennedy are individuals residing in Fowlerville, Michigan.

46.      Plaintiff Victor Kubani is an individual residing in Clarkston, Michigan.

47.      Plaintiffs Gino LeDonne is an individual residing in Orion, Michigan.

48.      Plaintiff Ronald Licht passed away on June 26, 2008 and his estate has not yet been opened.   Mr. Licht's successor or representative will move for substitution at the appropriate time.  Mr. Licht resided in Farmington Hills, Michigan until his death.

49.      Plaintiff Michael McNamara is an individual residing in Westminster, South Carolina.

50.      Plaintiffs Jill and Virginia Mehr are individuals residing in West Bloomfield, Michigan.

51.      Plaintiff Pepino Meloni is an individual residing in Livonia, Michigan.

52.      Plaintiff David Moss is an individual residing in Delray Beach, Florida.

53.      Plaintiffs John and Rita Murphy are individuals residing in Waterford, Michigan.

54.     Plaintiff Thomas A. Oberts is an individual residing in Howell, Michigan.

55.     Plaintiffs Gary and Kathy O'Bryan are individuals residing in Beverly Hills, Michigan.

56.     Plaintiffs Patrick and Kathryn O'Bryan are individuals residing in Highland, Michigan.

57.     Plaintiffs Donald and Patricia Orlich are individuals residing in Bloomfield Hills, Michigan.

58.     Plaintiff Herbert Rechter is an individual residing in Boca Raton, Florida.

59.     Plaintiffs Ronald and Nancy Rechter are individuals residing in West Bloomfield, Michigan.

60.     Plaintiff Dean Rhodes is an individual residing in Highland, Michigan.

61.     Plaintiffs Daniel and Kathleen Russ are individuals residing in Grand Blanc, Michigan.

62.     Plaintiff Annette Samson-Eichen is an individual residing in Bernardsville, New Jersey.

63.     Plaintiff William Silverstone is an individual residing in Commerce, Michigan.

64.     Plaintiff Murray Snyder is an individual residing in Boca Raton, Florida.

65.     Plaintiff Brenda Steuer is an individual residing in Bloomfield, Michigan.

66.     Plaintiffs Mark and Julie Stevenson are individuals residing in Chesterfield, Michigan.

67.     Plaintiff Marvin Trimas is an individual residing in Farmington Hills, Michigan.

68.     Plaintiffs William and Christine Wyzer are individuals residing in Highland, Michigan.

69.     Plaintiff Michael Zimmerman is an individual residing in Waterford, Michigan.

70.     Plaintiff Alron Connecticut LLC is a limited liability company organized under the laws of Michigan.

71.     Plaintiff Alron Hilton Florida LLC is a limited liability company organized under the laws of Michigan.

72.     Plaintiff American Alloys Inc. is a corporation organized under the laws of Michigan.

73.     Plaintiff Get Your Red On LLC is a limited liability company organized under the laws of Michigan.

74.     Plaintiff TPH Investments Inc. is a corporation organized under the laws of Michigan.

75.     Plaintiffs Prashant and Smriti Arya are individuals residing in West Bloomfield, Michigan.

76.     Plaintiff Gus Avgoustis is an individual residing in Westland, Michigan.

77.     Plaintiff Beth Balogh is an individual residing in Ann Arbor, Michigan.

78.     Plaintiff Lauren Barker is an individual residing in Milford, Michigan.

79.     Plaintiff Sam Baron is an individual residing in Farmington Hills, Michigan.

80.     Plaintiff Tim Berger is an individual residing in Brighton, Michigan.

81.     Plaintiff Ronald E. Bittker is an individual residing in Bloomfield, Michigan.

82.     Plaintiffs Thomas and Mary Bohn are individuals residing in Northville, Michigan.

83.     Plaintiff Jean Burns is an individual residing in Vermillion, Ohio.

84.     Plaintiff Tonia Busch is an individual residing in Walled Lake, Michigan.

85.     Plaintiff Linda Canzano is an individual residing in Canton, Michigan.

86.     Plaintiff David Carroll is an individual residing in West Bloomfield, Michigan.

87.     Plaintiff Riccardo Ceccacci is an individual residing in Beverly Hills, Michigan.

88.     Plaintiffs Eugene F. and Judith W. Christie are individuals residing in Troy, Michigan.

89.     Plaintiff Michelle Colyer is an individual residing in Royal Oak, Michigan.

90.     Plaintiff Ilene Cress is an individual residing in Benicia, California.

91.     Plaintiff Gary Crocker is an individual residing in Troy, Michigan.

92.     Plaintiff James Czapla is an individual residing in Sterling Heights, Michigan.

93.     Plaintiffs Robert and Patricia Davis are individuals residing in Fenton, Michigan.

94.     Plaintiff Joseph Decker is an individual residing in Chesterfield, Michigan.

95.     Plaintiff Robert Lee Deranek is an individual residing in Ann Arbor, Michigan.

96.     Plaintiff Justin DeWitte is an individual residing in Macomb, Michigan.

97.     Plaintiffs Timothy and Delynn Dindoffer are individuals residing in West Bloomfield, Michigan.

98.     Plaintiff William DiSalvatore is an individual residing in Bayside, Michigan.

99.     Plaintiffs Abram and Anna Dobrusin are individuals residing in West Bloomfield, Michigan.

100.    Plaintiff Steven Fink is an individual residing in West Bloomfield, Michigan.

101.    Plaintiff Gregory Fogle is an individual residing in Mt. Pleasant, Michigan.

102.    Plaintiff Justin R. Fogle is an individual residing in West Bloomfield, Michigan.

103.    Plaintiffs Anne A. and Daniel K. Giles are individuals residing in White Lake, Michigan.

104.    Plaintiffs Eleanor and Fred Goren are individuals residing in Bloomfield, Michigan.

105.    Plaintiffs Richard and Catherine Hambley are individuals residing in Monterey, Michigan.

106.    Plaintiffs Robert and Carol Harris are individuals residing in Redford, Michigan.

107.    Plaintiff David Hattie is an individual residing in Waterford, Michigan.

108.    Plaintiff James M. Heppard is an individual residing in West Bloomfield, Michigan.

109.    Plaintiffs Harry and Madeline Hill are individuals residing in Lincoln Park, Michigan.

110.    Plaintiffs Brent and Tracey Hodge are individuals residing in Brighton, Michigan.

111.    Plaintiffs Lisa and Michael Horgan are individuals residing in Laketown, Michigan.

20

112.     Plaintiff Wallace Howe is an individual residing in Flushing, Michigan.

113.     Plaintiffs Heather and Joseph Hunter are individuals residing in Ann Arbor, Michigan.

114.     Plaintiff Richard Jedlowski, Jr. is an individual residing in San Francisco, California.

115.     Plaintiff Samuel Kirk is an individual residing in Euless, Texas.

116.     Plaintiff Denise M. Kizy is an individual residing in Beverly Hills, Michigan.

117.     Plaintiff Joseph Kubani is an individual residing in Highland, Michigan.

118.     Plaintiff Kay Kutinsky is an individual residing in Southfield, Michigan.

119.     Plaintiffs Brian and Kristine Lambrecht are individuals residing in Orion, Michigan.

120.     Plaintiff Diana Landsberg is an individual residing in South Lyon, Michigan.

121.     Plaintiffs Mark and Robin LaRaia are individuals residing in Clarkston, Michigan.

122.     Plaintiff David Lawrence is an individual residing in Clarkston, Michigan.

123.     Plaintiffs Michael and Yvonne Lax are individuals residing in Plymouth, Michigan.

124.     Plaintiff Nancy Leverence is an individual residing in Ray, Michigan.

125.     Plaintiff Demetrios Liaros is an individual residing in Brandenton, Florida.

126.     Plaintiff Claire Lipten is an individual residing in West Bloomfield, Michigan.

127.     Plaintiffs Gregory and Patricia L. Little are individuals residing in Rochester Hills, Michigan.

128.     Plaintiffs Penny S. and Steven L. Lundberg are individuals residing in Shelby Township, Michigan.

129.     Plaintiffs William, Jr. and Judith MacAdam are individuals residing in Chocowinity, North Carolina.

130.     Plaintiff Frank Manchel is an individual residing in West Bloomfield, Michigan.

131.     Plaintiff Salvatore Mannino is an individual residing in Taylor, Michigan.

132.     Plaintiff David McGahey is an individual residing in Clarkston, Michigan.

133.     Plaintiff Valerie McGuire is an individual residing in Sterling Heights, Michigan.

134.     Plaintiff Vern McKeever is an individual residing in Highland, Michigan.

135.     Plaintiff Matthew Meyer is an individual residing in Oxford, Michigan.

136.     Plaintiff Sidney Miller is an individual residing in Fairfield Glade, Tennessee.

137.     Plaintiff Teresa Mitchell is an individual residing in Madison Heights, Michigan.

138.     Plaintiffs Brian and Catheryne Nicholson are individuals residing in San Carlos, California.

139.     Plaintiff Thomas O'Bryan is an individual residing in Beverly Hills, Michigan.

140.     Plaintiffs Lisa and Thomas O'Conner are individuals residing in Andover, Michigan.

141.     Plaintiffs Bruce A. and Judy A. Olson are individuals residing in Troy, Michigan.

22

142.    Plaintiff John H. Ostrander is an individual residing in West Bloomfield, Michigan.

143.    Plaintiff Sally Pauls is an individual residing in Rochester Hills, Michigan.

144.    Plaintiffs Donald and Daphne Peterson are individuals residing in Santa Rosa, California.

145.    Plaintiff Suzanne Pew is an individual residing in Milford, Michigan.

146.    Plaintiffs James and Rhonda Phipps are individuals residing in Commerce Township, Michigan.

147.    Plaintiffs Dolores and Stanley Pielack are individuals residing in Grand Blanc, Michigan.

148.    Plaintiffs George and Lisette Poletes are individuals residing in Brighton, Michigan.

149.    Plaintiffs Deborah and Jeff Pousho are individuals residing in Brighton, Michigan.

150.    Plaintiff Nancy Reid is an individual residing in Ann Arbor, Michigan.

151.    Plaintiffs Mary Ann and Walter Rickens are individuals residing in White Lake, Michigan.

152.    Plaintiff Judy Ann Rogers is an individual residing in Waterford, Michigan.

153.    Plaintiff Robert E. Rose is an individual residing in Sterling Heights, Michigan.

154.    Plaintiff Philip J. Ruehl is an individual residing in Walled Lake, Michigan.

155.    Plaintiff David Saar is an individual residing in Rochester Hills, Michigan.

156.    Plaintiff Gordon Scarlett is an individual residing in Okemos, Michigan.

157.     Plaintiff Markus Schlipphak is an individual residing in Troy, Michigan.

158.     Plaintiff Diana Schroder is an individual residing in Clarkston, Michigan.

159.     Plaintiffs Beverly and Thomas Shaver are individuals residing in Clarkston, Michigan.

160.     Plaintiff John Sholander is an individual residing in Troy, Michigan.

161.     Plaintiff Steven Shuster is an individual residing in West Bloomfield, Michigan.

162.     Plaintiffs Ralph and Shirley Silvey are individuals residing in Ann Arbor, Michigan.

163.     Plaintiffs Bryan and Jennifer Smith are individuals residing in Bloomfield Hills, Michigan.

164.     Plaintiff Terrance Smith is an individual residing in Southfield, Michigan.

165.     Plaintiffs Jeanne H. and Kenneth J. Snider are individuals residing in Michigan.

166.     Plaintiffs John and Susan Sokolik are individuals residing in South Lyon, Michigan.

167.     Plaintiff Stuart Sprague is an individual residing in Chicago, Illinois.

168.     Plaintiffs Linda and William St. Louis are individuals residing in Rochester Hills, Michigan.

169.     Plaintiff Steven T. Sundberg is an individual residing in Troy, Michigan.

170.     Plaintiff John Thomas is an individual residing in Milford, Michigan.

171.     Plaintiffs William and Beverley Tuori are individuals residing in Calena, Illinois.

172.     Plaintiff Steve Velasco is an individual residing in Shelby Township, Michigan.

24

173.     Plaintiff James Velthoven is an individual residing in White Lake, Michigan.

174.     Plaintiffs Michael and Tammy Velthoven are individuals residing in Berkley, Michigan.

175.     Plaintiff Paul Viviano is an individual residing in Shelby Township, Michigan.

176.     Plaintiffs Darryl and Marianna Webb are individuals residing in Royal Oak, Michigan.

177.     Plaintiffs Ryan and Julie Webb are individuals residing in Ann Arbor, Michigan.

178.     Plaintiffs James and Mary White are individuals residing in Clarkston, Michigan.

179.     Plaintiff Ronald Winters is an individual residing in Fenton, Michigan.

180.     Plaintiffs Christopher and Julie Zerba are individuals residing in Michigan.

181.     Plaintiff Yvonne Zerba is an individual residing in Waterford, Michigan.

182.     Plaintiff Joseph Zielkowski is an individual residing in Sun City Center, Michigan.

183.     Plaintiff Robert Zielkowski is an individual residing in Howell, Michigan.

184.     Plaintiff Atlantis Communications Project LLC is a limited liability company organized under the laws of Michigan.

185.     Plaintiff Beverly Howe Trust is a Michigan Trust.

186.     Plaintiff BGLG LLC is a limited liability company organized under the law of Michigan.

187.     Plaintiff California Hilton Communications LLC is a limited liability company organized under the laws of Michigan.

188.     Plaintiff DCMD Communications LLC is a limited liability company organized under the laws of Michigan.

189.     Plaintiff Dynamics Financial LLC is a limited liability company organized under the laws of Nevada.

190.     Plaintiff Engineering By The Ruehls Inc. is a corporation organized under the laws of Michigan.

191.     Plaintiff Florida Hilton Communications LLC is a limited liability company organized under the laws of Michigan.

192.     Plaintiff Gordon E. Snavely Family Trust is a Michigan Trust.

193.     Plaintiff Gotham City Communications LLC is a limited liability company organized under the laws of Michigan.

194.     Plaintiff Hale Trust is a Michigan Trust.

195.     Plaintiff Hambley Family Trust is a California Trust.

196.     Plaintiff Italian Project Telecom LLC is a limited liability company organized under the laws of Michigan.

197.     Plaintiff Just Investments Solutions LLC is a limited liability company organized under the laws of Michigan.

198.     Plaintiff Macau Island Communications Project LLC is a limited liability company organized under the laws of Michigan.

