# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JOHN ACKER, *et al*.

       Plaintiffs,

vs.

DOEREN MAYHEW & COMPANY,
PROFESSIONAL CORPORATION d/b/a
DOEREN MAYHEW, TODD R. FOX,
JAMES P. O'RILLEY, JOANN FOX,
NANCY O'RILLEY, and SAMJACK
INVESTMENTS, INC.,

       Defendants.

Case No. 2:08-cv-11261

Honorable Paul D. Borman

> **DEFENDANTS DOEREN MAYHEW
> & COMPANY, TODD R. FOX AND
> JAMES P. O'RILLEY'S JOINT
> MOTION TO DISMISS SECOND
> AMENDED COMPLAINT**

---

R. Christopher Cataldo (P39353)
Attorneys for Plaintiffs
Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin Rd., Ste. 2500
Southfield, MI  48034
(248) 351-3000
ccataldo@jaffelaw.com


John W. Schryber
David C. Silver
Norah D. Molnar
Attorneys for Plaintiffs
Patton Boggs LLP
2550 M St., NW
Washington, DC  20037
(202) 457-6000
jschryber@pattonboggs.com

Dennis M. Haffey (P26378)
Benjamin W. Jeffers (P57161)
Matthew Mitchell (P69810)
Attorneys for Doeren Mayhew & Co., P.C.
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
(313) 568-6800
bjeffers@dykema.com


Scott T. Seabolt (P55890)
Attorneys for Defendants Todd Fox, James
  O'Rilley, JoAnn Fox, Nancy O'Rilley,
  And SamJack Investments, Inc.
Foley & Lardner LLP
One Detroit Center
500 Woodward Ave., Ste. 2700
Detroit, MI  48226
(313) 234-7115
sseabolt@foley.com

---

Scott L. Silver
Attorneys for Plaintiffs
Blum & Silver, LLP
12540 West Atlantic Blvd.
Coral Springs, FL  33071
(954) 255-8181
silver@stockattorneys.com

**DEFENDANTS DOEREN MAYEW & COMPANY, TODD R.
FOX AND JAMES P. O'RILLEY'S JOINT MOTION TO DISMISS
<u>SECOND AMENDED COMPLAINT</u>**

Defendants Doeren Mayhew & Company, Todd R. Fox and James P' O'Rilley move to dismiss plaintiffs' Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, including for lack of the requisite particularity for those claims governed by Fed.R.Civ.P. 9(b).

In compliance with Local Rule 7.1, defense counsel have repeatedly discussed with counsel for plaintiffs the basis for this motion, including to seek concurrence in the relief requested, including in connection with plaintiffs' repeated amendments of their claims, with most of this motion's arguments presented in previous motions.  Plaintiffs' counsel have not concurred.

Respectfully submitted,

s/ Scott Seabolt
Scott Seabolt (P55890)
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-3489
Phone:  (313) 234-7100
email:  sseabolt@foley.com
P55890

Lisa L. Tharpe (of counsel)
Foley & Lardner LLP
321 North Clark St., Suite 2800
Chicago, Illinois  60610
Phone:  (312) 832-4500
email:  ltharpe@foley.com

*Attorneys for Defendants Todd Fox, James
O'Rilley, JoAnn Fox, Nancy O'Rilley, and
SamJack Investments, Inc.*

/s/ Benjamin W. Jeffers
Dennis M. Haffey (P26378)
Benjamin W. Jeffers (P57161)
Matthew Mitchell (P69810)
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
(313) 568-5340
bjeffers@dykema.com
P57161

*Attorneys for Defendant
Doeren Mayhew & Co., P.C.*

Date: August 11, 2008

## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN ACKER, et al.

      Plaintiffs,

vs.

DOREN MAYHEW & COMPANY,
PROFESSIONAL CORPORATION d/b/a
DOEREN MAYHEW, TODD R. FOX,
JAMES P. O'RILLEY, JOANN FOX,
NANCY O'RILLEY, and SAMJACK
INVESTMENTS, INC.,

      Defendants.

Case No. 2:08-cv-11261

Honorable Paul D. Borman

**DEFENDANTS DOEREN MAYHEW & COMPANY, TODD R. FOX AND JAMES P. O'RILLEY'S BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

R. Christopher Cataldo (P39353)
Attorneys for Plaintiffs
Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin Rd., Ste. 2500
Southfield, MI  48034
(248) 351-3000
ccataldo@jaffelaw.com

John W. Schryber
David C. Silver
Norah D. Molnar
Attorneys for Plaintiffs
Patton Boggs LLP
2550 M St., NW
Washington, DC  20037
(202) 457-6000
jschryber@pattonboggs.com

Dennis M. Haffey (P26378)
Benjamin W. Jeffers (P57161)
Matthew Mitchell (P69810)
Attorneys for Doeren Mayhew & Co., P.C.
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
(313) 568-6800
bjeffers@dykema.com

Scott T. Seabolt (P55890)
Attorneys for Defendants Todd Fox, James
  O'Rilley, JoAnn Fox, Nancy O'Rilley,
  And SamJack Investments, Inc.
Foley & Lardner LLP
One Detroit Center
500 Woodward Ave., Ste. 2700
Detroit, MI  48226
(313) 234-7115
sseabolt@foley.com

Scott L. Silver
Attorneys for Plaintiffs
Blum & Silver, LLP
12540 West Atlantic Blvd.
Coral Springs, FL  33071
(954) 255-8181
silver@stockattorneys.com

**DEFENDANTS DOEREN MAYHEW & COMPANY, TODD R. FOX
AND JAMES P. O'RILLEY'S BRIEF IN SUPPORT OF JOINT
<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................iii

QUESTIONS PRESENTED ........................................................................................viii

I.     SUMMARY OF CASE AND MOTION ...............................................................1

II.    PROCEDURAL HISTORY ...................................................................................2

III.   STANDARD .........................................................................................................2

IV.   ARGUMENT ........................................................................................................2

     A.     COUNTS I, II AND III: PLAINTIFFS' PURCHASE-RELATED FRAUD AND NEGLIGENCE CLAIMS SHOULD BE DISMISSED ................................2

          1.     The SAC relies on inapposite "promoter liability" allegations and fails to allege reliance on misrepresentations of existing *facts* on a plaintiff-by-plaintiff basis. ..........................................................2

               a.     Need Statement Of A "Fact" Not Of Future Action Or Opinion. ...............................................................3

               b.     Need Plaintiff-By-Plaintiff Particularized Allegations ...................6

               c.     No "But For" And "Loss" Causation For Each Plaintiff. ...............8

          2.     Plaintiffs' "alternative" negligent misrepresentation claim in Count II fails for the same reasons, and also because Michigan's Accountant Liability Act recognizes only "intentional misrepresentation." ...................................................................9

     B.     COUNTS IV, V AND VI: PLAINTIFFS' "POST-PURCHASE" THEORY HAS BEEN REJECTED AS A MATTER OF LAW............................9

          1.     "Holder" securities claims are not valid. ....................................10

          2.     The "Aiding and Abetting" and "Conspiracy" claims should be dismissed for these and additional reasons. ...............................11

     C.     COUNT VII (RICO) SHOULD BE DISMISSED BECAUSE SECURITIES FRAUD IS NOT A PREDICATE ACT FOR RICO, AND THE ALLEGATIONS LACK THE REQUISITE PARTICULARITY.................12

