UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ACKER, et al.,

        Plaintiffs,

                                 Case No. 08-11261

vs.

                                 Honorable Paul D. Borman

DOEREN MAYHEW & COMPANY, et al.,

        Defendants.

_____/

## DEFENDANTS SAMJACK INVESTMENTS INC.'S, JOANN FOX'S AND NANCY O'RILLEY'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)

Defendants SamJack Investments, Inc. ("SamJack"), Joann Fox and Nancy O'Rilley (collectively, "SamJack Defendants"), by and through their attorneys, Foley & Lardner LLP, and pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), move this Court for an order dismissing all counts of Plaintiffs' Second Amended Complaint (the "SAC") against them. In support of their Motion, the SamJack Defendants rely on the pleadings and records on file with the Court and the reasons more fully set forth in the accompanying Brief in Support.[1]

In compliance with Local Rule 7.1, counsel for the SamJack Defendants has had multiple discussions with counsel for Plaintiffs explaining the basis of this Motion and seeking concurrence for the relief requested. Concurrence has not been forthcoming.

---

[1] Contemporaneous with the filing of this Motion, co-Defendants Doeren Mayhew, Todd Fox and James O'Rilley also are filing a motion to dismiss the SAC. The SamJack Defendants hereby join in that motion to dismiss.

WHEREFORE, for these reasons and the reasons set forth in the accompanying Brief in Support, the SamJack Defendants respectfully request that the Court dismiss Plaintiffs' claims against the SamJack Defendants with prejudice.

Dated:  August 8, 2008

Respectfully submitted,

FOLEY & LARDNER LLP

s/ Scott Seabolt
Scott Seabolt (P55890)
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-3489
Phone:  (313) 234-7100
email:  sseabolt@foley.com

Lisa L. Tharpe (of counsel)
Foley & Lardner LLP
321 North Clark St., Suite 2800
Chicago, Illinois  60610
Phone:  (312) 832-4500
email:  ltharpe@foley.com

*Attorneys for Defendants Todd R. Fox, James O'Rilley, Joann Fox, Nancy O'Rilley and SamJack Investments, Inc.*

2

DETR_892934.4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN ACKER, et al.,

       Plaintiffs,

Case No. 08-11261

vs.

Honorable Paul D. Borman

DOEREN MAYHEW & COMPANY, et al.,

       Defendants.

_____/

**BRIEF IN SUPPORT OF**
**DEFENDANTS SAMJACK INVESTMENTS INC.'S,**
**JOANN FOX'S AND NANCY O'RILLEY'S MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should dismiss Counts IV-VI of Plaintiffs' Second Amended Complaint where there is no recognized cause of action for "post-purchase fraud" under Michigan law, and where Plaintiffs have not alleged any particularized facts demonstrating that the SamJack Defendants made any knowingly false statements upon which even one of the alleged Plaintiffs relied.

The SamJack Defendants say "yes."

2.      Whether the Court should dismiss Count VII of Plaintiffs' Second Amended Complaint where there are no particularized allegations that the SamJack Defendants engaged in fraud or otherwise committed any predicate act required to sustain a RICO claim.

The SamJack Defendants say "yes."

3.      Whether the Court should dismiss Count XIII of Plaintiffs' Second Amended Complaint where non-specific money voluntarily given to another cannot form the basis of statutory conversion under Michigan law.

The SamJack Defendants say "yes."

## **STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 12(b)(6)

18 U.S.C. §1962

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED..................................................................... i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY ..................... ii

TABLE OF AUTHORITIES ................................................................................... iv

I.     INTRODUCTION .................................................................................... 1

II.    PROCEDURAL AND FACTUAL BACKGROUND........................................... 2

III.   STANDARD OF REVIEW ......................................................................... 4

IV.    ARGUMENT........................................................................................... 4

       A.    COUNTS IV-VII IN PLAINTIFFS' SAC ARE SUBJECT TO THE
             HEIGHTENED PLEADING REQUIREMENTS OF FEDERAL RULE
             9(B) ........................................................................................... 4

       B.    PLAINTIFFS'   CAUSE   OF   ACTION   FOR   POST-PURCHASE
             COMMON LAW FRAUD FAILS AS A MATTER OF LAW.............................. 7

       C.    PLAINTIFFS' SAC FAILS TO STATE A CLAIM AGAINST THE
             SAMJACK DEFENDANTS FOR AIDING AND ABETTING POST-
             PURCHASE COMMON LAW FRAUD ............................................. 12

       D.    PLAINTIFFS' SAC FAILS TO STATE A CLAIM AGAINST THE
             SAMJACK DEFENDANTS FOR CONSPIRACY TO COMMIT POST-
             PURCHASE COMMON LAW FRAUD ............................................. 15

       E.    PLAINTIFFS' SAC FAILS TO STATE A CLAIM AGAINST THE
             SAMJACK DEFENDANTS FOR RICO VIOLATIONS ................................... 17

       F.    CAROL AND STACEY VLACHOS FAIL TO STATE A CLAIM FOR
             STATUTORY CONVERSION AGAINST SAMJACK...................................... 20

V.     CONCLUSION....................................................................................... 20

DETR_892934.4

# TABLE OF AUTHORITIES

CASES

*ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.,*
   957 F. Supp. 1308, 1319 (S.D.N.Y. 1997) .............................................................14

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.,*
   194 Mich. App. 300, 313 (1992).........................................................................12

*Advocacy Org. for Patients and Providers v. Auto. Club Ins. Ass'n,*
   176 F.3d 315, 319 (6th Cir 1999) .................................................................3, 5, 15

*B.E.L.T., Inc. v. Wachovia Corp.,*
   403 F.3d 474, 477 (7th Cir. 2005) .......................................................................8

*Bd. of Trustees of Policemen & Firemen Ret. Sys.,* 2003 WL 1343369, *4 (Mich. App.
   March 11, 2003)..........................................................................................Page

*Bell Atl. Corp. v. Twombly,*
   127 S.Ct. 1955, 1961 (2007) ............................................................................8

*Betulius v. Hanna,*
   No. 4:96-CV-92, 1996 WL 900413, *5 (W.D. Mich. Dec. 10, 1996) ...................16

*Bovee v. Coopers & Lybrand CPA,*
   272 F.3d 356, 360 (6th Cir 2001) .......................................................................3

*Broad, Vogt & Conant, Inc. v. Alsthom Automation, Inc.,*
   200 F. Supp.2d 756, 759 (E.D. Mich. 2002).........................................................16

