UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BIRCHFIELD, *et al.*

    Plaintiffs,

vs.

DOEREN MAYHEW & COMPANY,
PROFESSIONAL CORPORATION d/b/a
DOEREN MAYHEW, TODD R. FOX,
JAMES P. O'RILLEY, JOANN FOX,
NANCY O'RILLEY, and SAMJACK
INVESTMENTS, INC.,

    Defendants.

Consolidated Case No. 2:08-cv-11261

Honorable Arthur Tarnow

---

R. Christopher Cataldo (P39353)
Attorneys for Plaintiffs
Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@jaffelaw.com

John W. Schryber
David C. Silver
Norah D. Molnar
Attorneys for Plaintiffs
Patton Boggs LLP
2550 M St., NW
Washington, DC 20037
(202) 457-6000
jschryber@pattonboggs.com

Dennis M. Haffey (P26378)
Benjamin W. Jeffers (P57161)
Attorneys for Doeren Mayhew & Co., P.C.
Dykema Gossett PLLC
39577 Woodward, Suite 300
Bloomfield Hills, MI 48304
(248) 203-0813
dhaffey@dykema.com

Scott T. Seabolt (P55890)
Attorneys for Defendants Todd Fox, James
  O'Rilley, JoAnn Fox, Nancy O'Rilley,
  And SamJack Investments, Inc.
Foley & Lardner LLP
One Detroit Center
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
(313) 234-7115
sseabolt@foley.com

---

**REPLY BRIEF IN SUPPORT OF DEFENDANT DOEREN MAYHEW'S
MOTION TO DISMISS *BIRCHFIELD* COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... II

THE COMPLAINT SHOULD BE DISMISSED. ...................................................................... 1

    1.    Counts I-III: No Particularity On Pre-Investment Fraud. ........................................ 1

    2.    Counts I-III: No Particular Or Plausible "Maker" Allegation. ............................... 2

    3.    Counts I-III: No "Attribution" As Required For Maker & Reliance. ..................... 2

    4.    Counts I, III, IV-VII: Insufficient Allegations For Scienter. .................................. 4

    5.    Counts IV-VI: No Particular Or Plausible Post-Investment "Holder" Fraud. ....................................................................................................................... 4

    6.    Counts IV-VI: No Michigan Case Recognizes "Holder" Fraud. ............................ 5

    7.    Counts II, IX-XI: Accountant Liability Act Bars Claims Of Negligence, Negligent Misrepresentation & Fiduciary Duty. ..................................................... 7

    8.    Count VII - Rico Should Be Dismissed. ................................................................. 8

    9.    Count XIII: Conversion Should Be Dismissed. .................................................... 10

    10.    Counts X & XI – Fiduciary Duty Should Be Dismissed. ..................................... 11

    11.    Counts XII-XIII: Oral Agreement Barred By Statute Of Frauds. ......................... 12

    12.    Counts XII-XIII: No Third-Party Beneficiary Or Unjust Enrichment .................. 12

    13.    "Joint & Several" Liability Fails To State A Claim. .............................................. 13

    14.    Counts II, IX-XI Are Time-Barred. ....................................................................... 13

CONCLUSION........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Amari v. Spillan*, 2009 WL 995627 (S.D. Ohio 2009) .................................................................. 8

*Bald Eagle Area Sch. Dist. V. Keystone Fin., Inc.*, 189 F.3d 321 (3d Cir. 1999) ......................... 8

*Burket v. Hyman Lippitt*, 560 F.Supp.2d 571 (E.D. Mich. 2008) .................................................. 5

*Doe v. Roman Catholic Archbishop*, 264 Mich. App. 632; 692 N.W.2d 398 (2004) ................... 13

*Echelon Homes, LLC v. Carter Lumber Co.*, 261 Mich. App. 424; 683 N.W.2d 171, *rev'd on other grounds* 472 Mich. 192 (2005) ................................................................................. 10

*Estate of Smith v. Michigan*, 256 F. Supp. 2d 704 (E.D. Mich. 2003) ........................................ 12

*Goodman v Mady*, No. 04-75011 (E.D. Mich. Sept. 30, 2005) ..................................................... 5

*Holmes v. Grubman*, __ S.E.2d ___, 286 Ga. 636 (Ga. 2010) (2010 WL 424225) ..................... 6