199.     Plaintiff Marvin and Marsha Trimas Trust is a Michigan Trust.

200.     Plaintiff MT Investment Group LLC is a limited liability company organized under the laws of Michigan.

201.     Plaintiff Natalie Carroll Trust is a Michigan Trust.

202.     Plaintiff Peterson Family Trust is a California Trust.

203.     Plaintiff Pielack Family Trust is a Michigan Trust.

204.     Plaintiff Rosemary C. Snavely Family Trust is a Michigan Trust.

205.     Plaintiff Ski Tec Inc. is a corporation organized under the law of Michigan.

206.     Plaintiff SPECS Inc. is a corporation organized under the laws of Michigan.

207.     Plaintiff TBNJ Telecom LLC is a limited liability company organized under the laws of Michigan.

208.     Plaintiff Wallace E. Howe Trust is a Michigan Trust.

209.     Plaintiffs George and Kathleen Ackerman are individuals residing in Howell, Michigan.

210.     Plaintiffs Peter and Mary Aguilar are individuals residing in Monterey, California.

211.     Plaintiffs Agop and Diana Alexanian are individuals residing in Bloomfield Hills, Michigan.

212.     Plaintiffs Richard F. and Gail M. Andrews are individuals residing in Sparta, Tennessee.

213.     Plaintiff Joe Audino is an individual residing in Sagmore Hills, Ohio.

214.     Plaintiffs David and Leslie Backus are individuals residing in Milford, Michigan.

27

215.     Plaintiff Stephen Bard is an individual residing in Barkley, Michigan.

216.     Plaintiff Neal Bauer is an individual residing Loveland, Colorado.

217.     Plaintiff John Bayagich is an individual residing in Oakland Township, Michigan.

218.     Plaintiff Susan D. Bernardi is an individual residing in Rochester Hills, Michigan.

219.     Plaintiff Alan Bishop is an individual residing in Redford, Michigan.

220.     Plaintiffs James and Linda Bokovoy are individuals residing in Commerce Township, Michigan.

221.     Plaintiff Richard (Rick) M. Boylan is an individual residing in Spring Hill, Tennessee.

222.     Plaintiffs Richard W. and Carol Boylan are individuals residing in Waterford, Michigan.

223.     Plaintiff Connie Brown is an individual residing in Waterford, Michigan.

224.     Plaintiffs Donald and Nancy Brown are individuals residing in Milford, Michigan.

225.     Plaintiffs Brandon and Kristen Brown are individuals residing in Milford, Michigan.

226.     Plaintiff Brian J. Brown is an individual residing in Highland, Michigan.

227.     Plaintiffs Jeremy and Marsha Brown are individuals residing in Commerce Township, Michigan.

228.     Plaintiff Robert Canzano is an individual residing in Canton, Michigan.

229.     Plaintiffs John and Dorothy Christopher are individuals residing in Milford, Michigan.

230.     Plaintiff Mark Christopher, Jr. is an individual residing in Commerce Township, Michigan.

231.     Plaintiff Kim Darin is an individual residing in Orlando, Florida.

232.     Plaintiff Delores Dertinger is an individual residing in Commerce Township, Michigan.

233.     Plaintiff Ronnie DiBartolomeo is an individual residing in Monterey, California.

234.     Plaintiff Susan Erickson is an individual residing in Plymouth, Michigan.

235.     Plaintiff David Fertel is an individual residing in Garden City, Michigan.

236.     Plaintiff John Fisher, Jr. is an individual residing in Big Pine Key, Florida.

237.     Plaintiffs Jeff and Jessica Fraser are individuals residing in White Lake, Michigan.

238.     Plaintiffs Kevin and Kimberly Golden are individuals residing in Milford, Michigan.

239.     Plaintiffs Richard and Debra Gregory are individuals residing in White Lake, Michigan.

240.     Plaintiff Christine Gross is an individual residing in Southfield, Michigan.

241.     Plaintiff Ferne Hardesty is an individual residing in West Bloomfield, Michigan.

242.     Plaintiff Kelly Hayes is an individual residing in Southfield, Michigan.

243.     Plaintiff Maureen Hayes is an individual residing in Southfield, Michigan.

1567135.02

244.     Plaintiff Elviera A. Heersche is an individual residing in Lapeer, Michigan.

245.     Plaintiffs Rudolph and Darlene Hyvarinan are individuals residing in Dafter, Michigan.

246.     Plaintiff George Ingber is an individual residing in Boca Raton, Florida.

247.     Plaintiffs James V. and Joyce G. Jacques are individuals residing in Pentwater, Michigan.

248.     Plaintiff Jason Jacques is an individual residing in Jonesville, Michigan.

249.     Plaintiffs Thomas and Ann Jordan are individuals residing in Beverly Hills, Michigan.

250.     Plaintiffs Markku Karell and Rossett Ellison are individuals residing in Wixom, Michigan.

251.     Plaintiffs Irene and John Kefalos are individuals residing in Westland, Michigan.

252.     Plaintiff Kenneth J. Kehoe is an individual residing in Washington, Michigan.

253.     Plaintiffs James and Judy Kerr are individuals residing in Novi, Michigan.

254.     Plaintiff Virginia Last is an individual residing in White Lake, Michigan.

255.     Plaintiffs Michael and Nicole Lewis are individuals residing in Howell, Michigan.

256.     Plaintiff George K. Logan is an individual residing in Kinross, Michigan.

257.     Plaintiff Aaron Mayor is an individual residing in Chicago, Illinois.

258.     Plaintiff Oscar Minicuci is an individual residing in Troy, Michigan.

259.     Plaintiffs George and Nancy Mitts are individuals residing in Novi, Michigan.

30

260.     Plaintiffs Louise R. and Paul J. Moore, Jr. are individuals residing in Saline, Michigan.

261.     Plaintiffs Matthew and Michelle Mosier are individuals residing in Highland, Michigan.

262.     Plaintiffs Tom and Denise Nowatzke are individuals residing in Ann Arbor, Michigan.

263.     Plaintiff Gerald S. Oginski is an individual residing in Commerce Township, Michigan.

264.     Plaintiffs Robert and Cecelia Ornelas are individuals residing in Yorba, California.

265.     Plaintiffs Richard and Wendy Paddison are individuals residing in North Port, Florida.

266.     Plaintiff Dean Palmer is an individual residing in Waterford, Michigan.

267.     Plaintiffs Michael and Debra Pawloske are individuals residing in Highland, Michigan.

268.     Plaintiff Gerald J. Pedlaw is an individual residing in Clarkston, Michigan.

269.     Plaintiffs Roger and Beverly Pirtle are individuals residing in Mancelona, Michigan.

270.     Plaintiffs James and Cynthia Przystup are individuals residing in White Lake, Michigan.

271.     Plaintiffs Mark and Patricia Raymond are individuals residing in Troy, Michigan.

31

272.     Plaintiff Fred Rheinlander is an individual residing in Rochester Hills, Michigan.

273.     Plaintiffs Robert L. and Lonnie L. Rosso are individuals residing in Marysville, California.

274.     Plaintiffs Russell A. and Susan E. Sherlund are individuals residing in Cederville, Michigan.

275.     Plaintiffs Stefan and Susan Smietana are individuals residing in Bloomfield Village, Michigan.

276.     Plaintiffs Arthur and Melanie (Bishop) Solomon are individuals residing in Franklin, Michigan.

277.     Plaintiffs Kevin and Kimberly Spillane are individuals residing in Highland, Michigan.

278.     Plaintiff Arthur Steuer is an individual residing in Bloomfield Hills, Michigan.

279.     Plaintiff Helaine Steuer is an individual residing in Bloomfield Hills, Michigan.

280.     Plaintiffs Gregory Sundberg and Cynthia Phillips are individuals residing in Seattle, Washington.