          1.     Securities fraud is not a predicate act for a RICO claim..............12

          2.     The elements of RICO are not alleged with particularity. ...........13

   3.  Plaintiffs should be ordered to submit a RICO Case Statement. ...............14

 D.  COUNTS VIII AND IX: THESE CLAIMS ARE BASED ON A VOID "ORAL AGREEMENT" TO PERFORM TAX WORK YEARS IN THE FUTURE. ..........................................................................................................14

 E.  COUNTS X AND XI: THE THIRD-PARTY BENEFICIARY AND UNJUST ENRICHMENT CLAIMS ARE DEFICIENT......................................15

   1.  Plaintiffs Cannot Recover As "Third Party Beneficiaries."......................16

   2.  Plaintiffs Cannot Recover On An "Unjust Enrichment" Theory..............17

 F.  COUNT XII: THE "FRAUDULENT INDUCEMENT OF LOAN AGREEMENT" IS FLAWED. ...............................................................................18

 G.  COUNT XIII: THE "CONVERSION" COUNT IS DEFICIENT........................19

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABF Capital Management v. Askin Capital Management, L.P.*,
   957 F. Supp. 1308 (S.D. N.Y. 1997).......................................................................................13

*Adam v. Silicon Valley Bancshares*,
   884 F. Supp. 1398 (N.D. Cal. 1995) ......................................................................................12

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
   *supra*, 176 F.3d .....................................................................................................................13

*Arnlund v. Deloitte & Touche LLP*,
   199 F. Supp. 2d 461 (E.D. Va. 2002) ...................................................................................11

*Ballan v. Upjohn Co.*,
   814 F. Supp. 1375 (W.D. Mich 1992) .....................................................................................8

*Barber v. SMH (US), Inc.*,
   202 Mich. App. 366; 509 N.W.2d 791 (1993)......................................................................17

*Bastion v. Petren Resources Corp*,
   892 F.2d 680 (7th Cir. 1990), *cert. den.* 496 U.S. 906 (1990)..................................................8

*Bd of Trustees v. Grant Thornton, LLP*,
   2003 Mich. App. LEXIS 613 ...................................................................................................9

*Bell Atl. Corp. v. Twombly*,
   ___ U.S. ___, 127 S.Ct. 1955 (2007)......................................................................................2

*Berent v. Kemper Corp.*,
   780 F. Supp. 431 (E.D. Mich. 1991), *aff'd*, 973 F.2d 1291 (6th Cir. 1992) ............................14

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723; 95 S. Ct. 1917 (1975)....................................................................................10

*Brown v. North Central F. S., Inc.*,
   173 F.R.D. 658 (N.D. Iowa, 1997) ..........................................................................................6

*Brunsell v. City of Zeeland*,
   467 Mich. 293; 651 N.W.2d 388 (2002).........................................................................16, 17

*Cassidy v. Kraft-Phenix Cheese Corp*,
   285 Mich. 426 (1938) ............................................................................................................15

*Central Bank of Denver, NA v. First Interstate Bank of Denver, NA*,
   511 U.S. 164 (1994)............................................................................................12

*Chanoff v. United States Surgical Corp.*,
   857 F. Supp. 1011 (D. Conn. 1994)..................................................................10

*Chase Bank Of Texas, NA v. Grant Thornton, LLP*,
   No. 236237, 2003 WL 21350362 (Mich. App. June 10, 2003) .......................11, 18

*Citizens Ins. Co. v. Delcamp Truck Center, Inc.*,
   178 Mich. App. 570; 444 N.W.2d 210 (1989)...................................................20

*Coffey v. Foamex, L.P.*,
   2 F.3d 157 (6th Cir. 1993) ..................................................................................6

*Craighead v. E.F. Hutton & Co.*,
   899 F.2d 485 (6th Cir. 1990) ............................................................................13

*Crocker v. Federal Deposit Ins. Corp.*,
   826 F.2d 347 (5th Cir. 1987) ............................................................................11

*De Wit v. Firstar Corp.*,
   879 F. Supp. 947 (N.D. Iowa, 1995)...................................................................6

*Decker v. GlenFed, Inc.*,
   60 F.3d 591 (C.A.9, 1995) ...............................................................................12

*Dynamic Const Co v. Barton Malow Co.*,
   214 Mich. App. 425; 543 N.W.2d 31 (1995)....................................................16

*Earp v. City of Detroit*,
   16 Mich. App. 271; 167 N.W.2d 841 (1969).....................................................11

*Echelon Homes, LLC v. Carter Lumber Co.*,
   261 Mich. App. 424; 683 N.W.2d 171, rev'd on other grounds 472 Mich. 192 (2005)..........19

*Garras v. Bekiares*,
   315 Mich. 141; 23 N.W.2d 239 (1946)............................................................19

*Ginsberg v. Capitol City Wrecking Co*,
   300 Mich. 712; 2 N.W.2d 892 (1942)..............................................................18

*Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*,
   863 F. Supp. 447 (E.D. Mich. 1994).................................................................13

*Greenville Nat'l Bank v. Nat'l Hardwood Co.*,
   241 Mich. 524; 217 N.W. 786 (1928)................................................................6

*Head v. Phillips Camper Sales & Rental, Inc.*,
　　234 Mich. App. 94; 593 N.W.2d 595 (1999)....................................................................19, 20

*Hi-Way Motor Co. v. Int'l Harvester Co.*,
　　398 Mich. 330; 247 N.W.2d 813 (1976)..............................................................................3, 7

*Homico Constr. & Dev. Co. v. Ti-Bert Systems, Inc.*,
　　939 F.2d 392 (6th Cir. 1991) ....................................................................................................14

*In re Worldcom, Inc. Securities Litigation*,
　　336 F. Supp. 2d 310 (S.D.N.Y. 2004)....................................................................................10

*Int'l. Broth. of Elec Workers, Local Union No. 58 v. McNulty*,
　　214 Mich. App. 437; 543 N.W.2d 25 (1995)..........................................................................6

*Kamalnath v. Mercy Memorial Hosp.*,
　　194 Mich. App. 543; 487 N.W.2d 499 (1992)......................................................................18

*Kenty v. Bank One, Columbus*, N.A.,
　　92 F.3d 384, 390 (6th Cir. 1996) ............................................................................................13

*Koenig v. South Haven*,
　　460 Mich. 667; 597 N.W.2d 99 (1999)............................................................................16, 17

*Laury v. Colonial Title Co.*,
　　No. 272727, 2007 WL 1376352 (Mich. App. May 10, 2007) ..............................................11

*Lawsuit Financial LLC v Curry*,
　　261 Mich. App. 579 (2004) ......................................................................................................20

*Levitz v. Warrington*,
　　877 P.2d 1245 (Ct. App. Utah 1994) ......................................................................................10

*Liggett Restaurant Group, Inc v. Pontiac*,
　　260 Mich. App. 127; 676 N.W.2d 633 (2003)......................................................................18

*Maxwell v. KPMG, LLP.*,
　　___ F.3d ___ (7th Cir. 2008) .....................................................................................................8

*Mercer v. Jaffe, Snider, Raitt and Heuer, PC*,
　　713 F. Supp. 1019 (W.D. Mich. 1989) ....................................................................................3

*Morgan v. Church's Fried Chicken*,
　　829 F.2d 10 (6th Cir. 1987) ......................................................................................................2

*Pasternak v. Sagittarius Recording Co.*,
　　617 F. Supp. 1514 (E.D. Mich. 1985)......................................................................................8

*Pinter v. Dahl*,
 486 U.S. 622 (1988)..................................................................................................3