*Brown v. Cassens Transp. Co.,*
   492 F.3d 640, 643 (6th Cir. 2007) .....................................................................15

*Carson Fischer, PLC v. Standard Fed. Bank,*
   No. 248125, 2005 WL 292343, *5 (Mich. App. Feb. 8, 2005) ............................7-8

*Chase Bank of Tex., N.A. v. Grant Thornton LLP,*
   No. 236237, 2003 WL 21350362, *4 (Mich. App. June 10, 2003) .........................7

*Cooper Ins. Agency Center, L.L.C. v. Mourer-Foster, Inc.,*
   No. 5:05-CV-56, 2005 WL 3289345, at *2 (W.D. Mich. Dec. 5, 2005) ...............15

*D.E. & J L.P. v. Conaway,*
   284 F. Supp. 2d 719, 730 (E.D. Mich 2003)........................................................5-6

*DeAbreu v. Bank of Am. Corp.,*
   525 F. Supp. 2d 381, 387 (S.D.N.Y. 2007) .........................................................8

*DirecTV, Inc. v. Cavanaugh,*
   321 F. Supp.2d 825, 835 (E.D. Mich. 2003).........................................................5

*Estate of Axelrod v. Flannery,*
   476 F. Supp. 2d 188, 196 (D. Conn. 2007) ..........................................................4

*Filler v. Hanvit Bank,*
   156 Fed. Appx. 413, 417 (2nd Cir. 2005) ...........................................................4

iv

*Glidden Co. v. Jandernoa,*
  5 F. Supp. 2d 541, 558 (W.D. Mich. 1998) .................................................................8

*Hanning v. Homecomings Financial Networks,*
  436 F. Supp. 2d 865, 870 (W.D. Mich. 2006) ...........................................................5

*Hayduk v. Lanna,*
  775 F.2d 441, 443 (1ˢᵗ Cir. 1985) ..............................................................................4

*In re Nat'l Century Fin. Enter., Inc.,*
  504 F. Supp. 2d 287, 321 (S.D. Ohio 2007) ..............................................................8

*Kennedy v. R.W.C., Inc.,*
  359 F. Supp.2d 636, 643 (E.D. Mich. 2005)..............................................................12

*Krear v. Malek,*
  961 F. Supp. 1065, 1069 (E.D. Mich. 1997)..........................................................5, 16

*Lawyers Title Ins. Corp. v. United Am. Bank of Memphis,*
  21 F.Supp.2d 785, 797 (W.D. Tenn. 1998) ................................................................8

*McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.,*
  644 F. Supp. 580, 585 (E.D. Mich. 1986) ................................................................16

*McKesson Medical-Surgical, Inc. v. Micro Bio-Medics, Inc.,*
  266 F. Supp.2d 590, 600 (E.D. Mich. 2003)..............................................................12

*Miller v. Keystone Financial,*
  2000 Mich. App. LEXIS 2076.....................................................................................8

*Morgan v. Church's Fried Chicken,*
  829 F.2d 10, 12 (6ᵗʰ Cir. 1987) .................................................................................3

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.,*
  940 F. Supp. 1101, 1128 (W.D. Mich. 1996) .............................................................6

*Pik-Coal Co. v. Big Rivers Elec. Corp.,*
  200 F.3d 884, 889 (6ᵗʰ Cir. 2000) ............................................................................14

*Snowden v. Lexmark Int'l, Inc.,*
  237 F.3d 620 (6ᵗʰ Cir. 2001) ....................................................................................14

*The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust,*
  262 Mich. App. 485, 507 ...........................................................................................12

*The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust,*
  686 N.W.2d 770, 786 (Mich. App. 2004) ..................................................................13

*Trollinger v Tyson Foods, Inc.,*
  370 F.3d 602, 612 (6ᵗʰ Cir. 2004) ............................................................................14

*Tubby's # 14, Ltd. v. Tubby's Sub Shops, Inc.,*
  No. 04-70918, 2005 WL 3556199, at *4 (E.D. Mich. Dec. 29, 2005) ......................15

*U.S. v. Beckner,*
  134 F.3d 714, 720 (5ᵗʰ Cir. 1998) ..............................................................................8

*VanDenBroeck v. CommonPoint Mortg. Co.,*
    210 F.3d 696, 701 (6th Cir. 2000) ................................................................4, 14

*Vidosh v. Holsapple,*
    No. 84CV2447DT, 1987 WL 273164, at *9 (E.D. Mich. Feb. 2, 1987) ...............................16

*Willis v. New World Van Lines, Inc.,*
    123 F. Supp.2d 380, 400 (E.D. Mich. 2000) .........................................................13

*Wysong Corp. v. M.I. Indus.,*
    412 F. Supp.2d 612, 632 (E.D. Mich. 2005)..........................................................12

*Yadlosky v. Grant Thornton, LLP,*
    120 F. Supp. 2d 622 (E.D. Mich. 2000) ..............................................................14

**STATUTES, RULES & REGULATIONS**

18 U.S.C. §1962...........................................................................................2, 14

18 U.S.C. §1962(d) ........................................................................................16

18 U.S.C. § 1964(c) .......................................................................................1

Federal Rule of Civil Procedure 9(b)................................................................ passim

Federal Rule of Civil Procedure 12(b)(6) ......................................................... passim

Local Rule 7.1 ............................................................................................1

DETR_892934.4

## I.    INTRODUCTION

This case arises from the collapse of an alleged Ponzi scheme controlled and operated by a man named Edward Paul May ("May").  May is a defendant in a lawsuit brought by the United States Securities and Exchange Commission ("SEC") for securities fraud in connection with various LLCs that May controlled and offered as investment opportunities.  A copy of the SEC's complaint and the partial judgment entered by the Court against May were attached as **Exs. A** and **B**, respectively, to the SamJack Defendants' previous Motion to Dismiss.  (Dkt. 6-3, 6-4).[2] May is not a party to this action.[3]  None of the Defendants in this case are a party to the SEC proceeding or mentioned in the SEC's allegations of fraud.

Although this case arises from the same series of transactions and occurrences at issue in the SEC's case against May, Plaintiffs did not include May or any of his related business entities as parties to this lawsuit.  Plaintiffs chose to ignore the conclusions of the SEC and the federal district court, which found May at fault for the fraud at issue here.  (Dkt. 6-4).  Instead, Plaintiffs allege that May's tax accounting firm, Defendant Doeren Mayhew & Co., P.C. ("Doeren Mayhew"), and two of Doeren Mayhew's directors, Defendants Todd Fox and James O'Rilley, omitted information in connection with the investment opportunities provided by May.