*In re Mut. Funds Inv. Litig.*, 566 F.3d 111 (4th Cir. 2009) ............................................................ 4

*Kloian v. Schwartz*, 272 Mich. App. 232; 725 N.W.2d 671 (2006) ............................................ 13

*Lawsuit Financial, LLC v. Curry*, 261 Mich. App. 579; 683 N.W.2d 233 (2004) ....................... 9

*Levy v. Martin*, 463 Mich. 478; 620 N.W.2d 292 (2001) ............................................................ 13

*Ley v. Visteon Corp.*, 543 F.3d 801 (6th Cir. 2008) ...................................................................... 4

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) ................................................................... 12

*Mezzonen, S.A. v. Wright*, 1999 WL 1037866 (S.D.N.Y. 1999) .................................................. 9

*Napier v. Osmose, Inc.*, 399 F. Supp. 2d 811 (W.D. Mich. 2005) .............................................. 12

*Osrecovery, Inc. v. One Groupe International, Inc.*, 354 F.Supp.2d 357 (S.D.N.Y. 2005) .......... 9

*Pacific Investment Management Co. v. PIMCO Funds*, ___ F.3d. ___ (2d Cir. No. 09-1619-CV, April 27, 2010) ............................................................................................................ 2

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1997) .................................................................. 8

*Yadlosky v. Grant Thornton*, 120 F. Supp. 2d 622 (E.D. Mich. 2000) ..................................... 4,7

**Statutes**

M.C.L. 566.132(1)(a) .................................................................................................... 11

M.C.L. 339.720(1)(c) ..................................................................................................... 7

M.C.L. 600.2919a ......................................................................................................... 10

M.C.L. 600.2962(c) ........................................................................................................ 8

M.C.L. 600.5838(1) ...................................................................................................... 13

M.C.L. 600.5855 ........................................................................................................... 13

26 U.S.C. 6031(b) ......................................................................................................... 12

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

## **THE COMPLAINT SHOULD BE DISMISSED.**

Plaintiffs' Opposition Brief is riddled with misstatements and a failure to address controlling law. Without attempting to correct all the misstatements (for reasons of both space and simplicity), or address all of plaintiffs' exhibits on a motion limited to pleadings, Doeren Mayhew will demonstrate that plaintiffs fail to negate dispositive arguments in Doeren's opening Brief, which remain valid (although often misstated by plaintiffs). Plaintiffs fail even to confront (because they cannot refute) dispositive law, never discussing *Twombley/Iqbal*, or the Sixth Circuit's "especially stringent" accountant cases (e.g. *Ley, P.R. Diamonds, Comshare*), or the "attribution" cases (e.g. *Refco, Fidel, Lattanzio*), or the statutes abolishing joint and several liability. For good reason. There is governing law, and plaintiffs fail to state a claim under it.

### 1.   Counts I-III:  No Particularity On Pre-Investment Fraud.

Plaintiffs do not allege a single false statement of fact attributed to Doeren Mayhew prior to and relied on so as to induce investment. Not one.

Plaintiffs ignore their plaintiff-by-plaintiff particularity obligation, despite making inherently individualized allegations, such as "solicited investments at barbecues" (Opp. at 7), "vouching in fact for investment safety by fielding phone calls from investors, via calls to DM's office and to a toll-free number established for this purpose, and arranging barbeques, picnics, and meetings in which such assurances could be given face-to-face" (Opp. at 2).

Plaintiffs allege "common" statements in "most of the offering documents" (Opp. at p. 6), but even then provide no plaintiff-by-plaintiff **reliance** allegations. Moreover, plaintiffs rely on an Offering Memorandum (Dkt. 29-11 p. 73-79) that never mentions Doeren Mayhew or "call Todd Fox of Doeren Mayhew" to vouch for any investment, as plaintiffs implausibly allege. (Opp. at 17 n. 9.) The differences among the offering memoranda alone dictate the requirement for the absent plaintiff-by-plaintiff particulars. This is not a class action.

1

### 2.     Counts I-III:  No Particular Or Plausible "Maker" Allegation.

Plaintiffs do not attempt to defend their implausible allegation that "all offering memoranda" had the O'Rilley October 24, 2006 language explaining tax return treatment, which was within the scope of work performed for the May LLCs. (Complaint ¶107.) Yet that tax language is the only stated basis for the conclusory allegation that Doeren authored any offering language, much less "co-authored" all offering materials since 1998. Nor do plaintiffs attempt to defend the implausibility of Doeren authoring pre-October 2006 materials, when those materials are rife with misspellings that could *not* survive Doeren's "spellcheck." (DM Br. at 9-11.)