281.     Plaintiffs Pamela and Paul Tatro are individuals residing in Wheaton, Illinois.

282.     Plaintiff Gerald Tatro is an individual residing in Milford, Michigan.

283.     Plaintiff Carlos Thome is an individual residing in Shelby Township, Michigan.

284.     Plaintiffs Chester and Heidi Trocha are individuals residing in Hawthorn Woods, Illinois.

285.     Plaintiff Phillip Vick is an individual residing in West Adsworth, Illinois.

286.     Plaintiffs Norman L. and Gloria M. Westerback are individuals residing in St. Petersburg, Florida.

287.     Plaintiff James Williams is an individual residing in Rochester Hills, Michigan.

288.     Plaintiff Brian Winshall is an individual residing in Chicago, Illinois.

289.     Plaintiff Barry Wiss is an individual residing in Paradise Valley, California.

290.     Plaintiff Donald Wiss is an individual residing in West Los Angeles, California.

291.     Plaintiff William Wiss is an individual residing in Palm Beach Gardens, Florida.

292.     Plaintiff Arthur Steuer Living Trust is a Michigan Trust.

293.     Plaintiff Bankey Comm LLC is a limited liability company organized under the laws of Michigan.

294.     Plaintiff Delores Dertinger Revocable Trust is a Michigan Trust.

295.     Plaintiff DMP Investments LLC is a limited liability company organized under the laws of Michigan.

296.     Plaintiff Helaine Steuer Living Trust is a Michigan Trust.

297.     Plaintiff James Williams Trust is a Michigan Trust.

298.     Plaintiff John or Rita Murphy Trust is a Michigan Trust.

299.     Plaintiff Murphy Family Trust is a Michigan Trust.

300.     Plaintiff Wendy A. Paddison Living Trust is a Florida Trust.

301.     Plaintiff Winshall, Welles & Pacini LLC is a limited liability company organized under the laws of Illinois.

302.     Plaintiff Doris Backus is an individual residing in Sterling Heights, Michigan.

303.     Plaintiff David Bolla is an individual residing in White Lake, Michigan.

304.     Plaintiff Robert Breitman is an individual residing in West Bloomfield, Michigan.

305.     Plaintiff Joyce Breitman is an individual residing in West Bloomfield, Michigan.

306.     Plaintiff Marguerite Brockway is an individual residing in Highland, Michigan.

307.     Plaintiffs Dale and Deborah Bukoski are individuals residing in White Lake, Michigan.

308.     Plaintiffs Michael Buller and Tamera Calmer are individuals residing in Sacramento, California.

309.     Plaintiffs Christopher and Tracie Camden are individuals residing in Milford, Michigan.

310.     Plaintiff Michael Caruso is an individual residing in Rochester Hills, Michigan.

311.     Plaintiffs Aaron and Kathleen Fournier are individuals residing in Clio, Michigan.

312.     Plaintiff Sharon Fraser is an individual residing in Walled Lake, Michigan.

313.     Plaintiffs Victor and Beverly Gordon are individuals residing in Franklin, Michigan.

314.     Plaintiffs Sudhir and Vijaya Gupta are individuals residing in Troy, Michigan.

315.     Plaintiff Harry Hartunian is an individual residing in Livonia, Michigan.

316.     Plaintiff Jeff Hazzard is an individual residing in Columbus, Ohio.

317.     Plaintiffs Carma and Kenneth Huff are individuals residing in Marathon, Florida.

318.    Plaintiff Rebecca Kain is an individual residing in Dearborn, Michigan.

319.    Plaintiff Sonia Kohler is an individual residing in Washington, Michigan.

320.    Plaintiffs Christiana and Peter Kuzyk are individuals residing in Guilford, Connecticut.

321.    Plaintiff Maria Liwag-Dixon is an individual residing in Canton, Michigan.

322.    Plaintiff Thomas Lowe is an individual residing in Eagle, Michigan.

323.    Plaintiffs James and Sandy Lutz are individuals residing in Margate, Florida.

324.    Plaintiffs Michael and Angel Lynn are individuals residing in Sacramento, California.

325.    Plaintiffs John and Janis McLane are individuals residing in Watsonville, California.

326.    Plaintiff James McMullen is an individual residing in Canton, Michigan.

327.    Plaintiff Rita McMullen is an individual residing in Canton, Michigan.

328.    Plaintiffs Douglas and Nancy Mires are individuals residing in Lake Orion, Michigan.

329.    Plaintiffs Roger and Carolyn Norman are individuals residing in Gladwin, Michigan.

330.    Plaintiff Mitchell Rechter is an individual residing in West Bloomfield, Michigan.

331.    Plaintiffs James and Kathleen Roland are individuals residing in Sterling Heights, Michigan.

332.    Plaintiff Charles T. Smith is an individual residing in Southfield, Michigan.

333. Plaintiffs Debra and Terry Smith are individuals residing in Harrison Township, Michigan.

334. Plaintiff Derek Stein is an individual residing in Highland, Michigan.

335. Plaintiff Brian Steuer is an individual residing in Menlo Park, California.

336. Plaintiff Steven Tatro is an individual residing in Garden City, Michigan.

337. Plaintiffs Cristina and Roberto Vellanoweth are individuals residing in West Sacramento, California.

338. Plaintiff Rose Vellanoweth is an individual residing in Sacramento, California.

339. Plaintiffs Carol and Stacey Vlachos are individuals residing in Bonita Springs, Florida.

340. Plaintiff Blake Voorhees is an individual residing in Royal Oak, Michigan.

341. Plaintiffs Carol and Michael Wayne are individuals residing in Rochester Hills, Michigan.

342. Plaintiffs James and Judy Weremy are individuals residing in Novi, Michigan.

343. Plaintiff Furph Holdings LLC is a limited liability company organized under the laws of Michigan.

344. Plaintiff Jean Burns Revocable Trust is an Ohio trust.

345. Plaintiff JPAMM LLC is a limited liability company organized under the laws of Michigan.

346. Plaintiff Vellanoweth Family Properties LLC is a limited liability company organized under the laws of California.

347.     Plaintiff Wayne Acquisitions LLC is a limited liability company organized under the laws of Michigan.

348.     Plaintiffs invested in 127 LLCs offered on or after March 1, 2005.  As reflected in Exhibit A, each of those investments generated a loss to each investor.  Further, none of the memoranda offering units in those LLCs disclosed that the LLC was merely a Ponzi-scheme vehicle with no actual business operations.  To the contrary, each represented that the LLC was in the business of purchasing, leasing and maintaining telecommunications or related equipment. An example of such misrepresentations is set forth in Paragraphs 357-64, *infra*.

### Defendants

349.     Defendant Doeren Mayhew & Company, P.C. is a professional corporation organized under the laws of the State of Michigan.  Doeren Mayhew's principal place of business is located in Oakland County, Michigan.  Doeren Mayhew's registered agent is their Managing Director, Mark Crawford, with a mailing address at Doeren Mayhew's principal place of business in Troy, Michigan.

350.     Defendant Todd R. Fox is an individual who resides in Oakland County, Michigan.  He is a director at Doeren Mayhew and his principal place of business is in Troy, Michigan.  In addition, Mr. Fox is the Secretary/Treasurer of Defendant SamJack Investments, Inc.

351.     Defendant James P. O'Rilley is an individual who resides in Oakland County, Michigan.  He is a director at Doeren Mayhew and his principal place of business is in Troy, Michigan.  Mr. O'Rilley is also the President of Defendant SamJack Investments, Inc.