*Plastis v. E.F. Hutton & Co., Inc.*,
 642 F. Supp. 1277 (W.D. Mich. 1986), *aff'd.* 829 F.2d 13, *cert. denied* 45 U.S. 962.....4, 8, 18

*Riley v. Ameritech Corp., Inc.*,
 147 F. Supp. 2d 762 (E.D. Mich. 2001)..................................................................17

*Romeo Inv. Ltd. v. Michigan Consolidated Gas Co.*,
 2007 WL 1264008 (unpublished Mich. App., May 1, 2007) .................................19

*Schuler v. American Motors Sales Corp.*,
 39 Mich. App. 276, 17 N.W.2d 493 (1972)............................................................4

*Shapiro v. Cantor*,
 123 F.3d 717 (2nd Cir. 1997)..............................................................................5, 6

*Sky Technology Partners, LLC v. Midwest Research Inst.*,
 125 F. Supp. 2d 286 (E.D. Mich. 2000).................................................................14

*Stewart v. Michigan*,
 No. 05-CV-559, 2006 WL 374207 (W.D. Mich. 2006) ..........................................4

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc*,
 ___ U.S. ___, 128 S. Ct. 761 (2008).....................................................................12

*Van Tassel v. McDonald Corp.*,
 159 Mich. App. 745, 407 N.W.2d 6 (1987)......................................................4, 18

*Vennittilli v. Primerica, Inc.*,
 943 F. Supp. 793 (E.D. Mich. 1996)......................................................................12

*Yadlosky v. Grant Thornton, LLP*,
 120 F. Supp. 2d 622 (E.D. Mich. 2000)...................................................9, 13, 16, 17

## REGULATIONS

17 C.F.R. § 240.10b5 .........................................................................................2, 10

## RULES

Fed.R.Civ.P. 9...........................................................................................6, 7, 8, 14

Fed.R.Civ.P. 12(b)(6)..............................................................................................2

**STATUTES**

MCL § 566.132(1)(a) .................................................................................................15

MCL § 600.2919a ......................................................................................................19

15 U.S.C. 78j ..............................................................................................................2

18 U.S.C. § 1962 ......................................................................................................13

18 U.S.C. § 1964(c) .................................................................................................13

M.C.L. 600.2962 .......................................................................................................9

M.C.L. § 451.501 .....................................................................................................10

M.C.L. § 451.810 .....................................................................................................10

M.C.L. § 600.1405 ...................................................................................................16

**OTHER AUTHORITIES**

Manual for Complex Litigation, 3d. at § 33.81 ......................................................14

Restatement Torts 2d § 876(b).................................................................................11

## QUESTIONS PRESENTED

1.  Should Counts I, II and III for purchase-related fraud and negligent misrepresentation be dismissed because the Complaint fails to allege elements of fraud for each plaintiff with particularity, including misrepresentation of a fact relied upon by each plaintiff, and Michigan's Accountant Liability Act recognizes only "intentional misrepresentation"?

2.  Should Counts IV, V and VI be dismissed as a matter of law because there is no recognized claim under the securities laws or common law for plaintiffs' post-purchase "holder" theory, and also as to Counts V and VI, because an accountant has no liability for "aiding and abetting" securities fraud and "conspiracy" in this context is no different from "aiding and abetting"?

3.  Should Count VII be dismissed because securities fraud is not a predicate act for RICO, and the allegations lack the requisite particularity?

4.  Should Counts VIII and IX, "Professional Negligence" and "Breach of Contract," be dismissed because they are premised on an alleged oral agreement that is void under the statute of frauds?

5.  Should Counts X and XI for Third-Party Beneficiary and Unjust Enrichment be dismissed where the individual plaintiffs are not direct, intended beneficiaries of the accountants' alleged agreement to do tax work for the various LLCs?

6.  Should Count XII of "Fraudulent Inducement" be dismissed as with fraud, i.e. because there is no allegation defendants made a false statement of fact?

7.  Should Count XIII, "Conversion," be dismissed where non-specific money voluntarily given to another that defendants may never have received cannot be the basis of statutory conversion under Michigan law?


Defendants say          "Yes"

Plaintiffs say          "No"

## I.      SUMMARY OF CASE AND MOTION

This case arises out of securities fraud by non-party Edward P. May, a former tax-return client of defendant Doeren Mayhew & Co., P.C.  The SEC sued and obtained a judgment against May and his company (E-M Management Co., LLC) for securities fraud.

Unbeknownst to defendants until the summer of 2007, May apparently perpetrated an investment scheme based on non-existent contracts with hotels and others.  Investor funds were to provide telephone equipment and services to the hotel, with the hotel's monthly contract payments funding returns on investments.  The 451 plaintiffs invested in some of May's 200+ LLCs, and allegedly lost money.  Plaintiffs in their Second Amended Complaint ("Complaint" or "SAC") allege that the SEC viewed these investments as constituting offerings of non-exempt unregistered securities under federal securities laws, and "concluded that the offerings were false and misleading because, inter alia, none of the offering materials disclosed that the LLC's were not operating businesses but were, instead, Ponzi scheme vehicles…."  (SAC ¶366.)

With May bankrupt, plaintiffs seek other collectible sources, such as professionals, and here claim falsely that defendants promoted these investments, controlled the "scheme" and defrauded investors by conspiracy and aiding-and-abetting May's securities fraud.  Defendants are Doeren Mayhew, two of its accountants, Todd Fox and James O'Rilley, their wives Joann Fox and Nancy O'Rilley, and an entity named SamJack Investments, Inc.

While plaintiffs' 483 paragraph Second Amended Complaint is replete with assertions of "promoter liability," accountants cannot have "promoter liability" or liability for "aiding-and-abetting" or conspiring to commit federal securities fraud in these circumstances.  Faced with that "no liability" situation, plaintiffs try to force their "promoter liability" allegations into common law claims and RICO, and even try to create new law, but do not state claims.  The accountants innocently prepared tax returns, never prepared a financial statement for any of the

May LLCs whether audited, reviewed or compiled, and have no liability.  The Court should dismiss the claims against the firm and its accountants under Fed.R.Civ.P. 12(b)(6).

## II.  PROCEDURAL HISTORY

This is not a class action, and merely joining 451 plaintiffs does not eliminate each plaintiff's pleading obligations.  The SAC contains 13 deficient counts:  (1) common law fraud in the purchase of unregistered securities; (2) common law negligent misrepresentation in the purchase of unregistered securities; (3) fraud in the purchase and sale of securities, 15 U.S.C. 78j, Rule 10b5, 17 C.F.R. § 240.10b5; (4) post-purchase common law fraud (5) common law aiding and abetting of post purchase fraud; (6) conspiracy to commit common law post-purchase fraud; (7) civil RICO; (8) professional negligence; (9) breach of contract; (10) breach of contract as third party beneficiary; (11) unjust enrichment, (12) fraudulent inducement; and (13) conversion by two plaintiffs.

## III.  STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a plaintiff's pleading.  The Court need not accept as true "legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  The Supreme Court in *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964 (2007), rejected the oft-cited language that a claim is stated unless it appears beyond doubt that the plaintiff can prove "no set of facts" which would entitle him to relief.  This language "has earned its retirement" and "is best forgotten."  *Id*. at 1969.

## IV.  ARGUMENT

### A.  COUNTS I, II AND III: PLAINTIFFS' PURCHASE-RELATED FRAUD AND NEGLIGENCE CLAIMS SHOULD BE DISMISSED

Plaintiffs' three claims relating to their purchase of securities should be dismissed.