In addition to naming May's tax accountants, Plaintiffs also name SamJack Investments, Inc. ("SamJack"), Joann Fox and Nancy O'Rilley as Defendants (collectively "SamJack

---

[2]  To the extent the SamJack Defendants cite documents previously filed with the Court in this matter, those documents will be referenced by the docket number.

[3]  Shortly after the alleged Ponzi scheme collapsed, May executed an assignment for the benefit of creditors pursuant to state law.  The assignee, David Findling, subsequently sought bankruptcy protection for May's estate.  *See, In re the Estate of the Assignment for the Benefit of Creditors of Edward Paul May*, Eastern District of Michigan Bankruptcy Case No. 07-60543. The Bankruptcy Court recently dismissed the bankruptcy petition finding that the assignee was not a proper "debtor" under the bankruptcy code.

DETR_892934.4

Defendants"). SamJack prepared monthly distribution checks that May issued to his investors. Joann Fox and Nancy O'Rilley worked for SamJack. There is no allegation that the SamJack Defendants made any statement to any investor in connection with the purchase or sale of securities. There is no allegation that even one of the named Plaintiffs invested in May's Ponzi scheme as a result of any statement made by the SamJack Defendants. While Plaintiffs assert causes of action for fraud in connection with the purchase or sale of securities (Counts I-III), none of those causes of action is directed at the SamJack Defendants. Instead, Plaintiffs assert causes of action against the SamJack Defendants for "*post*-purchase common law fraud" (Count IV), aiding and abetting *post*-purchase common law fraud (Count V), and conspiracy to commit *post*-purchase common law fraud (Count VI). Plaintiffs also assert a cause of action against the SamJack Defendants for RICO violations (Count VII). Finally, two of the named Plaintiffs, Carol and Stacey Vlachos, assert a cause of action for conversion against SamJack (and co-Defendant Doeren Mayhew).

As will be explained below, there is no cause of action for "*post*-purchase" common law fraud under Michigan law. Even if there was, Plaintiffs have not alleged facts sufficient to state such a cause of action against the SamJack Defendants. Without an underlying substantive cause of action, Plaintiffs cannot state claims for aiding and abetting or for conspiracy. Plaintiffs also have not alleged facts sufficient to state a cause of action for RICO violations. Finally, Plaintiffs Carol and Stacey Vlachos cannot state a claim for conversion of unspecified money. For these reasons and the reasons more fully explained below, the SamJack Defendants respectfully request that the Court dismiss Plaintiffs' claims against the SamJack Defendants.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed their original Complaint in this action on February 5, 2008 in Michigan state court. The original Complaint included 60-plus Plaintiffs. On February 26, 2008, Doeren

2

Mayhew filed a Motion to Dismiss the original Complaint.  On March 3, 2008, Defendants Todd Fox, James O'Rilley, Joann Fox, Nancy O'Rilley and SamJack filed a parallel Motion to Dismiss the original Complaint.

In response to the Motions to Dismiss, Plaintiffs filed a First Amended Complaint ("FAC") to which Plaintiffs added nearly 200 additional Plaintiffs, added a number of conclusory allegations, and also added a number of new causes of action, including a claim under 18 U.S.C. §1962 ("RICO").  Defendants removed this case to federal court on March 24, 2008. (Dkt. 1, 4). On April 1, 2008, Defendants filed Motions to Dismiss the FAC.  (Dkt. 5-8).

Rather than respond to the Motions to Dismiss the FAC, Plaintiffs instead sought leave to file a second amended complaint on April 11, 2008.  (Dkt. 11).  Defendants ultimately stipulated to the granting of leave for Plaintiffs to file a second amended complaint on a number of conditions, including that "Plaintiffs shall not be granted leave to further amend their complaint pending a decision on any motion(s) to dismiss the Second Amended Complaint filed by Defendants." (Dkt. 20).

After a number of extensions, Plaintiffs filed their Second Amended Complaint ("SAC") on July 7, 2008.  (Dkt. 23).  Plaintiffs added another 200 Plaintiffs, bringing the total to 451 named Plaintiffs.[4]  Plaintiffs also dropped a number of substantive allegations.  While the SAC includes 13 causes of action, only five of those are asserted against the SamJack Defendants: post-purchase common law fraud (Count IV), aiding and abetting post-purchase common law fraud (Count V), conspiracy to commit post-purchase common law fraud (Count VI), RICO violations (Count VII), and conversion against SamJack and Doeren Mayhew (Count XIII).  The SamJack Defendants now are moving to dismiss these causes of action.

---

[4] Paragraphs 17-354 of the SAC are dedicated to identifying the various named parties.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when the plaintiffs have failed to state a claim upon which relief can be granted.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), courts construe the complaint in the light most favorable to the plaintiff, accepting all factual allegations as true.  *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 360 (6th Cir. 2001).  However, the Court need not accept as true "legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *see also*, *Bell Atl Corp v. Twombly*, 127 S.Ct. 1955, 1961 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).  "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  *Advocacy Org for Patients and Providers v. Auto Club Ins Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999); quoting *Scheid v Fanny Farmer Candy Shops, Inc*, 859 F.2d 434, 436 (6th Cir. 1988).

### IV.   ARGUMENT

#### A.   Counts IV-VII In Plaintiffs' SAC Are Subject To The Heightened Pleading Requirements Of Federal Rule 9(b)

Counts IV-VII of Plaintiffs' SAC all are predicated on allegations of fraud.  *See* Dkt. 23, Count IV ("post-purchase common law *fraud*"), Count V ("common law aiding and abetting of post-purchase *fraud*"), Count VI ("conspiracy to commit common law post-purchase *fraud*"); Count VII (RICO predicated on allegations of mail *fraud*).  Accordingly, these causes of action all are subject to the heightened pleading requirements of Federal Rule 9(b).  *See, e.g., Filler v. Hanvit Bank*, 156 Fed.Appx. 413, 417 (2nd Cir. 2005) ("[T]he particularity requirements of Rule

4

9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims."); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1ˢᵗ Cir. 1985) ("in actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met") [internal citations omitted]; *VanDenBroeck v. CommonPoint Mortgage Co*, 210 F.3d 696, 701 (6ᵗʰ Cir. 2000) (Rule 9(b) requirements applied to RICO claim where predicate acts were mail fraud and wire fraud).