### 3.     Counts I-III:  No "Attribution" As Required For Maker & Reliance.

Plaintiffs do not allege that a single statement in the May LLC offering materials was attributed to Doeren Mayhew at the time of dissemination to plaintiffs.

Plaintiffs dig their hole deeper by conceding the absence of attribution: "The offering documents were never signed by anyone or attributed authorship to any person" (Opp. at 6), and "the "offering memoranda do not, in fact, identify the maker" (Opp. at 18).[1] There can be no reliance on a person undisclosed, even if "cleverly" undisclosed (Opp. at 18), which is a reason why attribution at the time is required, under cases originally discussed. (DM Br. at 11-14.)

On April 27, 2010, the Second Circuit enforced the governing "attribution" rule when affirming the *Refco* case discussed originally (DM Br. at 12-14), in *Pacific Investment Management Co. v. PIMCO Funds*, ___ F.3d ___ (2d Cir. No. 09-1619-CV), dismissing a securities fraud claim against a law firm for the same lack of attribution existing here:

---

[1] The offering materials in the record give "attribution" as the cover states the "Private Offering Memorandum" is by "E-M Management Co. LLC." (Dkt. 29-8 p. 2.) The Operating Agreement has signatures for "Edward May" as "Manager" of the May LLC and the "Members" as "Edward May" and "E-M Management Co. LLC." (Id. p. 20.) The materials also are rife with misspellings, showing that they did not go through Doeren's spellcheck, e.g. "This offer is **intitially** being made" (p. 4), "**Janaury** 26, 2006" (p. 5), "Federal **Sercurity** Laws" (p. 7).

> We hold that a secondary actor can be held liable in a private damages action brought pursuant to Rule 10b-5(b) only for false statements attributed to the secondary-actor defendant at the time of dissemination. Absent attribution, plaintiffs cannot show that they relied on defendants' *own* false statements, and participation in the creation of those statements amounts, at most, to aiding and abetting securities fraud. We further hold that plaintiffs' claims that defendants participated in a scheme to defraud investors are not meaningfully distinguishable from the claims at issue in *Stoneridge*, and therefore were properly dismissed. (Slip Op. at 4.)

The court rejected imposing liability "on accountants who review and approve misleading statements" (Slip Op. at 14), and rejected a "creator standard" that would "hold that a defendant can be liable for *creating* a false statement that investors rely on, regardless of whether that statement is attributed to the defendant at the time of dissemination." Slip Op. p. 9. "[W]e reject the creator standard for secondary actor liability under Rule 10b-5." *Id.* at 15.

> Accordingly, secondary actors can be liable in a private action under Rule 10b-5 for only those statements that are explicitly attributed to them. The mere identification of a secondary actor as being involved in a transaction, or the public's understanding that a secondary actor "is at work behind the scenes" are alone insufficient. See *Lattanzio*, 476 F.3d at 155. To be cognizable, a plaintiff's claim against a secondary actor must be based upon that actor's own "articulated statement," or on statements made by another that have been *explicitly* adopted by the secondary actor. *See Id.*" (Slip Op. at 15.)

Plaintiffs cite no legal authority that merely having "power to control" an offering memo suffices. That unsupported argument is contrary to *Central Bank, Pacific Investment, Fidel*, and their progeny, and would re-impose secondary liability whenever a draft memo crosses the professional's desk. Those appellate cases belie plaintiffs' argument that liability attaches to reviewing or editing or accessing or assisting or drafting or co-authoring offering materials.

Plaintiffs (App. at 16) misstate the defense argument on "attribution" to be "limited to those passages in the offering documents concerning Doeren's role relative to the subject LLCs." Even those "passages" were not "attributed" to Doeren, as they must be for liability.

3

Plaintiffs cite a few lower court cases that cannot alter the appellate case law, and also *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 121 (4th Cir. 2009), which is a dissimilar "fraud on the market" case, but it too requires attribution: "The defendant must make a misrepresentation that is public and is attributable to the defendant." Attribution is absent here (both from the pleadings and in reality). That is fatal to the fraud claims.