352.    Defendant JoAnn Fox is an individual who resides in Oakland County, Michigan.  She acted, with knowledge of the scheme described herein, under the direction of her husband, Todd Fox, and James O'Rilley in a business capacity at all relevant times herein.

353.    Defendant Nancy O'Rilley is an individual who resides in Oakland County, Michigan.  She acted, with knowledge of the scheme described herein, under the direction of her husband, James O'Rilley, and Todd Fox in a business capacity at all relevant times herein.

354.    Defendant SamJack Investments, Inc. is a for-profit corporation organized under the laws of the State of Michigan.  SamJack's principal place of business is located in Oakland County, Michigan.  SamJack's registered agent is Mr. O'Rilley.

## FACTUAL BACKGROUND

355.    During the period between 1998 (or earlier) and July 2007, offering materials which offered interests in more than 200 LLCs were caused to be prepared and issued to potential investors by (i) Doeren Mayhew, acting through its directors Messrs. Fox and O'Rilley, and (ii) Ed May, an individual residing in Oakland County, Michigan.

356.    As Doeren Mayhew managing partner Mark Crawford admitted after the Ponzi-scheme became public, the scope of the work actually performed by Doeren Mayhew included (i) O'Rilley's drafting of "tax" language for inclusion in all offering memoranda; and (ii) Fox's conducting of a "review" of the entire offering document (after the inclusion of O'Rilley's insert and prior to dissemination to investors) to identify "anything" in the document that "requires a change" – even if the change were a mere "spelling/grammar" item.  Indeed, because draft offering memoranda were transmitted to Doeren Mayhew electronically, Doeren Mayhew itself was able to perform its review via electronic functions, such as "spellcheck."

357.    Each of the offering memoranda for each of the LLCs in which plaintiffs invested had a common factual misrepresentation, namely that a payment had been made as a "deposit" towards the subject LLC's purchase of telecommunications "equipment" from a supplier pursuant to a then-existing "agreement" with some hotel or casino to provide telecommunications services.  As Doeren Mayhew has since acknowledged, this was not true. With respect to each of the subject LLCs, the books and records before Todd Fox and James O'Rilley (and their wives) showed no such expenditure as of the date of the offering or during the subscription period thereafter.

358.    By way of example, the New Jersey Project Three LLC's offering document co-authored by Doeren Mayhew represented that pursuant to a (phantom) "agreement" with a "hotel," the following capital expenditure had been made prior to the offering date of January 6, 2006:

**PAYMENT FOR EQUIPMENT:  $ 100,000.00 DEPOSIT PAID. ENTIRE BALANCE BEING PAID JANAURY 26, 2006**

359.    In fact, the books of the Ed May LLCs that were before Todd Fox and James O'Rilley (and their wives) as of the date of this offering showed that **no** "$100,000" payment had been made as of that date.  Indeed, those books showed that no purchase of equipment for the subject LLC had occurred at anytime after the offering date, and that, in fact, the *only* expenses that the subject LLC had incurred thereafter were for the payment of "professional" and "management" fees of Doeren Mayhew and SamJack, plus certain (phantom) "insurance" expenses and, of course, additional management fees to Ed May.

39

360.    This same fact pattern exists as to each of the LLCs in which plaintiffs invested, i.e., the offering documents represented that payments for equipment had been made, but the books and records before Todd Fox and James O'Rilley (and their wives) showed that no expense payment had been made at any time in the first three months after their formation and, further, that the books of E-M do not reflect any purchase of equipment on behalf of any of these LLCs at any time.

361.    In fact, the same fact pattern existed as to the many Ed May LLCs offered in at least the three prior years before 2005.  Thus, Todd Fox and James O'Rilley (and their wives) and the "two" companies for which they were acting knew, as of 2005, of a fraudulent course of dealings in the offering of Ed May LLCs.  Doeren Mayhew's material familiarity with these prior LLCs is not only undisputed, but it was affirmatively represented as a fact that investors could rely upon in making an investment:

> **RELIANCE ON INFORMATION**
>
> **PERSONS SEEKING INFORMATION RELATIVE TO THE BACKGROUND AND EXPERIENCE OF THE PROMULGATOR OF THIS PROJECT MAY CALL MR. TODD FOX OF DOEREN MAYHEW CPAS AT 248-244-3064. MR. FOX IS AUTHORIZED TO ANSWER ANY QUESTIONS ABOUT THE OTHER ENTITIES MANAGED BY THE OFFEROR.**

362.    Moreover, the fact that Doeren Mayhew had accepted E-M and Ed May as clients, and continued to do so established, under Doeren Mayhew's own internal procedures, that Doeren Mayhew had conducted due diligence sufficient to assess such clients' "willing[ness] to provide appropriate financial statements with adequate disclosures."  That such a review had been conducted was expressly represented by Doeren Mayhew as well.  For

40

example, Mr. Fox told investors that he checked the LLCs' financial records regularly.  He also told at least one Plaintiff-investor, Thomas Howe, in June 2005, that he had developed a "depreciation table" that allowed Doeren Mayhew to plot depreciation of plant and equipment used in the LLCs' business operations – even though, in fact, there were no business operations and, thus, no financial records reflecting any purchases or use of plant or equipment by any LLC. Mr. Fox, in order to reassure him and encourage him to invest in the LLCs, further represented to Mr. Howe and others that he maintained the "invoices" necessary to determine five-year "Modified Accelerated Cost Recovery System" depreciation for the LLCs' assets for tax purposes.  Unbeknownst to plaintiffs at the time, no such invoices existed.  Defendants also never disclosed that the books of account that they maintained reflected that none of the LLCs ever incurred an expense for repairing or replacing even a single one of the hundreds of thousands of telephones during any one of the many years that the 127 (fictitious) leases purportedly subsisted.

363.    Yet, with that damning familiarity with E-M's existing "business" in hand, each offering document contained, in substance, the following (false) statement of the LLC's purpose:

> **PURPOSE OF THE VENTURE**
>
> **THIS VENTURE IS CREATED FOR THE SOLE PURPOSE OF PURCHASING EQUIPMENT TO PROVIDE HARD LINE TELEPHONE AND HARD WIRE AND WIRELESS INTERNET SERVICES AS WELL AS DVD KIOSK COMPONENTS TO THE PROPERTIES DESCRIBED IN THE INVESTMENT RECAP.**

364.    If the truth on the aforementioned subject matter (that had been so affirmatively misrepresented by Doeren Mayhew) had been told as to each of the subject LLCs, i.e., that the

41

LLCs were non-operating shells for which equipment was never purchased, the offered units would have been revealed to have no market value at all and, thus, would not have been purchased by plaintiffs.  Thus, the loss caused by the fraud was the entirety of the purchase price paid by plaintiffs.  Indeed, because the offering was illegal in its inception, the offered units had no market value as a matter of law.

365.    The particulars of each plaintiff's investment are set forth in Exhibit A, to wit, the identity of the offering document containing the false representations identified above, the date of the offering/investment, the amount invested, and the amount lost.

366.    Because these offering documents were viewed by the Securities Exchange Commission ("SEC") as constituting offerings of non-exempt unregistered securities within the meaning of federal securities laws, the SEC commenced an investigation into the issue of whether these offerings were false and misleading.  The SEC did conclude that the offerings were false and misleading because, *inter alia*, none of the offering materials disclosed that the LLCs were not operating businesses but were, instead, Ponzi-scheme vehicles (as more fully set forth in a civil complaint filed by the SEC in the United States District Court for the Eastern District of Michigan, Civil Action No. 07-CV-14954-JF).  The SEC continues to investigate, and has communicated that any and all Ed May documents concerning SamJack are relevant to its inquiry and must be preserved.  In addition, in response to questions posed to Ed May at a deposition in March 2008 about whether a conspiracy existed between him and Doeren Mayhew to defraud investors and to destroy selected electronic and other evidence of this enterprise, Mr. May invoked the Fifth Amendment.

367.    In addition to defrauding investors in connection with their purchase of interests in the subject LLCs, Doeren Mayhew also made post-purchase representations that caused plaintiffs to retain their investments and forego rescission at a time before E-M's bank account had been emptied in mid-August 2007.  These direct misrepresentations to plaintiffs included the tax returns that Doeren Mayhew prepared and mailed to plaintiffs in the first quarter of the year following the year in which plaintiffs made their purchases.  This engagement was undertaken pursuant to an agreement with the subject LLC to prepare Form 1065s and K-1s.  By law, a condition of this agreement to prepare tax returns for LLCs was that Doeren Mayhew also prepare and deliver K-1s to each member.  Inasmuch as Doeren Mayhew prepared and delivered K-1s for each tax year prior to 2007, each plaintiff that purchased LLC units in 2005 and 2006 received K-1 returns, via U.S. Mail, from Doeren Mayhew.  In each case, the K-1 was received in the first quarter of the calendar year.

368.    Several of the investors/plaintiffs were LLCs in their own right, and had their own agreement with Doeren Mayhew to prepare and deliver Form 1065s and K-1s for the tax years 2006 and 2007 (and, thus, also to prepare K-1s for those LLCs' respective members). These LLCs (collectively, the "Investing LLCs") were:  Atlantis Communications Project LLC, California Hilton Communications LLC, Macau Island Communications Project LLC, DCMD Communications LLC, Florida Hilton Communications LLC, TBNJ Telecom LLC, Italian Project Telecom LLC and Gotham City Communications LLC.  Doeren Mayhew did prepare tax returns for the Investing LLCs for the year 2006, but has refused to abide by its contract with respect to the tax year 2007.  The agreement between the Investing LLCs and Doeren Mayhew was made by their managing member, on behalf of the Investing LLCs, and Todd Fox, on behalf

43

of Doeren Mayhew.  That oral agreement, made in late-winter, 2004, required Doeren Mayhew,

for the fee paid by the Investing LLCs, to prepare complete corporate tax returns for tax year

2004 and beyond and to make any necessary amendments to tax returns for those years that

might later become apparent.  Doeren Mayhew has refused to prepare tax year 2007 returns, or to

provide amended returns for prior years, for the Investing LLCs forcing them to hire, at a cost of

more than $13,000.00, new accountants and tax attorneys to provide necessary returns.