### 1.  The SAC relies on inapposite "promoter liability" allegations and fails to allege reliance on misrepresentations of existing *facts* on a plaintiff-by-

plaintiff basis.

Count I claims "common law" fraud.  Count III is based on the same factual allegations, and federal securities statutes.  Stripped of conclusions and promoter liability language, these claims make little attempt at plaintiff-by-plaintiff allegations like reliance on misrepresentations of existing facts.  Rather, the key allegations are that Doeren Mayhew, Mr. Fox and Mr. O'Rilley provided services to Doeren Mayhew's client, who orchestrated an investment scheme based on non-existent contracts.  Defendants' purported nexus was lending the use of Doeren Mayhew's "name" to promote investment in the limited liability companies ("LLCs") that were May's investment vehicles, participating in promotion such as through "dog-and-pony" shows, and agreeing to prepare LLC tax returns (which includes K-1s).  Messrs. Fox and O'Rilley also purportedly were involved in co-authoring the offering memoranda and developing a "cash flow plan."  (SAC ¶3.)  The allegations are not true, but not actionable in any event.

By law, an accountant has no promoter liability for securities fraud.  *Pinter v. Dahl*, 486 U.S. 622, 649-650 (1988) (refusing to impose liability on professionals like accountants and lawyers who had "mere participation in unlawful sales transactions.").  The same plaintiffs' law firm here – Jaffe, Raitt, Heuer & Weiss, PC – relied on *Pinter v. Dahl* and escaped liability for similar "promotion" claims by disgruntled investors, in *Mercer v. Jaffe, Snider, Raitt and Heuer, PC*, 713 F. Supp. 1019, 1024 (W.D. Mich. 1989).  Here, plaintiffs do not allege they purchased securities from defendants.  Under *Pinter* and progeny, Counts I and III fail as a matter of law.

### a.      Need Statement Of A "Fact" Not Of Future Action Or Opinion.

Most of the promotional allegations are opinions and representations about the future, when the alleged false statements must be of existing fact.  "[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact.  Future promises are contractual and do not constitute fraud."  *Hi-Way Motor Co. v. Int'l Harvester Co.*,

398 Mich. 330, 336; 247 N.W.2d 813 (1976).  Expressions of opinions or exaggeration or sales puffing are not sufficient.  *Plastis v. E.F. Hutton & Co., Inc.*, 642 F. Supp. 1277, 1293 (W.D. Mich. 1986), *aff'd*. 829 F.2d 13, *cert. denied* 45 U.S. 962; *Schuler v. American Motors Sales Corp.*, 39 Mich. App. 276, 17 N.W.2d 493 (1972); *Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 407 N.W.2d 6, 8-9 (1987) (non-actionable "puffing" "talk and promoting a sale").

Here, plaintiffs allege many things that defendants deny but that do not constitute false statements of existing fact, such as that Doeren Mayhew was "using its name" to promote investment and "controlled" the scheme through Messrs. Fox and O'Rilley and their wives (SAC ¶1), or that investment was promoted by "dog-and-pony" or "road" shows (*Id* ¶379) or by an "800" telephone number or by a "pitch" or "marketing initiatives"(*Id* ¶380), or that Doeren Mayhew "recommended" the use of LCCs as the investment vehicle (*Id* ¶7).

Plaintiffs argue that Doeren Mayhew's work for the prospective new LLCs "included preparing, reviewing, and editing the offering memoranda" sent by Ed May to investors (*Id* ¶8) and that statements in the offering memoranda were false with material omissions.  SAC ¶¶ 8, 10, 356-357, 360.  However, the only factually particular allegation is that O'Rilley in October 2006 reviewed a draft offering memo provided by May.  *Id.* at ¶356.  *See* **Exhibit 1**.[1]  The actual October 2006 emails on which the allegation is based make clear that May or his counsel prepared the offering memo, and O'Rilley proposed a few lines of language **limited to tax consequences**.  Specifically, May wrote:  "Here is *what I am going to use* as an offering memorandum and I will include a signature page subscription agreement.  Please revue [sic] and

---

[1]  Because the SAC contains allegations that arise from a specific email – which they should have attached – the email is now part of the Complaint and the Defendants are entitled to quote from it.  *See Stewart v. Michigan*, No. 05-CV-559, 2006 WL 374207, *1 n.1 (W.D. Mich. 2006) (finding that, despite the inclusion of a document on a motion to dismiss, defendant's motion could properly be reviewed under a 12(b) standard, as it was plaintiff's duty to include the referenced writing as part of the complaint).  A complete copy of this email is attached hereto

give me the language to insert *re taxes*." (emphasis added). In response, O'Rilley wrote:

> Todd & Ed: I've made changes to the outline in red to add the language re: taxes. The document also went through a "spell check" and corrected a couple of spelling/grammar items that were not highlighted in red – for example thirty days was changed to thirty-days and one time was changed to one-time and $200.000 was changed to $200,000 ... Sorry, but it was an automatic check. Please review and let me know if anything requires a further change. **Exhibit 1.**

Obviously, May had already drafted and decided on the form of offering memo, and the *only item* on which May requested assistance was a provision regarding taxes – something that a tax accountant would reasonably be asked to do. Indeed, O'Rilley went so far as to apologize to May that the automatic spell-check made some non-tax spelling changes to the document. *Id.* There are no other particularized allegations that Fox and O'Rilley ever reviewed or proposed changes to any other offering materials. There are no allegations that May accepted O'Rilley's proposed changes regarding taxes, or that a defendant contributed a single word to the offering materials used by May for years before October 2006, or that O'Rilley's October 2006 proposed tax language appeared in any offering memoranda provided to investors, or that O'Rilley had actual knowledge of the alleged Ponzi scheme, or that O'Rilley intended to defraud anyone in proposing the tax language, or that O'Rilley's proposed tax language was false or misleading in any way, or that any plaintiff relied on this tax language in making an investment decision.

Other courts have held in analogous situations that, even where accountants participated in preparing disclosure materials, accountants do not have a duty to disclose information about their clients to the public. For example, in *Shapiro v. Cantor,* 123 F.3d 717 (2nd Cir. 1997), the court upheld a lower court's finding that an accountant had no duty to inform investors in a partnership that one of the principals in the partnership was a convicted felon. There, the defendant firm was accused of making "representations in the placement memoranda intended to

_____

as **Exhibit 1.**

induce investments without disclosing David Greenberg's conviction or that his minor son was the only director and shareholder of one of the limited partnerships." *Id.* at 722. The allegations included the firm's role in providing financial projections included in the offering memoranda. *Id.* As in *Shapiro*, defendants' alleged role in May's offering statement is consistent with the role of an accountant, and not the basis for a fraud claim. Apart from the non-specific and misplaced allegations about the offering memorandum, the SAC contains no other statements of existing fact by defendants that support Counts I-III.

**b.    Need Plaintiff-By-Plaintiff Particularized Allegations**

The attempt to join 451 plaintiffs does not relieve each plaintiff's pleading burden, or require defendants to take 451 depositions to get the basic particulars for each plaintiff.