Federal Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Failure to state a fraud claim with particularity constitutes failure to state a claim." *DirecTV, Inc. v. Cavanaugh*, 321 F.Supp.2d 825, 835 (E.D.Mich. 2003). Stating fraud with particularity requires "a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org*, 176 F.3d at 322 (6ᵗʰ Cir. 1999); *Hanning v. Homecomings Fin Networks*, 436 F.Supp.2d 865, 870 (W.D.Mich. 2006). Set forth in enumerated fashion, the Sixth Circuit requires that allegations of fraud "specif[y] 1) the parties and the participants to the alleged fraud; 2) the representations made; 3) the nature in which the statements are alleged to be misleading or false; 4) the time, place and content of the representations; 5) the fraudulent scheme; 6) the fraudulent intent of the defendants; 7) reliance on the fraud; and 8) the injury resulting from the fraud." *Krear v. Malek*, 961 F.Supp. 1065, 1069 (E.D.Mich. 1997). Finally, "allegations of fraudulent misrepresentations must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id.*

Importantly, it is widely recognized that "[g]roup pleading is clearly inconsistent with Rule 9(b)'s express requirements of specificity." *DE & J LP v. Conaway*, 284 F.Supp.2d 719, 730 (E.D.Mich. 2003), *citing In re First Union Corp Sec Litig*, 128 F.Supp.2d 871, 888

(W.D.N.C. 2001).  In recent years, "group pleading" has received focused attention in the context of cases brought under the Private Securities Litigation Reform Act ("PSLRA").  For example, the Eastern District of Michigan noted that "[a]lthough the Sixth Circuit has not addressed the issue of whether the group pleading doctrine survived the PSLRA and the courts, nationally, are divided on this issue, this Court agrees with those courts that have found that the doctrine is at odds with new Act's plain language and pleading requirements."  *Conaway*, 284 F.Supp.2d at 731.  In holding that group pleading is not permitted, the court reasoned that "[w]here individual defendants are the target of the fraud allegations, it would be nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that 'the defendants' made the statement or omission."  *Id.*  "[A]ttributing *all* the alleged misrepresentations to *all* Defendants" is insufficient as a matter of law to state a claim against specific defendants.  *Id at 730* (emphasis in original).  The court ruled that the plaintiffs' practice of group pleading failed both the pleading requirements of Federal Rule 9(b) and the heightened pleading standards of the PSLRA.  *Id.*  The court found that "the plaintiff must allege with specificity facts demonstrating a *specific defendant's personal involvement* in the preparation of the allegedly misleading statements or direct 'operational involvement' with the company; conclusory allegations that the defendant was 'involved in the day to day operations' are insufficient."  *Id.* at 732 [emphasis supplied].  *See also, Picard Chem Inc Profit Sharing Plan v. Perrigo Co.,* 940 F.Supp. 1101, 1128 (W.D.Mich. 1996) ("Rule 9(b) does not permit plaintiffs to 'lump' defendants together, beyond the group pleading presumption, when charging them with fraudulent actions").  Thus, to the extent

6

Plaintiffs assert allegations against "Defendants" generally, without identifying the particulars of the allegations being made against each Defendant, those allegations should be disregarded.[5]

**B.** **Plaintiffs' Cause Of Action For Post-Purchase Common Law Fraud Fails As A Matter Of Law**

      **1.** **There Is No Cause Of Action For Post-Purchase Common Law Fraud Under Michigan Law**

Unlike the claims in Counts I-III concerning the *purchase* of securities, Count IV claims fraud based on the theory that Plaintiffs *held or retained* their investments in reliance on post-purchase misrepresentations. This type of claim is not viable as a matter of law.

There is no statutory basis for a post-purchase fraud claim. Plaintiffs acknowledge that "holder" claims are not permitted under federal securities laws, labeling this a "common law" claim. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-738; 95 S.Ct. 1917 (1975) (limiting standing under Rule 10b-5 to actual purchasers or sellers of securities and not "holders"); *see also, Chanoff v. United States Surgical Corp*, 857 F.Supp. 1011, 1023 (D.Conn. 1994). Michigan state law does not provide Plaintiffs with an exception to the *Blue Chip* rule. On the contrary, Michigan law is in accord with federal securities law by virtue of Michigan's adoption of the Uniform Securities Act, M.C.L. §451.501, *et seq* ("Michigan Securities Act"), which likewise limits claims to those "in connection with the offer, sale, or purchase of any security." This language is virtually identical to the 10b-5 language that was construed by the *Blue Chip* Court. M.C.L. §451.501, 17 C.F.R. § 240.10b-5; *Blue Chip*, 421 US at 737-738.[6] The

---

    [5] The reference to the "SamJack Defendants" herein is for convenience only insofar as the same causes of action are being asserted against the SamJack Defendants. In order to sustain these causes of action, Plaintiffs are required to make particularized allegations against each of the SamJack Defendants, namely, Joann Fox, Nancy O'Rilley and SamJack.

    [6] Though the Uniform Act adds the term "offer" to the "in connection with" language, this does not confer standing upon holders. *Interlake Porsche & Audi, Inc v. Buchholz*, 45 Wash.

causes of action available under the Michigan Securities Act are limited to those specified within M.C.L. §451.810. Therefore, there is no support for reading a "holder" claim into the statute. Other state courts construing the Uniform Securities Act agree. *See, e.g., Levitz v. Warrington*, 877 P.2d 1245, 1246-1247 (Ct.App.Utah 1994); *Interlake*, 45 Wash.App. at 513-516.

In addition to the absence of any valid statutory basis for a cause of action for "holder" liability, the SamJack Defendants have not located any authority recognizing such a claim under Michigan common law. Other jurisdictions that have considered the availability of a common law claim for "holder" liability have rejected these claims due to standing and lack of causation (*i.e.*, speculative to say that an earlier disclosure of the truth would have avoided the investment loss). *See In re Worldcom, Inc Sec Litig*, 336 F.Supp.2d 310, 318-320 (S.D.N.Y. 2004); *Arnlund v. Deloitte & Touche LLP*, 199 F.Supp.2d 461, 486-490 (E.D.Va. 2002) (holder claims under state common law fail causation as a matter of law); *Crocker v. Federal Deposit Ins Corp.*, 826 F.2d 347, 351 (5th Cir. 1987) (common law holder claims were too speculative).