### 4. Counts I, III, IV-VII: Insufficient Allegations For Scienter.

What did Doeren allegedly get from the scheme? Fees per tax return. The prospect of receiving more fees is insufficient for scienter, as is non-compliance with GAAP, ignoring "red flags," having access to information, and the like, under the cases originally discussed (DM Br. at 15-20), including the "especially stringent" standard for accountants in the Sixth Circuit cases plaintiffs ignore, e.g., *Konkol, Fidel, PR Diamonds*. See, e.g., *Ley v. Visteon Corp.*, 543 F.3d 801, 815 (6th Cir. 2008) ("allegations that the auditor earned and wished to continue earning fees from a client do not raise an inference that the auditor acted with the requisite scienter.")

Plaintiffs (Opp. at 22) argue "motive" is irrelevant, but *Yadlosky v. Grant Thornton*, 120 F. Supp. 2d 622, 630 (E.D. Mich. 2000) holds otherwise: "The only motive directly linked to defendants is the motive to continue receiving substantial auditing fees, a motive insufficient to support a strong inference of scienter as a matter of law. See *Comshare*, 183 F.3d at 551, 553."

Plaintiffs refer to offering materials, promotion, "dog-and-pony shows, barbecues, and answering investor questions" (Opp. at 20), but those do not show knowledge that May ran a ponzi-scheme or constitute scienter, but simply that the Accountants, too, were fooled.

### 5. Counts IV-VI: No Particular Or Plausible Post-Investment "Holder" Fraud.

Particularity is absent for post-investment too: who was aware of what opportunity to sell or rescind, but heard/saw what misstatement, causing what action/inaction/loss in reliance?

4

Plaintiffs implausibly allege generally that investments were "held" in reliance on 2006 tax returns, when many plaintiffs never received a 2006 tax return (or a "late-2006 letter") (Opp. at 27), because they first invested in 2007. Plaintiffs ignore the example of lead plaintiff William Birchfield, who first invested on July 1, 2007, so he never received a K-1 (or a monthly summary).[2] Plaintiffs ignore that 133 plaintiffs only invested in 2007, and thus never received a K-1. Plaintiffs ignore that some 372 investments were in 2007 or with new May LLCs that were never the subject of a Doeren tax return or K-1. (See DM Br. at 26.)

Under authorities originally discussed, Doeren Mayhew had no duty to disclose to investors generally, much less in 2006 as to plaintiffs who did not invest until 2007. Plaintiffs rely on a lower court case when appellate cases govern, but even that case, *Burket v. Hyman Lippitt*, 560 F.Supp.2d 571, 583-4 (E.D. Mich. 2008), holds there is no "general, free-floating obligation" to disclose nor "some general, amorphous duty ... to disclose material facts."

Plaintiffs cannot avoid the speculation in their "holder" claims, since not a single one of the 100+ (or 550+) plaintiffs has rescinded to this day, and mass rescission would likely net nothing, since the May LLC securities were worthless when purchased. "In a case, such this one, [] the securities were worthless....Worthless securities, by definition, hold no residual value after the truth of their worthlessness becomes known." (Opp. at 24.)

### 6. Counts IV-VI: No Michigan Case Recognizes "Holder" Fraud.

Plaintiffs would have this Court create a new tort -- common law securities fraud inducing holding of securities. Plaintiffs cite no case recognizing that tort in Michigan.

---

[2] Plaintiffs allege that monthly summaries were prepared by the defendant spouses or their company, but not that William Birchfield in particular ever received one given his late investment. Other defendants will address that claim and, in any event, plaintiffs cite no law that an entity like Doeren Mayhew is liable for the acts of its employees' spouses or their company.

5

Plaintiffs (Opp. at 30) cite *Goodman v. Mady,* No. 04-75011 (E.D. Mich. Sept. 30, 2005 unpublished), which does not involve fraud allegedly inducing plaintiff to "hold securities" or anywhere mention "Michigan's adherence to § 525 of the Restatement (Second) of Torts)" as plaintiffs claim (Opp. at 31). In *Goodman*, plaintiff sued a father and son after the plaintiff gave money to the son to trade commodities futures; the son later advised he would return the money as he no longer wished to trade for plaintiff; and the father later fraudulently induced plaintiff to refrain from suing the son for not returning plaintiff's money. The case simply does not involve being fraudulently induced to "hold" securities.