369.     Doeren Mayhew has asserted that inasmuch as the Ed May LLCs were

"exposed during the 2007 tax year to be a fraudulent enterprise," it would not prepare returns for

that tax year because of the "risk" that Doeren Mayhew would face if it did so.  Accordingly,

Doeren Mayhew effectively admits that when it *did* sign tax returns for prior years, it necessarily

represented, among other things, that it was unaware of any fraudulent enterprise.  In addition,

under the AICPA standards binding on Doeren Mayhew, a CPA's signature on a tax return

represents that the CPA has exercised "due diligence" in preparing the return and that the

material made available to the CPA does not "appear[] to be incorrect or incomplete … [or]

inconsistent … either on its face or on the basis of other facts known to [the CPA]."  Where such

issues are apparent, the CPA's signature certifies that "underlying information" has been

"examined" and that such evidentiary material "supports" the financial information set forth in

the return.

370.     In addition, because AICPA standards require "prompt" disclosure of any errors

in prior years' tax returns, the CPA's signing of a tax return without making disclosure of an

error in the intervening year constitutes a representation that no errors in prior-year returns are

known to the CPA.

371.    At the time Doeren Mayhew prepared tax returns for the Ed May LLCs, its personnel had been furnished with the books of account of E-M and the subject LLCs which, as noted, were (at best) incomplete on their face.  Moreover, as Doeren Mayhew admits, because the subject LLCs were phony and never did purchase equipment, there could be no evidentiary material supporting these expenses.  Similarly, there could be no evidentiary material supporting the receipt of "ordinary business income" (or "loss").  In addition, because funds flowed through E-M, and not the subject LLCs, without such supporting evidentiary material, "revenue" and "expenses" allocable to a given LLC could not be calculated, as Doeren Mayhew now admits.

372.    Each tax return prepared by Doeren Mayhew represented to the member/plaintiff who received it that each subject LLC had its own allocable financial results; indeed, its own allocable operating profit or loss.  This representation was false, inasmuch as (i) the subject LLCs had no business operations at all, and (ii) the books of account furnished to Doeren Mayhew contradicted the notion that equipment had ever been purchased for any subject LLC or that any subject LLC ever earned a nickel of operating revenue or income.  Nor did the books of any of the subject LLCs reflect a charge for repairing or replacing a single one of the hundreds of thousands of telephones reported as having been "purchased" by the subject LLCs.

373.    Doeren Mayhew was well aware of the red flags presented by the material furnished to it and the lack of supporting data. For example, while Doeren Mayhew was preparing the 2006 tax year return for Desert Project Five LLC (one of the subject LLCs), Todd Fox told Ed May that Doeren Mayhew had reported, in the prior year's tax return, "$644,512" as that LLC's cost of purchasing "equipment" in "2005."  Putting aside the fact that no payments were ever made towards that equipment, and that there was no evidentiary material showing any

payment to the phantom supplier, Ed May told Fox that all that had been paid for those goods were "12" payments of approximately $37,000 each – a total of approximately $448,000.  When confronted with this "fact," Fox told May that he (Fox) could simply cause "income [to] be grossed up to cover the shortfall" of about $200,000.  Rather than adjust the cost downwards (which would have required an amendment of the prior year's return in which the purchase was first booked), Fox let the prior year's return stand and repeated the sin in the 2006 return. Doeren Mayhew (i) continued to report the basis of the (phantom) purchase of equipment at the full amount of the (phantom) note and (ii) "grossed up," by an amount greater than the amount of the shortfall, the income for 2006 over what had been reported for 2005—even though that LLC had engaged in no profitable operations in the 2006 tax year.

374.    During this same post-January 1, 2005 period that Doeren Mayhew was preparing and delivering tax returns representing that the Ed May LLCs had made equipment purchases and were businesses with actual operating income or loss, its directors, Fox and O'Rilley, were causing their wives to prepare and mail monthly summaries reporting the monthly expenses and income distributions from each subject LLC.  As noted, these summaries were not even consistent with the books of account or company records that were before them. Like the false tax returns, the monthly summaries provided comfort as to investors' existing holdings.

375.    Doeren Mayhew did not stop there.  In 2006, it prepared a letter, mailed to all investors on E-M letterhead, referring to a "cash flow plan" developed for the enterprise by "Doeren Mayhew."  Of course, Doeren Mayhew could not ever propose a plan without first acquainting itself with the details of the flow of cash into and out of each LLC.  In any event, at

least one investor asked for an investor-wide meeting to permit a free-ranging discussion about the origins of the cash flow issue (which, of course, was that the enterprise was a Ponzi-scheme). When one such investor wrote Ed May in 2006 to express concern about this cash flow plan, the person who responded to the request was not Ed May, but Todd Fox.  Mr. Fox, purporting to speak on behalf of the enterprise, responded as follows:  "[There is] no interest in a shareholder meeting" to discuss "cash flow."   Thus, the meeting never occurred.

376.     Had the truth been told, plaintiffs would have been entitled, as a matter of law, to immediately rescind and recover from the assets of seller E-M, which held cash in its accounts until they were emptied in mid-August 2007, the full purchase price, less distributions, plus interest.  Plaintiffs also have lost the opportunity to re-invest whatever recessionary proceeds would have been recovered had the scheme been exposed earlier.

377.     The fraudulent tax returns prepared by Doeren Mayhew caused additional losses.  Because Doeren Mayhew has refused to prepare tax returns correcting the now-admitted errors in the prior returns they prepared, each plaintiff who received such prior returns must now hire an accountant to do what Doeren Mayhew was already contracted—and paid—to do.  To the extent any plaintiffs' tax liability was overstated due to the phony LLC income calculated by Doeren Mayhew, plaintiffs will have suffered lost opportunity costs on amounts ultimately refunded or credited by the IRS.

378.     Todd Fox and James O'Rilley (and their wives) were principals in the Ponzi-scheme enterprise for reasons that go beyond even those stated above.

379.     For example, Doeren Mayhew, through Messrs. Fox and O'Rilley, solicited investors at "dog-and-pony" or "road" shows targeting investors perceived to be the most

vulnerable to the lure of the "guaranteed high-return" investments being offered. These in-person solicitation initiatives included dinners and barbeques at various restaurants and other locations in the Detroit area at which Doeren Mayhew, through Mr. Fox, would speak individually to potential investors to tout, based upon the "history" of the LLCs' "operating performance," the wisdom of taking a new position or maintaining an existing position in the Ponzi-scheme LLCs.

380.    At one point, Mr. Fox and Mr. O'Rilley delegated their investor-solicitation function to their wives. Potential investors were provided with "800" telephone numbers (888-233-8569 and 866-792-4183) one of which was connected to a telephone stationed in the home of Mr. and Mrs. Fox. Both JoAnn Fox and Nancy O'Rilley answered investors' calls placed to these lines. Each would answer by making the pitch, which Doeren Mayhew already had formulated, for landing investors, or would answer questions about the LLCs to reassure and retain those who already had invested. In order to answer questions and render advice sufficient to quell investor fears, but without tipping them off to all of the undisclosed facts regarding the LLCs, each of these ladies had to have a full understanding of the scheme. Other such in-person solicitation initiatives of Doeren Mayhew were executed by Ed May, the co-manager of the scheme, with Doeren Mayhew's knowledge, advice and consent.

381.    Doeren Mayhew did not stop at "cash-flow management" either. Rather, Doeren Mayhew was the sole provider of management advice to the Ed May LLCs directly. As part of this advice, Doeren Mayhew assisted the May LLCs to effectuate inter-LLC transfers which were later booked as "loans" either between the LLCs or between Ed May and the LLCs. Those companies then transferred such investor funds to Doeren Mayhew and others. Over the

48

years, "20 or 30" such transfers of "E-M" funds, totaling "a few hundred thousand dollars," were made.  Doeren Mayhew rendered advice about these transfers with full knowledge of the false entries being placed into the books of the LLCs — after all, Doeren Mayhew personnel (or their wives) personally performed the day-to-day bookkeeping wherein such transfers on behalf of the LLCs were recorded.  Jeff May provided Doeren Mayhew with all the information necessary to advise the May LLCs on the question of "how to handle [these] payments."

382.     By mid-2007, the level of new investments had dropped below the rate necessary to sustain the Ponzi-scheme, precluding the LLCs from issuing distributions.  At about the same time, Ed May approached Plaintiffs Herbert Rechter, Morton Freedman, Irwin Goren, Ronald Licht, Gil Mayor and non-party Marvin Freedman seeking a personal loan of up to $3 million.  Ed May proposed paying monthly on this loan for a period of six years.  Ed May represented this loan was to help him solve the "temporary" "cash flow problems" being experienced by the LLCs.  These plaintiffs turned to Doeren Mayhew to understand the facts pertaining to the "cash flow problems" and, thus, whether a $3 million loan would resolve the problem.  Mr. Fox told these plaintiffs that, in fact, "everything was fine," in terms of the LLCs' business operations, but there was a "cash flow problem" because the enterprise had "grown too fast."  Mr. Fox further stated that if a loan of at least $1 million were made, the problem would be resolved.  He added that if such a loan were made, he could use JoAnn Fox and Nancy O'Rilley to immediately write distribution checks that would bring investors current.

383.     Based upon Mr. Fox's factual representations about the cause of the "cash flow problems" and the current viability of the LLCs, Plaintiffs Herbert Rechter, Morton Freedman,

Irwin Goren, Ronald Licht, Gil Mayor and non-party Marvin Freedman agreed to make a loan to Ed May for approximately $1 million.

384.   Ed May took the money but defaulted on the loan after making a single payment of 5-percent to each of Messrs. Rechter, Freedman, Goren, Licht, Mayor and Freedman.  May made no other payments and has since declared bankruptcy.