The heightened "particularity" requirement in Rule 9(b) means allegations must specifically recite the "time, place, and content of the alleged misrepresentation on which [plaintiffs] relied." *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). That basic who, what, when, where and how is required from each plaintiff in a multiple-plaintiff lawsuit. *See e.g.*, *Brown v. North Central F. S., Inc.*, 173 F.R.D. 658, 666 (N.D. Iowa, 1997) ("each plaintiff must allege he or she was the victim of specific materially false statements in relation to the transaction in which he or she was involved," with allegations "broken down" by plaintiff); *De Wit v. Firstar Corp.,* 879 F. Supp. 947, 990 (N.D. Iowa, 1995). Plaintiffs' prolific "promoter" language cannot disguise the fact that plaintiffs have failed to plead all of the elements of fraud with particularity as to each plaintiff. *See Greenville Nat'l Bank v. Nat'l Hardwood Co.*, 241 Mich. 524, 526-28; 217 N.W. 786 (1928); *Int'l. Broth. of Elec Workers, Local Union No. 58 v. McNulty*, 214 Mich. App. 437, 447; 543 N.W.2d 25 (1995). Allegations of misrepresentation made to a third party do not constitute a valid fraud claim. *Id.*

Each plaintiff must, yet does not, plead with particularity (and ultimately prove with clear

and convincing evidence) each element of intentional misrepresentation or fraud, which are:

> (1) That defendant[s] made a material representation; (2) that it
> was false; (3) that when [they] made it [they] knew it was false, or
> made it recklessly, without any knowledge of its truth and as a
> positive assertion; (4) that [they] made it with the intention that it
> should be acted upon by plaintiff[s]; (5) that plaintiff[s] acted in
> reliance upon it; and (6) that [plaintiffs] thereby suffered injury.

*Hi Way Motor Co. v. Int'l Harvester Co.*, 59 Mich. App. 366, 371; 229 N.W.2d 456 (1975),

*aff'd*. 398 Mich. 330 (1976).

Merely because 451 plaintiffs have improperly joined does not immunize them from the

"particularity" obligation that each has under Rule 9(b). Plaintiffs cannot be lumped together as

"plaintiff investors." Each did not hear, see, or receive the same things. The Complaint alleges

over 200 LLCs, from 1998 through 2007, and each had its own offering materials and investors,

with the one specific recommendation of tax language by Mr. O'Rilley not occurring until

October 2006. The Complaint fails to allege what material misstatement of existing fact was

received and reasonably relied upon by each plaintiff to induce the investment. For example:

- Which plaintiff received which of the various "offering memoranda" (SAC ¶357) and materials, from whom, containing what false statements of fact, inducing what investment, when, by which plaintiff, in which LLC, causing what loss?

- Who called the 800 number, when, hearing what, from whom, inducing what action? (SAC ¶380.)

- Who attended which dog-and-pony show or road show or dinner or barbecue, when, hearing what statements, by whom, inducing what action? (SAC ¶379.)

- Which offering materials contained the O'Rilley-drafted tax language? (SAC ¶356.)

- Which investors in reliance called Todd Fox, when, hearing what statements, and inducing what action?

The 451 plaintiffs cannot play a shell game and make the defense guess, or wait for 451

depositions to discover those basics. Nor does Exhibit A attached to the SAC suffice. That

chart purports to show into which May LLCs each plaintiff invested after March 2005, with how much invested and returned.  The chart does not indicate what each plaintiff reviewed, saw or heard before their purchases, or contain the "who, what, when, where and why" allegations required by Rule 9.  The chart contains no information on investments before March 2005, and returns on those investments.

### c.      No "But For" And "Loss" Causation For Each Plaintiff.

Each plaintiff must and has not alleged both "but for" and "loss" causation.  That is, each plaintiff must allege with particularity how the plaintiff would not have invested, and also that the misrepresentation caused the investment to decline in value and cause the loss.  *Plastis*, *supra*; *Pasternak v. Sagittarius Recording Co.*, 617 F. Supp. 1514, 1530 (E.D. Mich. 1985) ("Plaintiffs must show loss causation"); *Maxwell v. KPMG, LLP.*, ___ F.3d ___ (7th Cir. 2008); *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1384 (W.D. Mich 1992).  The same causation requirement for securities fraud applies to common law fraud.  *Bastion v. Petren Resources Corp*, 892 F.2d 680, 683-85 (7th Cir. 1990), *cert. den.* 496 U.S. 906 (1990).

Plaintiffs offer the collective and conclusory allegation that "[i]f the truth of the aforementioned subject matter (that had been so affirmatively misrepresented by Doeren Mayhew) had been told as to each of the subject LLCs, i.e., that the LLCs were non-operating shells for which equipment was never purchased, the offered units would not have been revealed to have no market value at all and, thus, would not have been purchased by plaintiffs." (SAC ¶364.)  There are no plaintiff-by-plaintiff allegations.  Not a single plaintiff alleges, for example, that but for what the accountants said at a particular barbecue, that plaintiff would not have invested.  Even the collective allegations focus only on decision-making at the point of purchase.  There is no allegation of "loss" causation, *i.e.* that misrepresentation by defendants caused the decline in value of a particular LLC or investment.  The Court should dismiss Counts I and III.

2.      Plaintiffs' "alternative" negligent misrepresentation claim in Count II fails
        for the same reasons, and also because Michigan's Accountant Liability Act
        recognizes only "intentional misrepresentation."

Count II alleges "negligent" misrepresentation, and thus has the same flaws as for intentional misrepresentation, since the elements are the same except mens rea.  Also, by statute, plaintiffs who are not "clients" of the accountant are limited to intentional misrepresentation.

Plaintiffs allege that Doeren Mayhew is a "firm of certified public accountants" (SAC ¶1), but do not allege that the individual plaintiffs were their clients, or that these defendants were informed in writing when engaged that a primary intent of May was for the accounting services to benefit or influence plaintiffs.[2]  Count II must be dismissed under Michigan's Accountant Liability Act, which provides that only a "*client*" may claim negligence, and action by a non-client is limited to fraud or intentional misrepresentation.  M.C.L. 600.2962.

In *Yadlosky v. Grant Thornton, LLP*, 120 F. Supp. 2d 622, 634 (E.D. Mich. 2000), the court held that "claims of breach of fiduciary duty, negligent misrepresentation, and negligent and wanton supervision are barred by Michigan's Accountant Liability Act," when an investor sued two CPA firms that had provided auditing services to MCA Financial Corporation.  *See also*, *Bd of Trustees v. Grant Thornton, LLP*, 2003 Mich. App. LEXIS 613, * 12 (Docket No. 236415, issued March 11, 2003, unpublished) (where the court barred a claim for negligent misrepresentation, reasoning that the Act "allows claims against an accountant to proceed only if certain conditions are satisfied, and plaintiff does not satisfy the conditions in the instant case").

B.      COUNTS IV, V AND VI: PLAINTIFFS' "POST-PURCHASE" THEORY HAS
        BEEN REJECTED AS A MATTER OF LAW.

---

[2] Eight of the 451 plaintiffs are LCCs in their own right, and are labeled by plaintiffs as the "Investing LLCs" in paragraph 368.  Plaintiffs contend that these eight Investing LLCs had an "oral agreement" with Doeren Mayhew for the preparation of tax work.  *Id.*  Thus, these are the only entities that plaintiffs expressly contend are "clients" of Doeren Mayhew (*see* SAC ¶432), but for the reasons stated in this brief, those eight plaintiffs have no claims either.

Counts IV, V and VI allege plaintiffs held or retained their investments due to post-purchase misrepresentations.  These claims are deficient as a matter of law.