Here, Count IV is based solely on "holder" allegations. Plaintiffs allege that the SamJack Defendants made post-purchase misrepresentations by "preparing" and "causing" the mailing of "monthly summaries" to the Plaintiffs. (SAC ¶409.) In addition, Plaintiffs allege that the SamJack Defendants intended for Plaintiffs to "*retain* their investment position" in reliance on the "monthly summaries." (SAC ¶411) (emphasis supplied). There is no allegation that any of the named Plaintiffs *purchased* securities as a result of any representations allegedly made by the SamJack Defendants. Therefore, this holder claim should be dismissed.

---

App. 502, 514-515; 728 P.2d 597 (1986); M.C.L. §451.810 (limiting civil remedies to purchasers of securities).

2.    **Policy Considerations Support The Absence Of A Claim For Post-Purchase Common Law Fraud In Michigan**

In rejecting "holder" claims, the United States Supreme Court identified several policy reasons that weigh against a fraud claim which by its nature relies on a plaintiff's "oral version of a series of occurrences." *Blue Chip Stamps,* 421 U.S. at 742. Because a "holder" of securities neither buys nor sells based on any alleged representation, "holder" claims are not "verifiable by documentation" and depend entirely on "oral recollection." *Id* at 742-43. As a result, the Supreme Court found that "holder" causes of action were likely to encourage frivolous and "vexatious litigation" that is difficult to resolve on the merits without a trial. *Id.* The Supreme Court further cautioned that permitting "holder" claims would "throw open to the trier of fact many rather hazy issues of historical fact the proof of which depended almost entirely on oral testimony" about damages that are speculative in nature. *Id; see also In re Worldcom, Inc Sec Litig,* 336 F.Supp.2d at 319. Other courts reject "holder" claims due to the inherently speculative nature of damages. *See Crocker,* 826 F.2d at 351; *Arent v. Distribution Sciences, Inc,* 975 F.2d 1370 (8th Cir. 1992).

As in *Crocker* and *Arent,* Plaintiffs' claim in this case depends on the assumption that they could have received their investment back "had the truth been told." (SAC ¶376). However, the nature of the alleged Ponzi scheme invalidates this assumption. Plaintiffs were not harmed because an alleged misrepresentation caused their investment to decline in value, but instead because the true value of their investment in the May LLCs was always zero. *See Arnlund,* 199 F.Supp.2d at 488 (quoting *Arent,* 975 F.2d at 1374) (dismissing common law fraud claim on the basis that "Plaintiffs were not harmed because they were unable to realize the true value of their stock-they were harmed because the true value of their stock was zero."). If the fundamental allegation that May was engaged in a Ponzi scheme is true, then Plaintiffs suffered

9

their losses the minute they made their alleged investments.  *See, Kagan v. Edison Bros Stores, Inc,* 907 F.2d 690, 692 (7th Cir. 1990) (the "difficulty with [plaintiffs'] position is that the deceit is not coupled with the injury").  Moreover, "had the truth been told" sooner, all 451 Plaintiffs would have demanded their investments back, resulting only in an earlier collapse of the Ponzi scheme. *Kagan,* 907 F.2d at 692; *Crocker,* 826 F.2d at 351 (finding that, if accurate information had been disclosed instead of the alleged misrepresentations, an entire class of shareholders would have dumped their stock, thereby sending the price of the stock plunging); *Arent,* 975 F.2d at 1374 (finding that "if everyone had known this adverse fact, then the stock's value would have reflected the adversity.  Only if plaintiffs were the only ones [] told, so that they could have improperly traded on inside information in dealing with third party purchasers, would disclosure have aided their investment fortunes.")  In the context of an alleged Ponzi scheme, a claim for post-purchase fraud simply makes no sense.

> **3.** **Even If There Was A Cause Of Action For Post-Purchase Common Law Fraud, Plaintiffs' SAC Fails To Allege Particularized Facts Sufficient To State A Claim Against The SamJack Defendants**

Even if Michigan recognized a common law claim for "holder" liability, Plaintiffs have failed to plead such a claim with the requisite particularity.  The general allegations in the SAC directed at the SamJack Defendants are sparse and do not satisfy the particularity requirements of Federal Rule 9(b):

> ➢ In paragraph 352, Plaintiffs allege that Joann Fox "acted under the direction of her husband, Todd Fox, and James O'Rilley in a business capacity at all relevant times." There is a parallel allegation for Nancy O'Rilley in paragraph 353.
>
> - There is no allegation that either Joann Fox or Nancy O'Rilley acted with the intent to defraud.
>
> - These allegations run counter to any suggestion that Joann Fox or Nancy O'Rilley performed any act with the intent to defraud.

10

> In paragraph 374, Plaintiffs allege that Defendants Todd Fox and James O'Reilly "were causing their wives to prepare and mail monthly summaries reporting the monthly expenses and income distributions from each subject LLC. As noted, these summaries were not even consistent with the books of account or company records that were before them. Like the false tax returns, the monthly summaries provided comfort as to investors' existing holdings."

- Plaintiffs' fraud-based claims against the SamJack Defendants are based entirely on the allegation that the SamJack Defendants "caus[ed] monthly summaries to be mailed to those same plaintiffs relative to those same LLCs, which summaries all Defendants knew were false, or were acting in reckless disregard of the truth." (Dkt. 23, ¶¶409, 411, 427).

- Despite the significance of this allegation, Plaintiffs fail to identify any particular "monthly summaries" that the SamJack Defendants allegedly prepared and mailed to investors.[7]

- Plaintiffs fail to identify any particular Plaintiff who ever received and reviewed any particular monthly summary for any particular investment.

- While Plaintiffs make vague references to certain payment categories allegedly referenced in the (unidentified) monthly summaries, Plaintiffs fail to identify the particular false statements allegedly made by the SamJack Defendants.

- Plaintiffs fail to allege facts sufficient to support an inference that the SamJack Defendants knew each (unidentified) statement was false when made or that the SamJack Defendants made each such statement with the intent to defraud.

- Plaintiffs fail to allege facts demonstrating how each Plaintiff relied on each of the (unidentified) false statements.

> In paragraph 380 of the SAC, Plaintiffs allege that Joann Fox and Nancy O'Rilley answered an "800" number provided to investors.

- Plaintiffs do not identify a single investor who ever called the "800" number.

- Plaintiffs allege that Joann Fox and Nancy O'Rilley answered the "800" number by providing a "pitch" allegedly formulated by Doeren Mayhew, but Plaintiffs fail to describe what the pitch was and fail to identify a single investor who heard or relied on the alleged pitch.