Doeren originally discussed public policy reasons offered by other courts regarding a "holder" tort. (DM Br. at 25-28.) Plaintiffs cite other cases, but omit to note the limitations imposed even by the few courts that recognize a post-purchase "holder" claim, such as the recent decision in *Holmes v. Grubman,* __ S.E.2d ___, 286 Ga. 636 (Ga. 2010) (2010 WL 424225). There, the Georgia Supreme Court decided a question certified by a federal court, and imposed limitations that would make the new tort inapplicable here even if recognized in Michigan: "although we have determined that holder claims should be recognized under Georgia law, we further conclude that the limitations imposed in other jurisdictions are appropriate." *Id.* *3. That is, the context must "be one in which the parties knew each other and the alleged misrepresentations occurred through direct communication," and "[w]e further agree with those courts which require specific reliance on the defendants' representations…The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that plaintiff actually relied on the misrepresentations." *Id.* *3-4.

Here, the claims would be deficient even in Georgia, as no plaintiff alleges even knowing any Doeren Mayhew accountant, many plaintiffs never received the post-investment

6

"representation," there are no allegations of plaintiff-by-plaintiff reliance much less with particularity, and plaintiffs claim omissions to be actionable not just misrepresentations.

There is no basis for this Court (or any Michigan court) to cobble together a new tort in the instant circumstance. Even if Michigan (in the face of law and policy to the contrary) were interested in creating a new tort, this would not be the case to do so, including because of the decided lack of attribution, false statements, reliance, and the other elements.

### 7. Counts II, IX-XI: Accountant Liability Act Bars Claims Of Negligence, Negligent Misrepresentation & Fiduciary Duty.

Contrary to plaintiffs' argument that the Accountant Liability Act is no bar because "A negligent misrepresentation claim is not a professional malpractice claim" (Opp. at 24), the Act bars those and any non-client claim other than "fraud or an intentional misrepresentation." M.C.L. 600.2962. See *Yadlosky v. Grant Thornton, LLP*, 120 F. Supp. 2d 622, 634 (E.D. Mich. 2000): "claims of breach of fiduciary duty, negligent misrepresentation, and negligent and wanton supervision are barred by Michigan's Accountant Liability Act."

The Act is not limited to "malpractice." The Act broadly encompasses any liability "in connection with public accounting services," which certainly includes the services alleged here, i.e., that Doeren Mayhew prepared tax returns, gave tax advice, prepared "Schedule K-1s that the LLCs generated 'ordinary business income' and/or 'ordinary business loss' and legitimate deductions for 'depreciation'" (Opp. at 42), in performing were bound by "AICPA" standards (Opp. at 25 n.16), and generally had "taken on the responsibilities of a CPA" (Opp. at p. 1).

Only a *"client"* may assert a claim besides intentional misrepresentation, and plaintiffs ignore the implausibility of their counsel having admitted that only 8 of the 450+ *Acker* plaintiffs are "clients" (Dkt. 23, *Acker* SAC ¶368, 432), meaning the facts common to investors do not create an accountant-client relationship. Michigan statute defines "client" as "a person or entity

7

that engages a licensee or licensee's employer to receive any service in the practice of public accounting." M.C.L. 339.720(1)(c). Doeren Mayhew was engaged by and thus its clients were May and the May LLCs. Not one plaintiff alleges he/she/it engaged Doeren Mayhew.[3]

Plaintiffs do not satisfy the dual writing requirement for non-client standing to claim negligence, i.e., that the CPA "was informed in writing by the client at the time of engagement that a primary intent of the client was for the professional public accounting services to benefit or influence the persons bringing the action for civil damages," and "the certified public accountant shall identify in writing to the client each person, generic group, or class description that the certified public accountant intends to have rely on the services." M.C.L. 600.2962(c).

### 8. Count VII - RICO Should Be Dismissed.

The same lack of plaintiff-by-plaintiff particularity for fraud applies to RICO, and in any event the PSLRA exception for conduct actionable as securities fraud precludes the RICO claim, under the cases previously discussed. (DM Br. at 29-34.) Plaintiffs ignore most of those cases, including that conduct "actionable" by anyone as securities fraud is excluded, even if not actionable by the particular plaintiffs.