385.   Plaintiff investors began contacting Doeren Mayhew in late 2007 to inquire about the tax year 2007 K-1 tax forms for their investments in the various May LLCs which the plaintiffs already have paid Doeren Mayhew to prepare.   Doeren Mayhew informed those investors that, despite their agreement to prepare K-1s not just for the LLCs but also for each investor, they will not provide the individual K-1s that plaintiffs must file on or before April 15, 2008.  Doeren Mayhew also has not offered to refund the payments made by investors to fund that K-1 preparation work and has, instead, told Plaintiffs and all of the other members of their Ponzi-scheme LLCs to hire their own accountants—at their own expense—to recreate the books and records necessary to complete these individuals' tax filings.

## THEORIES OF LIABILITY

### COUNT I:  On Behalf of All Plaintiffs and as Against Defendants Doeren Mayhew, Todd Fox and James O'Rilley:  Common Law Fraud In Connection With the Purchase of Unregistered Securities

386.   The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

50

387.     Doeren Mayhew, Todd Fox and James O'Rilley made material representations to Plaintiff investors in the offering materials for the Ponzi-scheme LLCs.

388.     The representations made by Doeren Mayhew, Todd Fox and James O'Rilley were false.

389.     At the time Doeren Mayhew and Messrs. Fox and O'Rilley made their representations, they knew the representations were false, or they made the representations recklessly in disregard of the truth.

390.     Doeren Mayhew, Todd Fox and James O'Rilley made these representations with the intention that the Plaintiff investors would act on them in connection with their purchase of units in the Ponzi-scheme LLCs.

391.     Plaintiff investors reasonably relied upon the misrepresentations made by Doeren Mayhew, Todd Fox and James O'Rilley when they made their decisions to invest in the Ponzi-scheme LLCs.

392.     If the truth had been told, the LLCs had no market value whatsoever at the time they were sold to plaintiffs, such that all loss is caused by the misrepresentation.

393.     Plaintiffs suffered direct and cognizable harm as a result of their reliance upon the fraudulent representations of Defendants Doeren Mayhew, Todd Fox and James O'Rilley. The extent of such damages is the amount of the investment, less distributions, plus interest, as set forth as to each plaintiff in Exhibit A.

**COUNT II:  On Behalf of All Plaintiffs and as Against Defendants Doeren Mayhew, Todd Fox and James O'Rilley (in the Alternative to Count I):  Common Law Negligent Misrepresentation In Connection With the Purchase of Unregistered Securities**

394.　　The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

395.　　Doeren Mayhew, Todd Fox and James O'Rilley made material representations to plaintiffs.   The statements by defendants giving rise to this claim of negligent misrepresentation were not an aspect of "public accounting services" provided by Doeren Mayhew.

396.　　Doeren Mayhew, Todd Fox and James O'Rilley owed a duty of care to Plaintiff investors when they made these material representations.

397.　　Doeren Mayhew, Todd Fox and James O'Rilley failed to exercise reasonable care in making the representations to plaintiffs.

398.　　Plaintiff investors reasonably, justifiably and detrimentally relied upon the representations made by Doeren Mayhew, Todd Fox and James O'Rilley when they invested in the various Ponzi-scheme LLCs.

399.　　If the truth had been told, the LLCs had no market value whatsoever at the time they were sold to plaintiffs, such that all loss is caused by the misrepresentation.

400.　　 Plaintiffs suffered direct and cognizable harm as a result of their reliance upon the negligent representations of Defendants Doeren Mayhew, Todd Fox and James O'Rilley.

The extent of such damages is the amount of the investment, less distributions, plus interest, as set forth as to each plaintiff in Exhibit A.

### COUNT III:  On Behalf of All Plaintiffs and as Against Defendants Doeren Mayhew, Todd Fox and James O'Rilley (In the Alternative to Counts I and II): Fraud in Connection with the Purchase or Sale of Securities (15 U.S.C. § 78j; Rule 10b-5, 17 C.F.R. § 240.10b-5)

401.     The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

402.     Doeren Mayhew, Todd Fox and James O'Rilley, in connection with the purchase or sale of securities, made material misstatements to Plaintiff investors or omitted material facts in making representations to the Plaintiff investors.

403.     At the time Doeren Mayhew and Messrs. Fox and O'Rilley made their misstatements, they knew the statements were false, or they made the statements recklessly in disregard of the truth.

404.     Plaintiff investors reasonably relied upon these statements made by Doeren Mayhew, Todd Fox and James O'Rilley when they made their decisions to invest in the Ponzi-scheme LLCs.

405.     If the truth had been told, the LLCs had no market value whatsoever at the time they were sold to plaintiffs, such that all loss is caused by the misrepresentation.

406.     Plaintiffs suffered direct and cognizable harm as a result of their reliance upon the misrepresentations of Defendants Doeren Mayhew, Todd Fox and James O'Rilley.  The

extent of such damages is the amount of the investment, less distributions, plus interest, as set forth as to each plaintiff in Exhibit A.

### COUNT IV:  On Behalf of All Plaintiffs and as Against All Defendants:  Post-Purchase Common Law Fraud

407.    The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

408.    By mailing to investors tax returns for the years 2005 and 2006 that Doeren Mayhew, Todd Fox and James O'Rilley knew were false, or were acting in reckless disregard of the truth, Doeren Mayhew, Todd Fox and James O'Rilley made post-purchase material representations to all such investors.

409.    By their causing monthly summaries to be mailed to those same plaintiffs relative to those same LLCs, which summaries all Defendants knew were false, or were acting in reckless disregard of the truth, all Defendants made post-purchase material representations to all such investors.

410.    At the time they mailed the fraudulent tax returns, Doeren Mayhew, Todd Fox and James O'Rilley intended that the Plaintiff investors would detrimentally rely on them to retain their investment position in the Ponzi-scheme LLCs and to determine their own tax liability.

411.    At the time they mailed the fraudulent monthly summaries, all Defendants intended that the Plaintiff investors would detrimentally rely on them to retain their investment position in the Ponzi-scheme LLCs.

412.    Plaintiff investors reasonably and detrimentally relied upon these post-purchase misrepresentations.

413.    Upon disclosure of the truth, plaintiffs would have had the right to immediately rescind and recover their lost investment amount from the assets of all sellers.  Plaintiffs failed to exercise this right in reasonable reliance upon the misrepresentations detailed herein.   Had rescission been obtained, at least some of plaintiffs' damages could have been recovered from seller E-M, which had cash in its bank account through mid-August 2007.

414.    Plaintiffs suffered damages that will be determined at trial.   The amount of damages varies by each plaintiff, depending on when the jury finds that the rescission would have occurred and whether plaintiff has suffered lost opportunity costs relative to any delayed recovery of overpayment of taxes.   In addition, to the extent the tax returns and monthly summaries are found to have induced subsequent purchases of different interests in different LLCs, such damages are recoverable to the extent not already awarded on any of the prior Counts.

### COUNT V:  On Behalf of All Plaintiffs and as Against All Defendants:  Common Law Aiding and Abetting of Post-Purchase Fraud

415.    The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized

detail. Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

416.    Plaintiff investors were defrauded through the scheme detailed in Count IV.

417.    To the extent any defendant is not a primary tort-feasor responsible for plaintiffs' injuries resulting from the fraud detailed in Count IV, plaintiffs suffered injury as a result of such defendant rendering substantial assistance to the primary tort-feasors.

418.    Defendants rendered such substantial assistance with knowledge and/or reckless disregard of the facts establishing the primary tort and, thus, acted with the same degree of scienter as required to find liability as against the primary tortfeasor.

419.    Plaintiffs suffered damages as more fully set forth in Count IV.

**COUNT VI:  On Behalf of All Plaintiffs and as Against All Defendants:  Conspiracy to Commit Common Law Post-Purchase Fraud**

420.    The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

421.    Plaintiff investors were defrauded through the scheme detailed in Count IV.

422.    To the extent any defendant is not a primary tort-feasor responsible for Plaintiffs' injuries resulting from the fraud detailed in Count IV, plaintiffs suffered injury as a result of such defendant agreeing, in fact, among the other defendants and with Ed May, to commit the fraud described in Count IV.

1567135.02

423.     The conduct of defendants more fully set forth in Count IV constituted overt acts in furtherance of this agreement.

424.     Plaintiffs suffered damages as more fully described in Count IV.

**COUNT VII:  On Behalf of All Plaintiffs and As Against All Defendants:  Civil RICO (18 U.S.C. §§  1962 (b), (c) and (d))**

425.     The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

426.     Doeren Mayhew, SamJack, Nancy O'Rilley, JoAnn Fox, Todd Fox and James O'Rilley, collectively with one another, constituting an association in fact, through multiple acts of mail fraud, as more fully set forth in Count IV, constituting a pattern of racketeering activity, have acquired interest in and control over the Ponzi-scheme LLCs, a RICO enterprise which is engaged in or affects interstate commerce.

427.     As more fully set forth in Count IV, Doeren Mayhew, SamJack, Nancy O'Rilley, JoAnn Fox, Todd Fox and James O'Rilley, collectively or in conspiracy with one another, constituting an association in fact, through the Ponzi-scheme LLCs, the RICO enterprise, have committed two or more acts of mail fraud, as more fully set forth in Count IV, constituting a pattern of racketeering activity (spread out over 127 multi-state offerings, tax return mailing, and monthly-summary mailings spanning two-plus years), and have participated in a racketeering enterprise, the activities of which affect interstate commerce.

428.    Through the pattern of activities detailed above, Doeren Mayhew, SamJack, Nancy O'Rilley, JoAnn Fox, Todd Fox and James O'Rilley acquired control of, and participated directly and indirectly in the conduct of the affairs of, the Ponzi-scheme LLCs—a RICO enterprise.

429.    Plaintiffs each suffered direct and cognizable injury in their business or property as a result of defendants' intentional violations of 18 U.S.C. § 1962, which damages have been suffered in an amount that will be proved at trial.  Plaintiffs seek treble damages as well as the award of costs to include reasonable attorneys' fees in accordance with 18 U.S.C. § 1964(c).