### 1.    "Holder" securities claims are not valid.

While Counts I-III concern *purchase* of securities, Count IV claims fraud on the theory that plaintiffs *held or retained* their investments in reliance on post-purchase misrepresentations. In addition to lacking plaintiff-by-plaintiff particulars, as discussed, this type of "holder" claim is not viable as a matter of law.  By labeling this a "common law claim," plaintiffs recognize that "holder" claims are not permitted under federal securities laws.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-738; 95 S. Ct. 1917 (1975) (limiting standing under Rule 10b-5 to actual purchasers or sellers of and not "holders"); *see also*, *Chanoff v. United States Surgical Corp.*, 857 F. Supp. 1011, 1023 (D. Conn. 1994).

There is no exception to the *Blue Chip* rule in Michigan, which is in accord with federal securities law, by virtue of adopting the Uniform Securities Act, M.C.L. §451.501, *et seq*, which likewise is limited to claims "in connection with the offer, sale, or purchase of any security." This is virtually identical to the 10b-5 language construed in *Blue Chip*.  M.C.L. § 451.501, 17 C.F.R. § 240.10b-5, *Blue Chip*, 421 U.S. at 737-738.  Michigan's version of the Uniform Act creates no private right of action except any specified within M.C.L. § 451.810, so there is no support for reading a "holder" claim into the statute.  Other state courts construing the Uniform Securities Act agree.  *See, e.g*., *Levitz v. Warrington*, 877 P.2d 1245, 1246-1247  (Ct. App. Utah 1994); *Interlake*, 45 Wash. App. at 513-516.

No Michigan court has recognized a common law "holder" claim either.  Other jurisdictions have ruled that holders of securities do not have viable claims under state common law, whether due to standing or lack of causation, i.e., speculative to say earlier disclosure of the truth would have avoided the investment loss.  *See In re Worldcom, Inc. Securities Litigation*,

336 F. Supp. 2d 310, 318-320 (S.D.N.Y. 2004); *Arnlund v. Deloitte & Touche LLP,* 199 F. Supp. 2d 461, 486-490 (E.D. Va. 2002) (holder claims under state common law fail causation as a matter of law); *Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347, 351 (5th Cir. 1987) (common law holder claims were too speculative).

Here, Count IV is based on "holder" allegations.  Plaintiffs claim that the accountants made material misrepresentations in tax returns for 2005 and 2006, which were mailed to the plaintiffs after their purchases.  (SAC ¶408.)  Likewise, plaintiffs claim that all defendants made post-purchase misrepresentations in allegedly "causing" the mailing of "monthly summaries" about the LLCs to the plaintiffs.  (SAC ¶409.)  All of the defendants allegedly intended that plaintiff would "**retain** their investment position" in reliance on the tax returns (SAC ¶410) and "monthly summaries."  (SAC ¶411.)  This holder claim should be dismissed.

### 2. The "Aiding and Abetting" and "Conspiracy" claims should be dismissed for these and additional reasons.

Counts V and VI should be dismissed for the same deficiency just discussed, i.e. those Counts allege liability for aiding-and-abetting and conspiracy to commit the "holder" fraud claimed in Count IV (*see* SAC ¶¶416 and 421), and fail as a matter of law when the underlying "holder" claim fails.  *See Earp v. City of Detroit,* 16 Mich. App. 271, 275; 167 N.W.2d 841 (1969) (there is no cause of action for conspiracy alone, in the absence of an actionable underlying claim); *Laury v. Colonial Title Co.*, No. 272727, 2007 WL 1376352, *3 (Mich. App. May 10, 2007) (dismissing civil conspiracy claim because the underlying claim of fraud failed) (attached as **Exhibit 2**); *Chase Bank Of Texas, NA v. Grant Thornton, LLP*, No. 236237, 2003 WL 21350362 at *4, (Mich. App. June 10, 2003) (citing with approval Restatement Torts 2d § 876(b)) and holding that "the alleged abettor is required to have the same degree of scienter as the person committing the actual fraud") (attached as **Exhibit 3**).

In addition, the "aiding and abetting" claim (Count V) fails also because the Supreme Court has held that an accountant has no liability for aiding-and-abetting securities fraud. *Central Bank of Denver, NA v. First Interstate Bank of Denver, NA*, 511 U.S. 164 (1994). *See also*, *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc*, ___ U.S. ___, 128 S. Ct. 761, 769 (2008) (*citing Central Bank* and holding that a securities fraud claim under § 10(b) of the Securities Exchange Act "does not extend to aiders and abettors").

Count VI alleging "conspiracy" is redundant of the aiding-and-abetting Count V. Defendant has located no Michigan authority that a securities claim for "conspiracy" exists separate from one for "aiding and abetting." In *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793 (E.D. Mich. 1996), the court held they were the same:

> Defendants' Motion to Dismiss the aiding and abetting and conspiracy count in Fournier is granted based on *Central Bank of Denver NA v. First Interstate Bank of Denver*, NA, 511 U.S. 164, 114 S. Ct. 1439, 128 L.E.d 2d 119 (1994), where the Supreme Court held generally that there is no private cause of action for aiding and abetting securities fraud….

> In the case at bar, plaintiffs also allege conspiracy of violating the securities laws. This is merely another way of pleading aiding and abetting, which is no longer a viable allegation after *Central Bank*. Many district courts and the Ninth Circuit have so held. *See Decker v. GlenFed, Inc.*, 60 F.3d 591 (C.A.9, 1995); *see also Adam v. Silicon Valley Bancshares*, 884 F. Supp. 1398 (N.D. Cal. 1995). It is also this court's determination that alleging conspiracy to violate the securities laws is no longer a viable claim after *Central Bank*.

> Put simply, "aiding and abetting" and "conspiracy" are the same in this context, and each

is defective for the several reasons discussed here and in the preceding section.

**C.   COUNT VII (RICO) SHOULD BE DISMISSED BECAUSE SECURITIES FRAUD IS NOT A PREDICATE ACT FOR RICO, AND THE ALLEGATIONS LACK THE REQUISITE PARTICULARITY.**

**1.   Securities fraud is not a predicate act for a RICO claim.**

In Count VII, all plaintiffs assert a RICO claim against all defendants arising from their alleged "control" of and participation in the LLCs, i.e., the securities fraud scheme of Edward

May.  Yet RICO provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c).  *See Yadlosky v. Grant Thornton, LLP*, 120 F. Supp. 2d 622 (E.D. Mich. 2000) (dismissing RICO claim against accountants that related to securities fraud).  Plaintiffs cannot salvage a RICO claim by relying on mail or wire fraud, because the underlying conduct as alleged would have been actionable as securities fraud.  *ABF Capital Management v. Askin Capital Management, L.P.*, 957 F. Supp. 1308, 1319 (S.D. N.Y. 1997) ("a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud").

Plaintiffs' RICO claim includes the securities fraud allegations, since it incorporates "all of the foregoing paragraphs" (SAC ¶425), including Count III based on Rule 10b-5, the SEC judgment for securities fraud, etc.  The Court should dismiss the RICO claim of Count VII.