- While Plaintiffs allege in conclusory fashion that "each of these ladies had to have a full understanding of the scheme," Plaintiffs fail to allege *any* facts supporting

---

[7] The SamJack Defendants deny that they prepared monthly summaries for investors or mailed monthly summaries to investors.

this conclusion. "It is well-established in the Sixth Circuit that fraudulent intent cannot be inferred merely from one's position in a company and alleged access to information. Rather, the complaint must allege specific facts or circumstances that suggest knowledge." *In re Goodyear Tire & Rubber Co Sec Litig*, 436 F Supp 2d 873, 896 (ND Ohio 2006) (finding allegations that the defendants had signed company reports, participated in conference calls regarding the company's financial performance, and commented on the company's financial performance to the press insufficient to support knowledge element of fraud claim). *See also PR Diamonds, Inc. v. Chandler*, 364 F3d 671, 688 (6th Cir 2004) ("Contrary to Plaintiffs' assertions, fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information. As even the authorities which Plaintiffs cite indicate, the Complaint must allege specific facts or circumstances suggestive of their knowledge.").

Moreover, Plaintiffs fail to plead any of these elements on a plaintiff-by-plaintiff basis. Plaintiffs' own allegations reveal the inadequacy of failing to plead allegations for each of the Plaintiffs. *See e.g.*, ¶414 (expressly admitting that "damages varies by each plaintiff, depending on when the jury finds that the rescission would have occurred and whether plaintiffs has suffered lost opportunities costs relative to any delayed recover of overpayment of taxes"). Defendants are entitled to particularized allegations plaintiff-by-plaintiff.

In sum, the SAC lacks the "who, what, when, where and how" necessary to state a claim for fraud. Accordingly, Plaintiffs' claim for post-purchase common law fraud (Count IV) should be dismissed.

### C.   Plaintiffs' SAC Fails To State A Claim Against The SamJack Defendants For Aiding And Abetting Post-Purchase Common Law Fraud

The Michigan Supreme Court has not recognized a claim for aiding and abetting fraud, nor has it set forth the elements for a claim of aiding and abetting generally. Assuming that such a cause of action exists, it appears that Michigan would require the following elements: (1) the existence of an independent fraud; (2) actual knowledge of the fraud by the alleged aider and abetter; (3) substantial assistance given to effecting that fraud by the aider and abetter, and (4) the same degree of scienter by the aider and abetter as the person committing the fraud. *Chase*

12

*Bank of Texas, NA v. Grant Thornton LLP*, No. 236237, 2003 WL 21350362, *4 (Mich.App.

June 10, 2003) (affirming summary disposition of aiding and abetting fraud claim and requiring

substantial assistance and the same degree of scienter as the person committing the actual fraud)

(Dkt. 6-5); *Carson Fischer, PLC v. Standard Fed Bank*, No. 248125, 2005 WL 292343, *5

(Mich App Feb. 8, 2005) (Dkt. 6-6); *rev'd in part on other grounds*, 475 Mich. 851, 713 N.W.2d

265 (2006) (finding that aiding and abetting liability requires that an independent wrong exist,

that the aider and abetter know of the wrong's existence, that substantial assistance is given to

effecting that wrong and that the aider and abetter have the same degree of scienter as the person

committing the actual fraud). If there is no cause of action for post-purchase fraud, there also is

no cause of action for aiding and abetting post-purchase fraud.

Courts in other jurisdictions consistently hold that a defendant alleged to have aided and

abetted must have actual knowledge of the primary actor's fraud. Constructive knowledge or

inquiry notice of the fraud is not sufficient to state a claim for aiding and abetting:

> Knowledge of the fraud, and not merely the undisclosed material facts, is
> indispensable ... A plaintiff's case against an aider, abetter, or conspirator may
> not rest on the bare inference that the defendant 'must have had' knowledge of the
> facts. The plaintiff must support the inference with some reason to conclude that
> the defendant has thrown in his lot with the primary violators.

*Glidden Co v. Jandernoa*, 5 F.Supp.2d 541, 558 (W.D.Mich. 1998) (applying New York law);

*DeAbreu v. Bank of Am Corp*, 525 F.Supp.2d 381, 387 (S.D.N.Y. 2007) (same); *In re Nat'l*

*Century Fin Enter, Inc*, 504 F.Supp.2d 287, 321 (S.D.Oh. 2007) (dismissing an aiding and

abetting claim because the allegations did not support an inference of actual knowledge);

*Lawyers Title Ins Corp. v. United Am Bank of Memphis*, 21 F.Supp.2d 785, 797 (W.D.Tenn.

1998) ("actual knowledge of the third party's wrongful conduct is required to establish aider and

abettor liability"); *US v. Beckner*, 134 F.3d 714, 720 (5th Cir. 1998) ("to be convicted of aiding

and abetting a [] fraud, the [defendant] must have had actual knowledge of the fraud. . .").

13

Claims that an entity received payments for services performed from an alleged fraudster are insufficient to establish aiding and abetting liability. *See, e.g., BELT, Inc v. Wachovia Corp*, 403 F.3d 474, 477 (7th Cir. 2005) ("Someone who sells a car at market price to Charles Ponzi is entitled to keep the money without becoming liable to Ponzi's victims for the loss created by his scheme."); *Board of Trustees of Policemen & Firemen Ret Sys*, 2003 WL 1343369, *4 (Mich.App. March 11, 2003) (the fact that an entity receives fees for its work does not imply that it had an intent to participate in or cover up fraud) (Dkt. 6-7). In addition, allegations that a party "knew or should have known" of an alleged fraudulent scheme is not sufficient to state a claim for aiding and abetting liability. *See, e.g., Carson Fischer*, 2005 WL 292343 at *6 (holding that alleging that defendant bank "knew or should have known" of its' customer's scheme "is not the equivalent of 'substantially assisting'" the customer's embezzlement).

Here, Plaintiffs' aiding and abetting cause of action consists of the following generalized allegations:

> 416.    Plaintiff investors were defrauded through the scheme detailed in Count IV.

> 417.    To the extent any defendant is not a primary tort-feasor responsible for plaintiffs' injuries resulting from the fraud detailed in Count IV, plaintiffs suffered injury as a result of such defendant rendering substantial assistance to the primary tort-feasor.

> 418.    Defendants rendered such substantial assistance with knowledge and/or reckless disregard of the facts establishing the primary tort and, thus, acted with the same degree of scienter as required to find liability as against the primary tortfeasor.