Instead, plaintiffs cite *Amari v. Spillan*, 2009 WL 995627 (S.D. Ohio 2009), as if it "distinguished the decision on which Doeren relies, *Bald Eagle Area Sch. Dist. v. Keystone Fin.*,

---

[3] Obviously Doeren is not "collaterally estopped" from litigating whether plaintiffs were "clients" as plaintiffs argue (Opp. at 25), when a state court merely held, under the different pleading standard that a claim is stated unless "no factual development could possibly justify recovery," that plaintiffs who alleged they were clients had stated a claim that they were clients. Collateral estoppel does not apply to a preliminary ruling, on different allegations, and a different issue, under a different standard. Estoppel only applies, if at all, after a "full and fair opportunity to litigate" "an identical issue" resulting in a final "judgment" and even there the trial court has discretion not to apply estoppel if to do so would be unfair such as where plaintiffs could have joined in a single action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 325-332 (1997). *See also Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 130 S. Ct. 1431 (2010) (under Fed. R. Civ. P. 1, *federal*, not state, procedural standards apply "in all civil actions and proceedings in the United States district courts").

8

*Inc.*, 189 F.3d 321 (3d Cir. 1999)." (Opp. at 38.) *Amari* did not "distinguish" *Bald Eagle*. It agreed with *Bald Eagle* that predicate acts *cannot* "support a civil RICO claim" when they are "capable of 'support[ing] *convictions*" under federal securities law" because that makes them "actionable securities fraud." 2009 WL 995627 *13 (*quoting Bald Eagle*, 189 F.3d at 330). That is Doeren's point – post-purchase fraud *can* support "convictions" under the securities laws, and do not become a RICO claim just because their *in terrorem* effect makes them inappropriate for private rights of action. All *Amari* holds is that the court could not tell from the pleadings whether the loan secured by pledged securities constituted "actionable securities fraud," and accordingly to determine whether the exception applied was "premature." *Id.*

Similarly, in *Mezzonen, S.A. v. Wright*, 1999 WL 1037866 (S.D.N.Y. 1999), the exception was held inapplicable, because plaintiff did not rely upon fraud inducing investment, but on post-investment looting acts that "were not in connection with Mezzonen's initial investment." *Id* at *4. In *Osrecovery, Inc. v. One Groupe International, Inc.*, 354 F.Supp.2d 357, 370 (S.D.N.Y. 2005), the alleged misconduct did not by its nature constitute primary liability under federal securities laws, so "it is not actionable under the securities laws and therefore actionable under RICO, assuming the claims are otherwise sufficient."

Contrast the instant case, where plaintiffs claim the scheme conduct is actionable under securities laws, and the post-investment acts of issuing tax returns and K-1s were precisely what plaintiffs allege were represented at the outset so as to induce the original investment. The RICO exception applies for that and the other reasons discussed originally.

Moreover, *Mezzonen* and *Osrecovery* predate both *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 80-82 (2006), and *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009). These cases belie plaintiffs' logic: it cannot be true that the Supreme

9

Court's conclusion – that the *in terrorem* effect of holder claims was too great to allow them to be pursued in *single*-damage private securities actions – means that those claims *can* be pursued for *treble* damages under RICO.

### 9. Count XIII: Conversion Should Be Dismissed.

Plaintiffs fail to state a claim for statutory conversion, for all the reasons originally discussed. (DM Br. at 34-37.) Plaintiffs' money was for a capital contribution to later result in a distribution as a return on investment rather than return of plaintiffs' specific money. There is no plaintiff-by-plaintiff allegation that Doeren Mayhew received a dime of any particular plaintiff's money. Plaintiffs voluntarily paid their money by checks to May or the May LLC. Part of the intended and disclosed purpose of LLC funds was to pay for accounting services. Doeren Mayhew is not alleged to have actual knowledge that property was converted.

Plaintiffs (Opp. at 12) cite *Lawsuit Financial, LLC v. Curry*, 261 Mich. App. 579, 591; 683 N.W.2d 233 (2004), as authoritative, but actually that court held there was neither common law nor statutory conversion, in part because there was no "obligation to return the specific money entrusted to his care." Plaintiffs' claims fail for the same reason.