**COUNT VIII:  On Behalf of Plaintiffs Atlantis Communications LLC, California Hilton Communications LLC, Macau Island Communications Project LLC, DCMD Communications LLC, Florida Hilton Communications LLC, TBNJ Telecom LLC, Italian Project Telecom LLC, and Gotham City Communications LLC and as Against Defendants Doeren Mayhew, Todd Fox and James O'Rilley:  Professional Negligence**

430.    The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

431.    The Investing LLCs retained Doeren Mayhew, Todd Fox, and James O'Rilley to perform professional tax accounting services related to these Plaintiffs' investments in the May LLCs.

432.    As the tax accountants for the Investing LLCs, Doeren Mayhew, Todd Fox and James O'Rilley owed a duty of "due diligence" to these clients.  This duty, as more fully defined by the American Institute for Certified Public Accountants, required Doeren Mayhew and

58

Messrs. Fox and O'Rilley, prior to signing tax returns, to investigate any "red flags" and either (i) determine that they were innocuous or (ii) resolve the issue presented. Doeren Mayhew was also required to "promptly" correct any known errors in the immediate or prior returns.

433.    Doeren Mayhew, Todd Fox and James O'Rilley failed to exercise due care in the performance of professional accounting services to the Investing LLCs inasmuch as they certified the tax returns despite (i) having personal knowledge that "red flags" existed but were not determined to be innocuous, (ii) including items in the tax returns that were inconsistent with the information provided by Ed May, and (iii) knowing that the information in the Ponzi-scheme LLCs' books and records upon which they were relying was wrong. Doeren Mayhew also was aware of errors in tax returns for the Investing LLCs as to prior years, but still has failed to correct them. For example, while Doeren Mayhew now acknowledges that the Ed May LLCs are part of a Ponzi-scheme and, thus, had no operating income or loss, Doeren Mayhew has taken no action to correct the erroneous statements in prior years' returns showing such operating income or loss.

434.    The Investing LLCs suffered direct and cognizable harm as a result of the failure of Defendants Doeren Mayhew, Todd Fox and James O'Rilley to exercise due care in the performance of professional accounting services. Because of Doeren Mayhew's refusal to correct the prior returns it signed, the Investing LLCs have had to hire a different CPA firm to do so – at a cost not less than $13,000.

**COUNT IX:  On Behalf of Plaintiffs Atlantis Communications LLC, California Hilton Communications LLC, Macau Island Communications Project LLC, DCMD Communications LLC, Florida Hilton Communications LLC, TBNJ Telecom LLC, Italian Project Telecom LLC, and Gotham City Communications LLC and as Against Defendant Doeren Mayhew:  Breach of Contract**

435.     The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

436.     The Investing LLCs retained Doeren Mayhew, Todd Fox, and James O'Rilley to perform professional tax accounting services related to these Plaintiffs' investments in the May LLCs, to include preparation of tax returns for tax years 2005, 2006 and 2007.

437.     Doeren Mayhew breached their contract by failing to correct improperly calculated tax returns for tax years 2005 and 2006, and by refusing to provide tax returns for tax year 2007.

438.     The Investing LLCs suffered direct and cognizable harm, including overpayment of taxes, consequential damages in hiring a new accountant, and lost opportunities, as a result of Doeren Mayhew's breach of contract.  The extent of such damages shall be proved at trial.

**COUNT X:  On Behalf of All Plaintiffs Except the Investing LLCs and as Against Defendant Doeren Mayhew:  Breach of Contract as a Third-Party Beneficiary**

439.     The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized

1567135.02

detail.  Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

440.     Doeren Mayhew contracted with the Ponzi-scheme LLCs to prepare tax returns for tax years 2005-2007 for all LLCs that were active between 2005 and 2007, and to submit those returns directly to each investor on or before April 15 each year.  Preparation of K-1 tax returns was explicitly within the scope of this engagement.  As a matter of law, K-1 tax returns have to be prepared for both the LLC and each of the members therein.  The requirements imposed by law are a necessary condition of every contract subject to such law.

441.     Doeren Mayhew breached the terms of this contract by failing to correct improperly calculated tax returns for tax years 2005 and 2006, and by refusing to provide tax returns for tax year 2007.

442.     As owners of units in the Ponzi-scheme LLCs, Plaintiff investors were intended third-party beneficiaries of the contract to prepare K-1 tax returns for each of the LLCs and their respective investors.

443.     Plaintiffs suffered direct and cognizable harm, including overpayment of taxes and lost opportunities, as a result of Doeren Mayhew's breach of contract.  The extent of such damages shall be proved at trial.

### COUNT XI:  On Behalf of All Plaintiffs Except the Investing LLCs and as Against Defendant Doeren Mayhew (In the Alternative to Count X):  Unjust Enrichment

444.     The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count.  In addition, defendants are in exclusive possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in

more particularized detail. Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

445.     Doeren Mayhew has been pre-paid, with money paid by investors and passed through the Ponzi-scheme LLCs, to prepare K-1 tax returns for tax year 2007 for all LLCs that were active in 2007, and to submit those returns directly to each investor on or before April 15, 2008.

446.     It is inequitable to allow the Doeren Mayhew Defendants to retain the money the Plaintiff investors paid, pursuant to the scheme Doeren Mayhew was itself orchestrating, without providing "K-1" tax preparation services to them.

447.     Plaintiffs suffered direct and cognizable harm, including overpayment of taxes and lost opportunities, as a result of Doeren Mayhew's unjust enrichment. The extent of such damages shall be proved at trial.

**COUNT XII:  On Behalf of Plaintiffs Herbert Rechter, Morton Freedman, Gilbert Mayor, Irwin Goren, and Ronald Licht and as Against Defendants Doeren Mayhew and Todd Fox:  Fraudulent Inducement of Loan Agreement**

448.     The allegations of the foregoing paragraphs are hereby incorporated herein as if fully re-alleged in this count. In addition, defendants are in exclusive possession of facts, not yet disclosed in discovery, that provide the exclusive means of setting forth this count in more particularized detail. Pursuant to Fed. R. Civ. P. 11(b)(3), plaintiffs reserve rights to amend this pleading after defendants submit to discovery.

449.     Doeren Mayhew, through its director Todd Fox, made material representations of fact to Plaintiffs Herbert Rechter, Morton Freedman, Gilbert Mayor, Irwin Goren, and Ronald Licht.

450.    The representations made by Todd Fox to Plaintiffs Herbert Rechter, Morton Freedman, Gilbert Mayor, Irwin Goren, and Ronald Licht were false.

451.    When Todd Fox made these representations, he knew the representations were false or made them recklessly in disregard of the representations' truth and as positive assertions.

452.    Todd Fox made these representations with the intention that Plaintiffs Herbert Rechter, Morton Freedman, Gilbert Mayor, Irwin Goren, and Ronald Licht would act on them in deciding to extend a loan to Ed May.

453.    Plaintiffs Herbert Rechter, Morton Freedman, Gilbert Mayor, Irwin Goren, and Ronald Licht reasonably relied upon these misrepresentations made by Todd Fox when they extended a personal loan to Ed May.

454.    Plaintiffs Herbert Rechter, Morton Freedman, Gilbert Mayor, Irwin Goren, and Ronald Licht suffered direct economic and other cognizable harm, including mental anguish and lost opportunities, as a result of their reliance upon the material misrepresentations made by Defendants Doeren Mayhew and Todd Fox.  The extent of such damage shall be proved at trial.

### COUNT XIII:  On Behalf of Carol and Stacey Vlachos and as Against Defendants Doeren Mayhew and SamJack:  Statutory Conversion Pursuant to  MCL 600.2919a

455.    This claim arises out of Doeren Mayhew's and SamJack's conversion of property for their own use, as well as their receiving, possessing, concealing, and aiding in the concealment of converted property.  Doeren Mayhew's and SamJack's liability to Carol and Stacey Vlachos (the "Vlachoses" or, for purposes of Count XIII only, "Plaintiffs") exists independent of any existing allegations of fraud in other causes of action inasmuch as, even if there were no fraud by Doeren Mayhew or SamJack, they are still liable for statutory conversion.

456.   Between September 2005 and March 2007, the Vlachoses entrusted capital contributions in the amount of $330,918 to Edward May and E-M Management Co. LLC ("E-M Management") for specifically defined and limited uses in connection with eight Michigan limited liability companies:  (1) L.V. Grand Project LLC; (2) H.P. Project Twenty Five LLC; (3) H.P. Project Thirty LLC; (4) H.P. Project Thirty Four LLC; (5) ATL Project One LLC; (6) L.V. Grand Project II LLC; (7) W.H. Project Five LLC; and (8) W.H. Project Eight LLC (collectively, the "LLCs").  The stated purpose of each LLC was to provide telecommunication services to specific hotel properties identified in the offering documents, and to purchase equipment and licenses in connection with this purpose.

457.   As set forth below, Plaintiffs' capital contributions were knowingly converted for other, unauthorized uses.

### *Plaintiffs' Capital Contributions*

458.   The operating agreements for the LLCs provided that monies contributed by Plaintiffs for membership units would be characterized as a "capital contribution" to the LLC.

459.   The offering documents further provided that Plaintiffs' capital contributions would be used for specifically defined and limited purposes, and then substantially "returned" to Plaintiffs as part of a "guarantee".  After the return of capital over a defined period of time, Plaintiffs were entitled to share in the profits from the project, if any.

460.   Plaintiffs only authorized their capital contributions to be used for specified purposes, such as to purchase equipment and rights to provide telecommunications services for certain hotel properties.

461.    Plaintiffs' money was to be deposited in a bank account that would be established and maintained for each LLC.   The LLCs' operating agreements barred the commingling of funds.

### Conversion of Plaintiffs' Capital Contributions

462.    On information and belief, Plaintiffs' capital contributions were deposited into a bank account maintained for E-M Management, and were not maintained in a separate account for each LLC.