### 2.       The elements of RICO are not alleged with particularity.

As with fraud, plaintiffs' RICO claim should be dismissed for lack of particularity as to the elements of both RICO and fraud as the underlying predicate act.[3]  *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, *supra*, 176 F.3d at 322; *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990).  RICO cases predicated on mail and wire fraud must be pleaded with special particularity.  *See, e.g.*, *Kenty v. Bank One, Columbus*, N.A., 92 F.3d 384, 390 (6th Cir. 1996); *Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*, 863 F. Supp. 447 (E.D. Mich. 1994).  Specific allegations are required "as to which defendant caused

---

[3] To state a RICO claim, a plaintiff must plead, *inter alia*, (1) that a person (2) has utilized a pattern of racketeering activity or the proceeds thereof (3) to infiltrate an interstate enterprise in one of four ways:  (a) by investing the income derived from the pattern of racketeering activity in the enterprise; (b) by acquiring or maintaining an interest in the enterprise through the pattern of racketeering activity; (c) by conducting the affairs of the enterprise through the pattern of racketeering activity; or (d) by conspiring to commit any of the above acts.  18 U.S.C. § 1962.  Also, the action must result in an injury to plaintiff's business.  18 U.S.C. § 1964(c).

what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme." *Berent v. Kemper Corp.*, 780 F. Supp. 431, 448 (E.D. Mich. 1991), *aff'd*, 973 F.2d 1291 (6th Cir. 1992).  As with fraud, Count VII lacks plaintiff-by-plaintiff allegations with particularity.  For example, for wire fraud, which of 451 plaintiffs called the 800 or other number, when, hearing what, from whom, inducing what action, causing what damage?  RICO should be dismissed.

### 3.    Plaintiffs should be ordered to submit a RICO Case Statement.

If not dismissed, a more definite statement should be ordered through completion of a RICO case statement.  *See Sky Technology Partners, LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 299 (E.D. Mich. 2000), requiring a more definite statement where fraud was not pleaded with particularity under Rule 9(b)).  Filing a RICO case statement with responses to specific questions is routine, and a model statement has been drafted by the Federal Judicial Center.  *See* Manual for Complex Litigation, 3d. at § 33.81 & Sample Form § 41.54 (1995); *Homico Constr. & Dev. Co. v. Ti-Bert Systems, Inc.*, 939 F.2d 392, 393 (6th Cir. 1991); RICO case statements are used in this District by various Judges.  See **Exhibit 4**.  A proposed order is attached as **Exhibit 5**.

### D.    COUNTS VIII AND IX: THESE CLAIMS ARE BASED ON A VOID "ORAL AGREEMENT" TO PERFORM TAX WORK YEARS IN THE FUTURE.

Counts VII and IX (negligence and breach of contract) are brought by eight "Investing LLCs" against the accountants, based on breach and non-compliance with professional standards in connection with an alleged oral agreement, made in 2004, requiring preparation of those plaintiffs' tax returns for 2004 and future years, breached by refusal of services in 2007:

> "Doeren Mayhew did prepare tax returns for the Investing LLCs for the year 2006, but has refused to abide by its contract with respect to the tax year 2007….That oral agreement, made in late-winter, 2004, required Doeren Mayhew, for the fee paid by the investing LLCs, to prepare complete corporate

tax returns for tax year 2004 and beyond and to make any necessary amendments to tax returns for those years that might later become apparent.  Doeren Mayhew has refused to prepare tax year 2007 returns, or to provide amended returns for prior years, for the Investing LLCs forcing them to hire, at a cost of more than $13,000, new accountants and tax attorneys to provide necessary returns."  (SAC ¶368.)

"Doeren Mayhew breached their contract, by failing to correct improperly calculated tax returns for tax years 2005 and 2006, and by refusing to provide tax returns for tax year 2007."  (SAC ¶437.)

Aside from the absurdity of suing accountants for fraud in connection with tax return preparation while simultaneously complaining of a refusal to do *more* tax work, the claims are deficient as a matter of law, because the alleged "oral agreement" is barred by the statute of frauds, as not performable within a year.

Michigan's statute of frauds provides that an "agreement that, by its terms, is not to be performed within 1 year from the making of the agreement" is void unless it is in writing and "signed by the party to be charged."  MCL § 566.132(1)(a).  An oral agreement made in 2004 to do tax work in 2007 (whether to prepare a 2007 return or correct prior returns) could not be performed within 1 year of when the agreement was made, and is barred by the statute of frauds.

The statute of frauds is fatal not just to "breach of contract" but to the tort of professional negligence as well.  The accountants would have AICPA or other professional obligations to plaintiffs only if there was a valid engagement for 2007, which there is not.  As a matter of law, a contract "void" under the statute of frauds cannot be the basis for a tort claim.  See *Cassidy v. Kraft-Phenix Cheese Corp*, 285 Mich. 426, 435-437 (1938), where the Michigan Supreme Court dismissed tort claims arising out an oral contract void under the statute of frauds.

Here, both the professional negligence and breach of contract claims should be dismissed.

**E.   COUNTS X AND XI: THE THIRD-PARTY BENEFICIARY AND UNJUST ENRICHMENT CLAIMS ARE DEFICIENT.**

All plaintiffs except the Investing LLCs allege in Count X that they are third party

beneficiaries of a contract between Doeren Mayhew and "the Ponzi-scheme LLCs" to prepare their tax returns for 2007, and seek damages because Doeren Mayhew would not prepare those 2007 tax returns.  Those plaintiffs in Count XI allege unjust enrichment as an "alternative" to Count X.  Again, there is no valid contract requiring Doeren Mayhew to prepare tax returns for 2007, as just discussed, and Counts X and XI are deficient for other reasons as well.

### 1.   Plaintiffs Cannot Recover As "Third Party Beneficiaries."

By statute, there must be an *express* promise in a contract to benefit a third-party in order to have third-party beneficiary status under the contract:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as promisee.
>
> (1)  A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.  (Emphasis added).

M.C.L. § 600.1405.  *See, e.g.*, *Dynamic Const Co v. Barton Malow Co.*, 214 Mich. App. 425, 427-28; 543 N.W.2d 31 (1995).

"Use of the term 'directly' indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *See Yadlosky*, 120 F. Supp. 2d at 634 (*quoting Koenig v. South Haven*, 460 Mich. 667, 676-677; 597 N.W.2d 99 (1999)).  The statute must be "narrowly construed" being in derogation of prior common law.   *Koenig*, 460 Mich. at 677 n3.   The statute "reflects that not every person incidentally benefited by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has 'undertaken to give or to do or refrain from doing something directly to or for said person.'"  *Brunsell v. City of Zeeland*, 467 Mich. 293, 296; 651 N.W.2d

16

388 (2002).   In determining if third-party beneficiary status is intended, the form and the meaning of the "contract itself" is to be examined using an "objective standard."   *Brunsell*, 467 Mich. at 298, *Koenig*, 460 Mich. at 680.

Plaintiffs do not allege any express promise in a written contract to which Doeren Mayhew is a party.   Plaintiffs assert Doeren Mayhew was aware investors would rely on tax work performed for the LLCs, and thus rely on the subjective intent of Ed May and/or Doeren Mayhew that tax work would benefit investors.   This liability theory has been rejected.   In *Yadlosky*, investors filed third-party beneficiary claims, alleging that the accountants' inaccurate audit work induced "investors to purchase overvalued MCA securities."   120 F. Supp. 2d at 625. Despite allegations that the auditors knew the audit work would be relied upon by investors, the third-party beneficiary claim was dismissed, because plaintiffs did not allege defendants affirmatively had promised to do the work for the investors' direct benefit.   *Id*. at 634; *see also*, *Riley v. Ameritech Corp., Inc.*, 147 F. Supp. 2d 762, 775 (E.D. Mich. 2001).