These conclusory allegations are hardly sufficient to state a cause of action for aiding and abetting fraud. To the extent Plaintiffs are relying on group pleadings against "Defendants" generally, those allegations should be ignored as they are clearly inconsistent with the requirements of Federal Rule 9(b). In order to state a cause of action against the SamJack

14

Defendants, Plaintiffs needed to allege particularized facts demonstrating that *each* of the SamJack Defendants had actual knowledge of the underlying fraud. Alleging that "Defendants" acted with "knowledge and/or reckless disregard of the facts" is not sufficient. Plaintiffs also needed to allege particularized facts demonstrating what *each* of the SamJack Defendants did to provide "substantial assistance" giving effect to the underlying fraud. Simply alleging that "Defendants" rendered "substantial assistance", without any specific facts whatsoever, is not sufficient. And Plaintiffs needed to allege particularized facts showing that *each* of the SamJack Defendants acted with the specific intent to defraud. Simply alleging that "Defendants" acted "with the same degree of scienter as required to find liability as against the primary tortfeasor" is not sufficient. In sum, the conclusory allegations in Count V are wholly insufficient to sustain a cause of action for aiding and abetting post-purchase fraud against the SamJack Defendants.

**D.    Plaintiffs' SAC Fails To State A Claim Against The SamJack Defendants For Conspiracy To Commit Post-Purchase Common Law Fraud**

Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v. Columbia Cas Ins Co*, 194 Mich App 300, 313 (1992). "A civil conspiracy claim consists of '(1) a concerted action; (2) by a combination of two or more persons; (3) to accomplish an unlawful purpose; (4) or a lawful purpose by unlawful means." *McKesson Medical-Surgical, Inc v. Micro Bio-Medics, Inc,* 266 F. Supp.2d 590, 600 (E.D.Mich. 2003); *Wysong Corp v. MI Indus,* 412 F.Supp.2d 612, 632 (E.D.Mich. 2005); *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust,* 262 Mich.App. 485, 507; 686 N.W.2d 770 (2004). A conspiracy – standing alone – is not an independent cause of action. *Willis v. New World Van Lines, Inc,* 123 F.Supp.2d 380, 400 (E.D.Mich. 2000) ("A claim of civil conspiracy without underlying wrongful acts is not actionable"). "[A]llegations of

conspiracy must be based upon an underlying, independent wrongful act, whether it be breach of contract or tort." *Id.* If there is no cause of action for post-purchase common law fraud, there also is no cause of action for conspiracy to commit post-purchase common law fraud.

In addition, at least one Michigan court has held that a claim of conspiracy to commit fraud cannot be maintained against a particular defendant where there are no fraud allegations against that same defendant. *See Mable Cleary Trust*, 686 N.W.2d at 786 ("[b]ecause there is no basis for the underlying tort with regard to Paxton, the trial court did not err in granting summary disposition to that party").

Like Plaintiffs' aiding and abetting cause of action, Plaintiffs' conspiracy cause of action consists of generalized and conclusory allegations that do not even approximate the particularity requirements of Federal Rule 9(b):

> 421.   Plaintiff investors were defrauded through the scheme detailed in Count IV.
>
> 422.   ***To the extent any defendant is not a primary tort-feasor responsible for Plaintiffs' injuries resulting from the fraud detailed in Count IV***, plaintiffs suffered injury as a result of such defendant agreeing, in fact, among the other defendants and with Ed May, to commit the fraud described in Count IV. (emphasis supplied)
>
> 423.   The conduct of defendants more fully set forth in Count IV constituted overt acts in furtherance of this agreement.

If the SamJack Defendants are not primary tortfeasors and did not engage in the primary acts of fraud described in Count IV, as alleged in paragraph 422, then under *Mable Cleary Trust*, the SamJack Defendants cannot be held liable for conspiracy to commit fraud.

In addition, the allegation that "such defendants agree[d] in fact, among the other defendants and with Ed May, to commit the fraud described in Count IV" is wholly insufficient to sustain a claim for conspiracy to commit fraud. As explained above, Plaintiffs cannot rely on group pleadings directed at "Defendants" generally to satisfy their obligations under Federal

16

Rule 9(b).   Plaintiffs must allege particularized facts showing that each of the SamJack

Defendants "agree[d] … to commit the fraud."   There are no such allegations directed at any of

the SamJack Defendants.   Without such particularized allegations, Count VI for conspiracy to

commit post-purchase common law fraud should be dismissed.

### E.    Plaintiffs' SAC Fails To State A Claim Against The SamJack Defendants For RICO Violations

"In order to establish a RICO violation, a plaintiff must show:  1) two or more predicate

offenses; 2) the existence of an 'enterprise'; 3) a nexus between the pattern of racketeering

activity and the enterprise; and 4) an injury to business."   *Snowden v. Lexmark Int'l, Inc,* 237

F.3d 620 at 621 (6th Cir. 2001).   "The Supreme Court has described the pattern requirement as

'the heart of any RICO complaint.'"   *Id.*   "RICO civil claims also require proximate cause."

*Trollinger v Tyson Foods, Inc,* 370 F.3d 602, 612 (6th Cir. 2004).   "[M]ere allegation and/or

evidence that an injury to the plaintiff would not have occurred 'but for' the defendant's alleged

RICO violation (that is, that the plaintiff sustained a mere 'injury in fact') is insufficient to

establish RICO causation."   *Pik-Coal Co v. Big Rivers Elec Corp,* 200 F.3d 884, 889 (6th Cir.

2000).

In this case, the alleged predicate acts which form the basis of Plaintiffs' RICO claim are

mail fraud.[8]   Dkt. 23, ¶¶426-427.   Where a RICO claim alleges fraud as the predicate act, the

_____

[8]   RICO provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c).   *See Yadlosky v. Grant Thornton, LLP,* 120 F Supp 2d 622 (E.D.Mich. 2000) (dismissing RICO claim against accountants that related to securities fraud).   Plaintiffs cannot salvage a RICO claim by relying on mail or wire fraud, because the underlying conduct would have been actionable as securities fraud. *ABF Cap Mgmt v. Askin Cap Mgmt, LP,* 957 F.Supp. 1308, 1319 (S.D.N.Y. 1997) ("a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud").   Here, insofar as May's alleged conduct was actionable as securities fraud, Plaintiffs' RICO claim should be dismissed.

particularity requirements of Federal Rule 9(b) apply.   *VanDenBroeck v. CommonPoint Mortgage Co,* 210 F.3d 696, 701 (6th Cir. 2000) (Rule 9(b) requirements applied to RICO claim where predicate acts were mail fraud and wire fraud); *Tubby's # 14, Ltd. v. Tubby's Sub Shops, Inc.,* No. 04-70918, 2005 WL 3556199, at *4 (E.D.Mich. Dec. 29, 2005) ("Where a plaintiff relies upon mail or wire fraud to constitute a predicate act under RICO, Rule 9(b) requires that he must allege, at a minimum, the time, place and contents of the fraudulent communications") (Dkt. 6-8); *Cooper Ins Agency Center, LLC v. Mourer-Foster, Inc,* No. 5:05-CV-56, 2005 WL 3289345, at *2 (W.D.Mich. Dec 5, 2005) ("RICO cases often involve allegations of fraud, which, under the federal rules, are required to be stated with particularity") (Dkt. 6-9).   In addition, "the well-established precedent of [the Sixth] [C]ircuit requires that a civil RICO plaintiff alleging mail or wire fraud plead reliance, that is, that a defendant made fraudulent representations to the plaintiff on which the plaintiff relied." *Brown v. Cassens Transp Co.,* 492 F.3d 640, 643 (6th Cir. 2007).