Similarly, plaintiffs (Opp. at 12) cite *Echelon Homes, LLC v. Carter Lumber Co.*, 261 Mich. App. 424, 437-438; 683 N.W.2d 171, *rev'd on other grounds* 472 Mich. 192 (2005), as authoritative. That court held there was no conversion of a check because a check is "considered to be the property of the designated payee" (here the May LLC) so the plaintiff "does not have standing to file a conversion claim," and "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care," with conversion being absent because the recipient was not "obligated to return the 'specific or

identical moneys' taken." Those reasons likewise preclude a conversion claim here.[4]

Plaintiffs argue that their pleading defects are "all in the context of common law conversion, not statutory conversion." (Opp. at 13.) The statute requires all the elements of a conversion in the first place, because it repeatedly requires "converted property" and property that was "converted." M.C.L. 600.2919a. The statute imposes additional sanctions and widens the scope of those liable where the statutory elements are met as to what otherwise is "converted property" and property that was "converted." There first must be a conversion, i.e., meeting the elements necessary for conversion.

Plaintiffs dig their hole deeper, by arguing that payment to Doeren may not have been from the May LLCs in which plaintiffs invested, but instead was from "Browning and/or other Edward May entities" besides the telecommunications May LLCs. (Opp. at 12.) That highlights plaintiffs' inability to allege that Doeren Mayhew received any of any plaintiff's money.

Plaintiffs cite unpublished cases that cannot change the law stated in the many published cases originally cited that establish the absence of a conversion here.[5]

### 10.  Counts X & XI – Fiduciary Duty Should Be Dismissed.

From the investor's perspective, the only disclosed involvement of the Accountants was as accountants, such as in preparing tax returns with K-1s. That alone does not create a fiduciary relationship, per original cites. The remaining allegations about Doeren Mayhew focus on what allegedly was undisclosed. Thus, there is nothing else that would constitute a plaintiff believing

---

[4] Plaintiff in *Echelon* maintained a claim under M.C.L. 600.2919a, notwithstanding that "there is no underlying conversion" (*supra* at 436), because the statutory liability also attaches to receiving "embezzled" property, and the person involved had "pleaded guilty to a charge of embezzling funds." (Id. at 436, 439.) Here, plaintiffs predicate their claim only on an "underlying conversion" which does not exist as a matter of law.

[5] Plaintiffs have a confusing footnote (Opp. at 10 n.4) about how the 448 *Acker* plaintiffs who did not allege conversion might have alleged it. But the fact is that they did not, either with a separate count or with supporting factual allegations.

11

there was a "special relationship" that took Doeren Mayhew out of the sphere of accountant into the land of fiduciary duty. There certainly is no plaintiff-by-plaintiff allegation of facts constituting a "special relationship" with Doeren Mayhew (or Ed May). The gravamen of the relationship with Doeren Mayhew was for accounting services, regardless of the label.

**11.    Counts XII-XIII: Oral Agreement Barred By Statute Of Frauds.**

Plaintiffs cite no authority nor argue how their Counts based on an oral agreement to prepare 2007 tax returns survive the Statute of Frauds (M.C.L. § 566.132(1)(a)), except to flippantly assert they never said the agreement was "oral." Yet plaintiffs' counsel argue the Court must consider what is "part of the case record" (Opp. at 3 n.1), and plaintiffs' counsel in their *Acker* Second Amended Complaint alleged an "oral agreement" to prepare 2007 tax returns:

> That oral agreement, made in late-winter, 2004, required Doeren Mayhew, for the fee paid by the investing LLCs, to prepare complete corporate tax returns for tax year 2004 and beyond and to make any necessary amendments to tax returns for those years that might later become apparent. Doeren Mayhew has refused to prepare tax year 2007 returns, or to provide amended returns for prior years. (Dkt. 23, SAC ¶368.)

Unless plaintiffs have a basis to allege a written agreement (consistent with their Rule 11 obligations), the Statute of Frauds bars Counts XII-XIII.

**12.    Counts XII-XIII: No Third-Party Beneficiary Or Unjust Enrichment.**

Plaintiffs cite no cases under the Michigan statute that a member of an LLC is a third-party beneficiary of a CPA's work for the LLC. LLC members are at most incidental beneficiary's of tax return work, because by statute (not by contract) one of the schedules to be completed as part of an LLC's tax return is a K-1. 26 U.S.C. §6031(b).

Plaintiffs claim a contract between Doeren Mayhew and the May LLC. That contract does not afford third party beneficiary status, but it does preclude unjust enrichment, for that and the other reasons discussed originally. (DM Br. at 42-43.)