463.    Plaintiffs' capital contributions were never used for the purposes described in the offering documents.   Edward May and/or E-M Management and/or the LLC never purchased telephones or equipment, or rights to provide telecommunications services to hotel properties. Further, Edward May and/or E-M Management never maintained Plaintiffs' capital contributions in a separate "Capital Account."   Instead, Plaintiffs' capital contributions were commingled with other funds and used for unauthorized purposes.

464.    At the same time Todd Fox served as a Director at Doeren Mayhew, he served on the Board of Directors of an Edward May entity named Browning Investments, Inc. ("Browning").

465.    On Doeren Mayhew's advice, E-M Management knowingly transferred commingled and converted funds to Browning.   Browning then disbursed a portion of the converted funds to Doeren Mayhew.

466.    Browning, again on Doeren Mayhew's advice, disbursed Plaintiffs' commingled and converted funds to other companies associated with Edward May including, but not limited to:   ForeHonors LLC, PhoneKate LLC, R3, Inc., and Creto International, Inc.   Twenty to thirty

such transfers were made, totaling several hundred thousand dollars.  A portion of these funds were then disbursed to Doeren Mayhew.

467.    In addition to his aforementioned roles with Doeren Mayhew and Browning, Todd Fox served as an officer of SamJack, which employed his wife, JoAnn Fox.

468.    SamJack siphoned off approximately $20,000 per month out of accounts which held Plaintiffs' capital contributions.

### *Aiding and Abetting the Conversion of Plaintiffs' Property*

469.    Doeren Mayhew and SamJack had knowledge of the bank statements, Excel spreadsheets, Quickbooks, and reports of E-M Management, the LLCs, and other companies associated with Edward May, which showed that Plaintiffs' capital contributions were commingled, and used for unauthorized purposes.

470.    Doeren Mayhew and SamJack knew at all times relevant that the offering materials required E-M Management to use Plaintiffs' capital contributions for defined and limited purposes.

471.    Doeren Mayhew and SamJack knew that Plaintiffs' capital contributions were commingled and maintained in E-M Management's bank account.

472.    Doeren Mayhew and SamJack received knowingly converted funds from Edward May, E-M Management, and/or other companies associated with Edward May.

### *Edward May's and/or E-M Management's Duty to Plaintiffs*

473.    Edward May and/or E-M Management was designated as the manager of the "project" for each LLC.

474.    Edward May and/or E-M Management was responsible for collecting the money and ensuring its deposit and use in accordance with the offering documents.

475.    Plaintiffs entrusted their capital contributions to Edward May and/or E-M Management for the specified uses outlined in the offering documents.

476.    By accepting Plaintiffs' capital contributions for specific and limited purposes, Edward May and/or E-M Management owed fiduciary and other duties to Plaintiffs.

477.    Edward May and/or E-M Management breached their fiduciary and other duties to Plaintiffs.

478.    At all times relevant, Doeren Mayhew and SamJack were aware of Edward May's and/or E-M Management's fiduciary and other duties to Plaintiffs.

479.    Doeren Mayhew and SamJack knew that Edward May and/or E-M Management breached their duties to Plaintiffs.

### *Plaintiffs' Losses*

480.    The particulars of Plaintiffs' capital contributions are as follows:

(a)    On September 7, 2005, Ms. Vlachos made a capital contribution of $71,175 for three units in L.V. Grand Project LLC.  Of that amount, Ms. Vlachos lost $24,432.03.

(b)    On April 14, 2006, Plaintiffs made a capital contribution of $28,200 for four units in H.P. Project Twenty Five LLC.  Of that amount, Plaintiffs lost $16,203.80.

(c)    On June 14, 2006, Plaintiffs made a capital contribution of $30,675 for three units in H.P. Project Thirty LLC.  Of that amount, Plaintiffs lost $26,507.07.

(d)     On October 17, 2006, Plaintiffs made a capital contribution of $28,668 for three units in H.P. Project Thirty Four LLC.  Of that amount, Plaintiffs lost $22,009.35.

(e)     On November 29, 2006, Plaintiffs made a capital contribution of $28,500.00 for one unit in ATL Project One LLC.  On December 13, 2006, Ms. Vlachos contributed another $28,500 for a second unit in ATL Project One LLC.  Of these amounts, Plaintiffs lost $50,665.

(f)     On January 4, 2007, Mr. Vlachos made a capital contribution of $30,600 for two units in L.V. Grand Project II LLC.  On February 2, 2007, Mr. Vlachos contributed another $15,300 for another unit in L.V. Grand Project II LLC.  Of these amounts, Mr. Vlachos lost $38,419.94.

(g)     On March 1, 2007, Plaintiffs made a capital contribution of $34,800 for four units in W.H. Project Five LLC.  Of that amount, Plaintiffs lost $33,234.72.

(h)     On March 23, 2007, Plaintiffs made a capital contribution of $34,500 for three units in W.H. Project Eight LLC.  Of that amount, Plaintiffs lost $34,500.

### *Statutory Conversion*

481.    Doeren Mayhew and SamJack converted Plaintiffs' capital contributions for their own use.

482.    Doeren Mayhew and SamJack received, possessed, concealed, and/or aided in the concealment of Plaintiffs' converted capital contributions that they knew were stolen, embezzled, or converted.

68

483.     As a result of the knowing, pervasive, and repeated conversions of Plaintiffs'
entire capital contributions detailed above, Plaintiffs suffered losses in the amount of
$245,971.91, plus attorneys' fees, costs, and interest.

## DEMAND FOR RELIEF (ALL COUNTS)

WHEREFORE, plaintiffs seek the following relief:

A.     A money judgment in their favor and against defendants, jointly and severally, in
an amount to be determined at trial, plus interest, costs and reasonable attorneys' fees;

B.     For Counts I, II, III, IV, V, VI, and XII exemplary damages of not less than $30
million;

C.     For Count VII, treble damages in accordance with 18 U.S.C. § 1964(c).

D.     For Count XIII, Plaintiffs Carol and Stacey Vlachos request that the Court enter
judgment in their favor and against Doeren Mayhew and SamJack, jointly and severally for:

1.   Three times the actual damages to which the Vlachoses may be found to be
entitled pursuant to MCL 600.2919a; and

2.   Costs and reasonable attorney fees, pursuant to MCL 600.2919a, plus interest.

E.     Such other and further relief in law or equity as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL (ALL COUNTS)**</u>

Plaintiffs respectfully request a trial by jury of all issues so triable.

Respectfully submitted,

By:     <u>/s/ R. Christopher Cataldo</u>
          R. Christopher Cataldo (P39353)
          Jaffe, Raitt, Heuer & Weiss, PC
          27777 Franklin Road, Suite 2500
          Southfield, MI 48034
          (248) 351-3000
          E-mail: ccataldo@jaffelaw.com

            AND

          John W. Schryber, Esq.
          David C. Silver, Esq.
          Norah D. Molnar, Esq.
          Patton Boggs LLP
          2550 M Street, NW
          Washington, DC 20037
          (202) 457-6000
          E-mail: jschryber@pattonboggs.com

            AND

          Scott L. Silver, Esq.
          Blum & Silver, LLP
          12540 West Atlantic Boulevard
          Coral Springs, FL 33071
          (954) 255-8181
          E-mail:silver@stockattorneys.com

          *Attorneys for Plaintiffs*

Dated:  July 7, 2008

70

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN ACKER, et al.,

     Plaintiffs,                          Case No. 08-cv-11261

v                                      Hon. Paul D. Borman

DOEREN MAYHEW & COMPANY, et al.,

     Defendants.

---

| | |
|---|---|
| R. Christopher Cataldo  (P39353)<br>Jaffe, Raitt, Heuer & Weiss, PC<br>Attorney for Plaintiffs<br>27777 Franklin Rd., Ste. 2500<br>Southfield, MI  48034<br>(248) 351-3000<br>ccataldo@jaffelaw.com | Dennis M. Haffey (P26378)<br>Benjamin W. Jeffers (P57161)<br>Matthew Mitchell (P69810)<br>Dykema Gossett PLLC<br>Attorneys for Defendant Doeren Mayhew<br>39577 Woodward Ave., Ste. 300<br>Bloomfield Hills, MI 48304<br>(248) 203-0813<br>bjeffers@dykema.com |
| John W. Schryber<br>David C. Silver<br>Patton Boggs, LLP<br>Attorneys for Plaintiffs<br>2550 M St., NW<br>Washington, DC 20037<br>(202) 457-6000<br>jschryber@pattonboggs.com | Scott T. Seabolt (P55890)<br>Foley & Lardner LLP<br>Attorneys for Defendants Todd Fox, James<br>O'Rilley, Joann Fox, Nancy O'Rilley and<br>SamJack Investments, Inc.<br>One Detroit Center<br>500 Woodward Ave., Ste. 2700<br>Detroit, MI 48226-3489<br>(313) 234-7115<br>sseabolt@foley.com |
| Scott L. Silver<br>Blum & Silver, LLP<br>Attorneys for Plaintiffs<br>12540 West Atlantic Blvd.<br>Coral Springs, FL 33071<br>(954) 255-8181<br>silver@stockattorneys.com | |

---

71

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2008, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to counsel of

record as listed below:

Dennis M. Haffey
Benjamin W. Jeffers
Matthew Mitchell
Dykema Gossett PLLC
39577 Woodward Ave., Ste. 300
Bloomfield Hills, MI 48304
bjeffers@dykema.com
dhaffey@dykema.com

Scott T. Seabolt
Foley & Lardner LLP
One Detroit Center
500 Woodward Ave., Ste. 2700
Detroit, MI 48226-3489
sseabolt@foley.com

John W. Schryber
David C. Silver
Patton Boggs, LLP
2550 M St., NW
Washington, DC  20037
jschryber@pattonboggs.com

/s/ Katherine M. Janulis
Katherine M. Janulis
Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin Rd., Ste. 2500
Southfield, MI  48034
(248) 351-3000
pmathews@jaffelaw.com