The same flaw exists here.   The SAC attaches no contract and alleges no particular facts that Doeren Mayhew affirmatively "promised" to work to directly benefit plaintiffs.   A third-party beneficiary generally must be "directly referred to in the contract."   *Koenig*, 460 Mich. at 677.   Obviously, much accounting work will foreseeably be relied upon by banks, owners, investors, the IRS, etc.   That does not suffice.   Merely being a known but indirect beneficiary does not create third-party beneficiary status under the statute.   Count X should be dismissed.

### 2.       Plaintiffs Cannot Recover On An "Unjust Enrichment" Theory.

Unjust enrichment fails as Count X alleges a contract on that subject.   Doeren Mayhew would be obligated to prepare tax returns only by a contract to do so.   That precludes unjust enrichment, which "will be implied only if there is no express contract covering the same subject matter."   *Barber v. SMH (US), Inc.*, 202  Mich. App. 366, 375; 509 N.W.2d 791 (1993); *see also*

*Liggett Restaurant Group, Inc v. Pontiac*, 260 Mich. App. 127, 137; 676 N.W.2d 633 (2003).

The claim fails also because plaintiffs dealt with May, not Doeren Mayhew, whose earlier payments were from the May or the LLCs, not plaintiffs.  Plaintiffs lack standing.  One must be unjustly enriched at the expense of the other, in direct dealings between each other.  *See Ginsberg v. Capitol City Wrecking Co*, 300 Mich. 712; 2 N.W.2d 892 (1942).  Finally, with respect to the tax preparation work, defendants were not "enriched" because they were not advanced any funds to prepare 2007 tax returns for the May LLCs.  Counts X and XI should be dismissed.

**F.     COUNT XII: THE "FRAUDULENT INDUCEMENT OF LOAN AGREEMENT" IS FLAWED.**

Count XII is brought by five plaintiffs who made a loan to Ed May in mid-2007, allegedly to solve "cash flow problems" of Ed May, after "Mr. Fox told these plaintiffs' 'everything was fine,' in terms of the LLC's business operation, but there was a 'cash flow problem' because the enterprise had 'grown too fast.'  Mr. Fox further stated that if a loan of at least $1 million were made, the problem would be resolved."  (SAC ¶382.)

That is denied, but is insufficient for fraud even if true.  These alleged representations are not statements of fact, but at most opinions or predictions or promises of the loan's effect.  *Plastis*, *supra*; *Van Tassel v. McDonald Corp*, 159 Mich. App. 745, 407 N.W.2d 6, 8-9 (1987) ("puffing" "and promoting a sale" and similar "hype" are not actionable); *Kamalnath v. Mercy Memorial Hosp.,* 194 Mich. App. 543; 487 N.W.2d 499 (1992) ("future promises cannot constitute actionable fraud."); *Chase Bank Of Texas*, *supra* (accountant's statements about a company's financial condition relied upon by another in issuing a loan are insufficient).  Nor do plaintiffs make other requisite allegations for fraud, such as "but for" and "loss" causation, as discussed previously.  Count XII should be dismissed.

**G.      COUNT XIII: THE "CONVERSION" COUNT IS DEFICIENT.**

Finally, Count XIII is brought by two plaintiffs, Carol and Stacey Vlachos, against Doeren Mayhew for statutory conversation under MCL § 600.2919a.  They make no allegation that they paid a dime of their money to Doeren Mayhew.  There is no claim of conversion.

The conversion claim consumes nearly 30 paragraphs of the SAC, but the Vlachos are the same as other plaintiffs.  They claim capital contributions made "to Ed May and E-M Management Co. LLC ("E-M Management") for specifically defined and limited uses in connection with eight" LLCs.  (SAC ¶456).  Their funds were to be used by May to purchase equipment and rights to provide telecommunications services for hotels.  (*Id*. ¶460.)  Their funds were not used for their intended purchases, and they did not get back their investment nor profits they were promised.  *Id.* at ¶463 and 480.  The Vlachos invested with Ed May and lost money.

Non-specific money cannot be the basis of a conversion claim.  *Garras v. Bekiares*, 315 Mich. 141, 147-149; 23 N.W.2d 239 (1946).  Conversion must be of specific money given to the defendant who was obligated to return that identical money.  *Echelon Homes, LLC v. Carter Lumber Co.*, 261 Mich. App. 424, 436-38; 683 N.W.2d 171, rev'd on other grounds 472 Mich. 192 (2005) (no conversion because embezzler not "obligated to return the 'specific or identical moneys' taken"); *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 112; 593 N.W.2d 595 (1999) (defendant must have had an obligation to "return the specific money entrusted to his care").  *See Romeo Inv. Ltd. v. Michigan Consolidated Gas Co.*, 2007 WL 1264008 (unpublished Mich. App., May 1, 2007).

Thus, there is no conversion where, as here, the precise "money" invested with Ed May was not promised to be returned, much less given to Doeren Mayhew  with a promise by that firm to return it.  Rather, over a period of months, the Vlachos were to receive back other funds to pay back their initial investment, along with profits going forward, all from the May LLCs.

19

The Vlachos do not allege that Doeren Mayhew ever received any "Vlachos funds." In a ponzi-scheme, their funds were given by May to some earlier investor as a return on investment.

Moreover, conversion is an intentional tort where defendants' wrongful actions must be willful. *Citizens Ins. Co. v. Delcamp Truck Center, Inc.*, 178 Mich. App. 570, 575; 444 N.W.2d 210 (1989). Plaintiffs makes no allegation of willfulness, just "knowledge" and, at most, acquiescence in Ed May's activities. *See e.g.*, SAC ¶¶472, 479.

Finally, Doeren Mayhew performed tax return work for its fees, and thus had a contractual right to that payment. Plaintiffs cannot prove that "defendant must have obtained the money without the owner's consent." *Head*, 234 Mich. App. at 111-112. That precludes conversion, where a defendant's exercise of control or domain over the property must be wrongful and without the owner's consent. *Lawsuit Financial LLC v Curry*, 261 Mich. App. 579, 591-592 (2004). Defendants must engage in "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Head*, 234 Mich. App. at 111. Conversion should be dismissed.

## CONCLUSION

Defendants Doeren Mayhew, Todd Fox and James O'Rilley request that the Second Amended Complaint be dismissed.

                                        Respectfully submitted,

s/ Scott Seabolt                        /s/ Benjamin W. Jeffers
Scott Seabolt (P55890)                  Dennis M. Haffey (P26378)
One Detroit Center                      Benjamin W. Jeffers (P57161)
500 Woodward Ave., Suite 2700           Dykema Gossett PLLC
Detroit, Michigan 48226-3489            400 Renaissance Center
Phone: (313) 234-7100                   Detroit, MI 48243
email: sseabolt@foley.com               (313) 568-5340
P55890                                  bjeffers@dykema.com
                                        P57161

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2008 I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to Scott T.

Seabolt at seabolt@foley.com, R. Christopher Cataldo at ccataldo@jaffelaw.com, John W.

Schryber at jschryber@pattonboggs.com and Norah D. Molnar at nmolnar@pattonboggs.com.


Respectfully submitted,

DYKEMA GOSSETT PLLC


/s/ Benjamin W. Jeffers
Dennis M. Haffey (P26378)
Benjamin W. Jeffers (P57161)
Matthew Mitchell (P69810)
Attorneys for Defendant
    Doeren Mayhew & Co., P.C.
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI  48243
313-568-5340
bjeffers@dykema.com
P57161

Dated:  August 11, 2008

DET01\610596.4
ID\BWJ