In *Advocacy Organization For Patients and Providers*, the court addressed whether the plaintiffs sufficiently pled the predicate acts of mail and wire fraud in their RICO claim.   The plaintiffs alleged that the defendant insurers misrepresented their intention to pay for their insured customers' reasonable automobile accident-related medical expenses.   *Advocacy Org,* 176 F.3d at 323.   In support of this allegation, the plaintiffs alleged that the defendants intended to accomplish their fraud through the knowing use of irrelevant data in reviewing billings so as to deny claims or artificially reduce amounts payable.   *Id.*   As noted by the court, however, the plaintiffs alleged no facts to support their allegation that the factors considered by the insurer were irrelevant.   *Id.*   The court also ruled that no inference could be drawn, based upon the

18

allegedly irrelevant data, that the insurer's statements to the insured customers were knowingly false when made. *Id.* at 323-24.

In addition to the particularity requirements of Federal Rule 9(b), to state a claim for conspiracy under 18 U.S.C. §1962(d), "a plaintiff must plead that the defendant agreed to join the conspiracy, agreed to commit predicate acts, and knew that those acts were part of a pattern of racketeering activity." *Broad, Vogt & Conant, Inc. v. Alsthom Automation, Inc,* 200 F.Supp. 2d 756, 759 (E.D.Mich. 2002); *Krear,* 961 F.Supp. at 1071. "Plaintiffs must allege facts which evince each defendant's agreement to participate in what he knew to be a collective venture toward a common goal." *Betulius v. Hanna,* No. 4:96-CV-92, 1996 WL 900413, *5 (W.D.Mich. Dec. 10, 1996) (Dkt. 6-10). "[C]onclusory allegations of a RICO conspiracy are legally insufficient." *McIntyre's Mini Computer Sales Group, Inc v. Creative Synergy Corp,* 644 F.Supp. 580, 585 (E.D.Mich 1986) ("complaint fails to allege an agreement, which is the essential element of any conspiracy charge"); *Vidosh v. Holsapple,* No. 84CV2447DT, 1987 WL 273164, at *9 (E.D.Mich. Feb. 2, 1987) (Dkt. 6-11).

In this case, Plaintiffs' five-paragraph RICO count is entirely conclusory and wholly insufficient as a matter of law. While Plaintiffs generally reference "mail fraud" as the alleged predicate act, Plaintiffs fail to allege any particularized facts demonstrating that the SamJack Defendants used the mails to make knowingly false statements with the intent to defraud. Plaintiffs also fail to allege particularized facts that would support an inference that the SamJack Defendants agreed to join a conspiracy or that they agreed to commit predicate acts knowing that those acts were part of a pattern of racketeering activity. At most, Plaintiffs have alleged facts demonstrating that May, the admittedly culpable party, may have used the services of the SamJack Defendants to perpetrate a fraudulent Ponzi scheme, but there are no particularized

19

allegations to suggest that the SamJack Defendants were knowing and willing participants in May's scheme or that the SamJack Defendants performed any act with the intent to defraud. Without such particularized allegations, Plaintiffs' RICO claim should be dismissed.

**F.     Carol And Stacey Vlachos Fail To State A Claim For Statutory Conversion Against SamJack**

The SamJack Defendants incorporate by reference the arguments made regarding Carol and Stacey Vlachos' conversion cause of action in the Joint Motion filed by co-Defendants Doeren Mayhew, Todd Fox and James O'Rilley.

## V.     CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendants SamJack Investments, Inc., Joann Fox, and Nancy O'Rilley respectfully request that this Court dismiss the Plaintiffs' Second Amended Complaint as against them with prejudice.

Dated:  August 8, 2008

Respectfully submitted,

FOLEY & LARDNER LLP

Lisa L. Tharpe (of counsel)
Foley & Lardner LLP
321 North Clark St., Suite 2800
Chicago, Illinois  60610
Phone: (312) 832-4500
email: ltharpe@foley.com

_____/s/ Scott Seabolt_____
Scott Seabolt (P55890)
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-3489
Phone: (313) 234-7100
email:  sseabolt@foley.com

*Attorneys for Defendants Todd R. Fox, James O'Rilley, Joann Fox, Nancy O'Rilley and SamJack Investments, Inc.*

20

DETR_892934.4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ACKER, et al.,

        Plaintiffs,

                                      Case No. 08-11261

vs.

                                      Honorable Paul D. Borman

DOEREN MAYHEW & COMPANY, et al.,

        Defendants.

_____/

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Defendants Todd R. Fox, James O'Rilley, Joann Fox, Nancy O'Rilley and SamJack Investments, Inc. hereby certifies that on August 11, 2008, the following documents were served:  Defendants SamJack investments Inc.'s, Joann Fox's and Nancy O'Rilley's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Brief in Support and this Certificate of Service via e-mail to all counsel of record.

                                Respectfully submitted,

                                FOLEY & LARDNER LLP

                                s/ Scott Seabolt_____

Lisa L. Tharpe (of counsel)          Scott Seabolt (P55890)
Foley & Lardner LLP                  One Detroit Center
321 North Clark St., Suite 2800     500 Woodward Ave., Suite 2700
Chicago, Illinois  60610             Detroit, Michigan 48226-3489
Phone:  (312) 832-4500              Phone:  (313) 234-7100
email:  ltharpe@foley.com           email:  sseabolt@foley.com

                                *Attorneys for Defendants Todd R. Fox, James O'Rilley, Joann Fox, Nancy O'Rilley and SamJack Investments, Inc.*

Dated:  August 11, 2008