12

### 13.   "Joint & Several" Liability Fails To State A Claim.

Plaintiffs present no legal authority supporting their claim of "joint and several" liability. Instead, they assert, without citing legal authority, that the issue is inappropriate for a motion to dismiss. To the contrary, whether a claim imposes joint and several liability is routinely adjudicated on a motion to dismiss. See, e.g., *Estate of Smith v. Michigan*, 256 F. Supp. 2d 704, 712 (E.D. Mich. 2003) ("Plaintiff's claim for joint and several liability is dismissed with respect to the section 1983 and state law claims."); *Napier v. Osmose, Inc.,* 399 F. Supp. 2d 811, 821 (W.D. Mich. 2005) (dismissal under Rule 12(b)(6) because "the court concludes that Michigan has eliminated joint and several liability in actions such as plaintiffs' here").

Because plaintiffs did not address the merits, opposition is waived, *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), and the motion should be granted on this issue.

### 14.   Counts II, IX-XI Are Time-Barred.

"Continuing representation" may delay tolling of the statute of limitations, but here plaintiffs do not allege "continuing representation" or any allegation that the Accountants negligently performed any services past August 11, 2007, i.e. two years prior to suit.

Contrary to the statutory language and case law, plaintiffs make the absurd argument that the statute of limitations for malpractice in preparing tax returns never runs until the professional formally terminates the relationship. That is not the law.

In *Levy v. Martin*, 463 Mich. 478; 620 N.W.2d 292 (2001), the Michigan Supreme Court held that the "last treatment rule" measures what constitutes "the matters out of which the claim for malpractice arose" for statute of limitations purposes under M.C.L. 600.5838(1). Plaintiffs cite *Kloian v. Schwartz,* 272 Mich. App. 232, 238; 725 N.W.2d 671 (2006), which supports the defense, because the court there held that accrual occurs on the "last day of professional service" in the matter out of which the claim for malpractice arose.

13

Here, the "last treatment" and last "professional service" alleged was issuance of the 2006 tax returns with K-1s in early 2007, with no service alleged to have occurred after July 2007. Indeed, plaintiffs' claim of failure thereafter to prepare tax returns for 2007 is a contract claim, not a negligence claim. The negligence-based Counts II, IX-XI are time-barred.

In desperation, plaintiffs assert "fraudulent concealment of a claim" (Opp. at 41), but their Complaint is silent on that subject. "[P]laintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Doe v. Roman Catholic Archbishop*, 264 Mich. App. 632, 642-643; 692 N.W.2d 398 (2004). Concealment must be not of the underlying conduct, but "of the existence of the claim" itself. M.C.L. 600.5855.

## CONCLUSION

The substantial disregard of dispositive law by plaintiffs is no oversight -- or one that can be cured. Plaintiffs have no cognizable claims at law and their opposition, critically viewed, simply confirms that. Plaintiffs' Complaint is exactly why legislatures and courts have adopted the laws and developed the case law that control here and are discussed in Doeren Mayhew's briefs. They recognize the imperative of not burdening litigants like Doeren Mayhew, or the courts, with the time and expense of litigating cases like this, in which the actual wrongdoers are others and the appropriate remedies are elsewhere. Doeren Mayhew's motion should be granted and the Complaint dismissed with prejudice.

                        Respectfully submitted,

                        /s/ Dennis M. Haffey
                        Dennis M. Haffey (P26378)
                        Benjamin W. Jeffers (P57161)
                        Dykema Gossett PLLC
                        Attorneys for Doeren Mayhew & Co., P.C.
                        39577 Woodward, Suite 300
Dated: May 3, 2010          Bloomfield Hills, MI 48304
                        TEL: 248-203-0813
                        email: dhaffey@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•39577 WOODWARD AVENUE•SUITE 300•BLOOMFIELD HILLS, MICHIGAN 48304

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2010 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to Scott T. Seabolt at seabolt@foley.com, R. Christopher Cataldo at ccataldo@jaffelaw.com, John W. Schryber at jschryber@pattonboggs.com and Norah D. Molnar at nmolnar@pattonboggs.com.

DYKEMA GOSSETT PLLC

/s/ Dennis M. Haffey
Dennis M. Haffey (P26378)
Attorneys for Doeren Mayhew & Co., P.C.
39577 Woodward, Suite 300
Bloomfield Hills, MI 48304
TEL: 248-203-0813
email: dhaffey@dykema.com

Dated: May 3, 2010